**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAKE CHARLES DIVISION**

STATE OF LOUISIANA, *et al.*,

                *Plaintiffs*,

     v.

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,

                *Defendant*.

Case No. 2:24-cv-629

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION TO TRANSFER**

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................... 1

BACKGROUND ................................................................................................................. 2

STANDARD OF REVIEW ................................................................................................. 3

ARGUMENT ...................................................................................................................... 4

I.   Venue Is Improper in this District ............................................................................ 4

    A.   The State of Louisiana Does Not "Reside" In This District for Venue Purposes ............... 4

    B.   Plaintiffs Identify No Events or Omissions Giving Rise to their Claims Occurring In This District ............................................................................................... 7

II.  Even if Venue Is Proper, the Court Should Transfer This Case to the District of Columbia, or Alternatively the Middle District of Louisiana or Southern District of Mississippi ............................................................................................ 9

    A.   The Convenience of the Parties and Witnesses Warrants Transfer ....................................... 10

    B.   The Interests of Justice Favor Transfer ............................................................ 11

CONCLUSION .................................................................................................................. 14

## TABLE OF AUTHORITIES

**CASES**

*Abell v. U.S. Army Corps of Eng'rs,*
   2023 WL 3570594 (W.D. La. May 19, 2023) ............................................................11

*Associated Gen. Contractors of Am., Inc. v. Fed. Acquisition Regul. Council,*
   --- F. Supp. 3d ----, 2024 WL 1078260 (W.D. La. Mar. 12, 2024) ............................... 4, 8, 9

*Atlanta & F. R. Co. v. W. Ry. Co. of Alabama,*
   50 F. 790 (5th Cir. 1892) .................................................................................6

*Bigham v. Envirocare of Utah, Inc.,*
   123 F. Supp. 2d 1046 (S.D. Tex. 2000) ..................................................................8

*Birnbaum v. Blum,*
   546 F. Supp. 1363 (S.D.N.Y. 1982) .....................................................................5

*Braspetro Oil Servs. v. Modec (USA), Inc.,*
   240 F. App'x 612 (5th Cir. 2007) ........................................................................4

*California v. Azar,*
   911 F.3d 558 (9th Cir. 2018) .............................................................................6

*Dep't of Homeland Sec. v. New York,*
   140 S. Ct. 599 (2020) ...................................................................................12

*Emps. Mut. Cas. Co. v. Bartile Roofs, Inc.,*
   618 F.3d 1153 (10th Cir. 2010) .........................................................................8

*Garcia v. Int'l Constr. Equip. Inc.,*
   765 F. App'x 109 (5th Cir. 2019) .......................................................................14

*Hanby v. Shell Oil Co.,*
   144 F. Supp. 2d 673 (E.D. Tex. 2001) ..................................................................9

*Icon Indus. Controls Corp. v. Cimetrix, Inc.,*
   921 F. Supp. 375 (W.D. La. 1996) ......................................................................9

*In re Gibson,*
   423 F. App'x 385 (5th Cir. 2011) .......................................................................13

*In re Planned Parenthood Fed'n of Am., Inc.,*
   52 F.4th 625 (5th Cir. 2022) ...........................................................................14

*In re Radmax, Ltd.,*
   720 F.3d 285 (5th Cir. 2013) .......................................................................11, 14

*In re Volkswagen of Am., Inc.,*
   545 F.3d 304 (5th Cir. 2008) ......................................................................*passim*

*Jenkins Brick Co. v. Bremer,*
  321 F.3d 1366 (11th Cir. 2003) ............................................................... 7, 8

*Lawson v. Dep't of Justice,*
  527 F. Supp. 3d 894 (N.D. Tex. 2021) ..........................................................3

*Leonhart v. McCormick,*
  395 F. Supp. 1073 (W.D. Pa. 1975) ..............................................................5

*Leroy v. Great Western United Corp.,*
  443 U.S. 173 (1979) ....................................................................................7

*McCuin v. Texas Power & Light Co.,*
  714 F.2d 1255 (5th Cir. 1983) .............................................................. 13, 14

*McNeil v. United States,*
  508 U.S. 106 (1993) ................................................................................. 6, 7

*Mickle v. Sagora Senior Living, Inc.,*
  No. 1:19-CV-44, 2019 WL 13197050 (E.D. Tex. Apr. 23, 2019)....................7

*Nestor v. Hershey,*
  425 F.2d 504 (D.C. Cir. 1969) .....................................................................5

*O'Neill v. Battisti,*
  472 F.2d 789 (6th Cir. 1972) .......................................................................5

*Perkins v. Snider,*
  No. Civ. A. 94-4785, 1994 WL 530045 (E.D. Pa. Sept. 2, 1994) ...................5

*Positive Software Sols., Inc. v. New Century Mortg. Corp.,*
  476 F.3d 278 (5th Cir. 2007) .....................................................................12

*Republic of Iraq v. Beaty,*
  556 U.S. 848 (2009) ....................................................................................6

*Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.,*
  626 F.3d 973 (7th Cir. 2010) .....................................................................10

*Rock Bit Int'l, Inc. v. Smith Int'l, Inc.,*
  957 F. Supp. 843 (E.D. Tex. 1997) .............................................................14

*Stewart Org., Inc. v. Ricoh Corp.,*
  487 U.S. 22 (1988) ....................................................................................10

*Tactacell, LLC v. Deer Mgmt. Sys., LLC,*
  620 F. Supp. 3d 524 (W.D. La. 2022) ................................................... 3, 8, 9

*Utah v. Walsh,*
  No. 2:23-cv-016, 2023 WL 2663256 (N.D. Tex. Mar. 28, 2023).................. 5, 6

*Woodke v. Dahm*,
  70 F.3d 983 (8th Cir. 1995) ............................................................................................8

## STATUTES

5 U.S.C. § 705 ................................................................................................................ 3, 8

5 U.S.C. § 706 ................................................................................................................ 3, 8

28 U.S.C. § 1391 ..........................................................................................................*passim*

28 U.S.C. § 1404 .................................................................................................1, 4, 9, 11

28 U.S.C. § 1406 ......................................................................................................1, 4, 9

42 U.S.C. § 2000gg *et seq.* ............................................................................................1

42 U.S.C. § 2000gg ........................................................................................................2

42 U.S.C. § 2000gg-1 .....................................................................................................2

42 U.S.C. § 2000gg-3 .....................................................................................................2

Pub. L. No. 117-328, 136 Stat. 4459 (Dec. 29, 2022) .....................................................2

## REGULATIONS

*Implementation of the Pregnant Workers Fairness Act*,
  89 Fed. Reg. 29,096 (Apr. 19, 2024) (codified at 29 C.F.R. pt. 1636 & App'x A) ........................ 1, 3

## OTHER AUTHORITIES

15 Bus. & Com. Litig. Fed. Cts. § 162:39 (5th ed. 2022 update) ...............................................5

17 Moore's Federal Practice – Civil § 110.03 (2023) ...............................................................5

Appendix A, Brief of Professor Stephen I. Vladeck As Amicus Curiae, *United States v. Texas*,
  No. 22-58 (Sept. 19, 2022),
  https://perma.cc/55GH-3CYH ........................................................................................11

Cmte. on Court Admin. & Case Mgmt., Judicial Conference of the United States,
  *Memorandum re: Guidance for Civil Case Assignment in the District Courts* (Mar. 15, 2024) ............... 2, 12

Jacqueline Thomsen, Federal Courts Aim to Curb Judge Shopping with New Policy,
  Bloomberg Law, March 12, 2024,
  https://perma.cc/YP3E-MSPM ........................................................................................13

Ryan J. Owens and Ryan C. Black, *The Supreme Court Must Stop the Trend of Judge-Shopping*, The Hill (Mar. 5, 2020), https://thehill.com/opinion/judiciary/484703-the-supreme-court-must-stop-the-trend-of-judge-shopping/ ..................................................................................................11

Standing Order 1.61, *Assignment of Cases to District and Magistrate Judges* (Jan. 12, 2024), https://perma.cc/3QAG-YJ2X ..................................................................................................13

Tr., *United States v. Texas*, No. 22-58 (Nov. 29, 2022), https://www.supremecourt.gov/oral_arguments/argument_transcripts/2022/22-58_4fc4.pdf ..................................................................................................13

Wright & Miller, 14D Federal Practice & Procedure § 3805 (4th ed. 2023 update) ..............................6

Wright & Miller, 15 Fed. Prac. & Proc. Juris. § 3854 ..................................................................................11

## INTRODUCTION

Plaintiffs, the States of Louisiana and Mississippi, bring this lawsuit challenging a federal government regulation, promulgated in Washington, D.C., that implements the Pregnant Workers Fairness Act, 42 U.S.C. § 2000gg *et seq.*, on a nationwide basis.  *See* Equal Employment Opportunity Comm'n, *Implementation of the Pregnant Workers Fairness Act*, 89 Fed. Reg. 29,096 (Apr. 19, 2024).  No Plaintiff resides in this District or Division, nor does this case arise from any event or omission occurring in the Western District of Louisiana, much less the Lake Charles Division.  Rather, this case is yet another example of the State of Louisiana challenging a significant federal policy, and seeking nationwide relief against that policy, in a District with no meaningful connection to it and in a Division where civil cases are assigned overwhelmingly to a single judge.  Regardless of the impartiality or fairness of this District's judges in any specific case, the State of Louisiana's practice undermines public confidence in the administration of justice, as confirmed by a recent policy from a Committee of the Judicial Conference of the United States.  This Court should therefore transfer this case.

First, venue is improper in this District under 28 U.S.C. § 1391(e)(1), because the State of Louisiana does not "reside" in this District; for venue purposes, the State resides only in the District containing the State capital, which here would be the Middle District of Louisiana (or, for Mississippi, the Southern District of Mississippi).  Additionally, the meager allegations in Plaintiffs' Complaint do not demonstrate that any of Defendant's actions allegedly giving rise to the claims occurred in this District.  Because venue is improper, this Court should "dismiss, or if it be in the interest of justice, transfer [the] case to any district or division in which it could have been brought."  28 U.S.C. § 1406(a).

Second, even if venue were proper, the Court should still "transfer any civil action to any other district or division where it might have been brought" if doing so is warranted "[f]or the convenience of parties and witnesses" or "in the interest of justice."  *Id.* § 1404(a).  Such an analysis depends on consideration of a variety of "private" and "public" factors, *see generally In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008), which militate in favor of transfer.

On the private side of the analysis, this case concerns a policy promulgated in Washington, D.C., and the relevant evidence (the Administrative Record) is also located in Washington, D.C.  On

the public side, this case lacks any meaningful connection to the Western District of Louisiana or the Lake Charles Division, and, by all outward indications, appears to be part of a strategy by the State of Louisiana to file cases in this Division when they wish to seek nationwide relief against a significant federal policy.  As highlighted by a recent policy promulgated by the Judicial Conference, allowing litigants to file these types of challenges in Divisions where they are highly likely to obtain a single judge "undermine[s] the independence of the branch and the trust of the public in the judiciary." Cmte. on Court Admin. & Case Mgmt., Judicial Conference of the United States, *Memorandum re: Guidance for Civil Case Assignment in the District Courts*, at 2 (Mar. 15, 2024) (attached hereto).

Accordingly, the proper course is to transfer this case to the District Court for the District of Columbia, which is the most convenient location given the location of the relevant evidence and the Defendant, and has the strongest connections to the challenged policy.  Alternatively, this Court may transfer the case to the Middle District of Louisiana or Southern District of Mississippi, the two Districts where Plaintiffs are properly deemed to "reside" for purposes of the venue statute.

## BACKGROUND

The Pregnant Workers Fairness Act (PWFA) is an anti-discrimination statute that builds on Title VII and other laws to expand workplace protections for pregnant employees and those with pregnancy-related conditions. Specifically, the PWFA requires that covered employers (including States) reasonably accommodate "known limitations related to the pregnancy, childbirth, or related medical conditions of a qualified employee," unless the accommodation "would impose an undue hardship." 42 U.S.C. § 2000gg-1(1).  The PWFA applies to the same "covered entities" as Title VII, which generally includes States as well as private employers with 15 or more employees.  *See* 42 U.S.C. § 2000gg(2).

Congress enacted the PWFA in December 2022, and the law became effective on June 27, 2023. *See* Pub. L. No. 117-328, div. II, § 109, 136 Stat. 4459, 6089 (Dec. 29, 2022).  The PWFA directs the Equal Employment Opportunity Commission (EEOC)—a federal agency headquartered in Washington, D.C.—to issue regulations to carry out the statute.  *See* 42 U.S.C. § 2000gg-3(a).  On April 19, 2024, EEOC issued its Final Rule implementing the statute.  *See Implementation of the Pregnant*

*Workers Fairness Act*, 89 Fed. Reg. 29,096 (Apr. 19, 2024) ("Final Rule"), codified at 29 C.F.R. pt. 1636 & App'x A.

Plaintiffs here, the States of Louisiana and Mississippi, filed their Complaint challenging the Final Rule on May 13, 2024. *See* ECF No. 1. The Complaint alleges that the Final Rule is unlawful under the Administrative Procedure Act (APA), and seeks nationwide relief against the Final Rule, apparently with respect to all employers (not just these two States in their capacity as employers). Specifically, the Complaint requests that this Court, *inter alia*:

> d. Declare the Final Rule *ultra vires* and invalid under the U.S. Constitution and the APA because EEOC's structure violates Article II and the Separation of Powers;
>
> e. Vacate and set aside the Final Rule as unlawful under 5 U.S.C. § 706;
>
> f. Postpone the June 18, 2024, effective date of the Final Rule and stay the Rule under 5 U.S.C. § 705;

*Id.* ¶ 82. In terms of justifying venue in this District, the Complaint contains a single paragraph:

> Venue is proper in this Court under 28 U.S.C. § 1391(e)(1) because the State of Louisiana is a resident of this judicial district (and no real property is involved). In addition, the Final Rule affects Louisiana's employment operations throughout the State.

*Id.* ¶ 16.

Prior to filing the Complaint, counsel for the State of Louisiana contacted undersigned counsel for Defendant—on May 7, 2024—informing undersigned counsel that the State planned to bring a lawsuit in the Western District of Louisiana seeking relief against the Final Rule. *See* Certificate of Conference. Undersigned counsel responded, informing the State of Louisiana's counsel about a potential venue objection to the extent the case was filed in the Western District of Louisiana rather than the Middle District, where the State capital is located. *See id.* Nonetheless, Plaintiffs elected to file suit in the Western District, and now oppose this transfer motion.

## STANDARD OF REVIEW

"The burden is on a plaintiff to establish that venue is proper in the judicial district where the case has been brought." *Tactacell, LLC v. Deer Mgmt. Sys., LLC*, 620 F. Supp. 3d 524, 530 (W.D. La. 2022); *see also Lawson v. Dep't of Justice*, 527 F. Supp. 3d 894, 896 (N.D. Tex. 2021). "In determining

whether venue is proper, "the court must accept as true all allegations in the complaint and resolve all conflicts in favor of the plaintiff." *Associated Gen. Contractors of Am., Inc. v. Fed. Acquisition Regul. Council*, --- F. Supp. 3d ----, 2024 WL 1078260, at *7 (W.D. La. Mar. 12, 2024) (quoting *Braspetro Oil Servs. v. Modec (USA), Inc.*, 240 F. App'x 612, 615 (5th Cir. 2007)).

## ARGUMENT

Plaintiffs have not established that venue is proper in the Western District of Louisiana, because the State of Louisiana does not reside in this District for venue purposes, and no substantial events or omissions giving rise to their claims occurred in this District. Thus, transfer is required under 28 U.S.C. § 1406. Additionally, even if venue were proper in this District, the Court should still transfer the case under 28 U.S.C. § 1404(a) because doing so would be more convenient and would avoid undermining public confidence in the Judiciary. Consistent with the recent policy from the Judicial Conference, the State of Louisiana should not be permitted to continue filing challenges seeking nationwide relief against significant federal policies in a District that is improper and in a Division that provides the State with a high degree of probability of obtaining a particular judge. The appropriate course is transfer to the District Court for the District of Columbia, or alternatively the Middle District of Louisiana or Southern District of Mississippi.

## I.     Venue Is Improper in this District

In cases brought against federal officials or a federal agency, venue is proper only in a "judicial district in which (A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (C) the plaintiff resides if no real property is involved in the action." 28 U.S.C. § 1391(e)(1). None of these subsections applies here, so the suit should be dismissed for improper venue.

### A.     The State of Louisiana Does Not "Reside" In This District for Venue Purposes

Plaintiffs' primary theory is that venue is proper under 28 U.S.C. § 1391(e)(1)(C) "because the State of Louisiana is a resident of this judicial district (and no real property is involved)." Compl. ¶ 16. But that conclusory allegation ignores the text of the federal venue statute, which provides that

4

"[f]or all venue purposes . . . an entity with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated, shall be deemed to reside . . . if a plaintiff, only in the judicial district in which it maintains its principal place of business."  28 U.S.C. § 1391(c)(2).

The State of Louisiana maintains its principal place of business where it performs its official duties—that is, in its capital, Baton Rouge, located in the Middle District.  *See, e.g.*, *Leonhart v. McCormick*, 395 F. Supp. 1073, 1078 (W.D. Pa. 1975) (explaining "all defendants are state officers of statewide jurisdiction whose official residence is the state capitol at Harrisburg in the Middle District of Pennsylvania"); *cf.* 15 Bus. & Com. Litig. Fed. Cts. § 162:39 (5th ed. 2022 update) ("As a general rule, state officials sued in their official capacities will be deemed to reside where they conduct their official duties.  State officials with 'statewide jurisdiction' may be deemed to reside in the state capitol."); *Perkins v. Snider*, No. Civ. A. 94-4785, 1994 WL 530045, at *1 (E.D. Pa. Sept. 2, 1994) (similar); *O'Neill v. Battisti*, 472 F.2d 789, 791 (6th Cir. 1972) ("The official residence of the Supreme Court of Ohio is in the place where it performs its official duties, that is, Columbus, the State Capital and the seat of State Government."); *Nestor v. Hershey*, 425 F.2d 504, 521 n.22 (D.C. Cir. 1969) ("Where a public official is a party to an action in his official capacity he resides in the judicial district where he maintains his official residence, that is where he performs his official duties."); *Birnbaum v. Blum*, 546 F. Supp. 1363, 1366 (S.D.N.Y. 1982) (same); 17 Moore's Federal Practice - Civil § 110.03 (2023) (same).

Plaintiffs seem to assume that a State resides for venue purposes in any location within its borders.  Although some cases support this view, *see, e.g.*, *Utah v. Walsh*, No. 2:23-cv-016, 2023 WL 2663256, at *3 (N.D. Tex. Mar. 28, 2023), it is, respectfully, irreconcilable with the text and structure of the federal venue statute.  Congress specifically defined "residency . . . [f]or all venue purposes" for the following litigants:

- "[N]atural person[s]," 28 U.S.C. § 1391(c)(1);
- "[E]ntit[ies] with the capacity to sue and be sued in [their] common name under applicable law, whether or not incorporated," *id.* § 1391(c)(2);
- Defendants "not resident in the United States," *id.* § 1391(c)(3); and
- "[C]orporations in States with multiple districts," *id.* § 1391(d).

Congress could have created a fifth category for States.  It did not.  Accordingly, because State sovereigns are not specifically enumerated—and are additionally not natural persons, non-residents of the United States, or corporations—they fall into the residual category under § 1391(c)(2) for "an entity with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated."  *See id.* § 1391(c)(2); *see also Republic of Iraq v. Beaty*, 556 U.S. 848, 860 (2009) ("[T]he whole value of a generally phrased residual clause . . . is that it serves as a catchall for matters not specifically contemplated—known unknowns[.]").  Such an entity, "if a plaintiff," resides "only in the judicial district in which it maintains its principal place of business."  28 U.S.C. § 1391(c)(2).

Here, that judicial district is the Middle District of Louisiana, which includes Baton Rouge.  And, because an entity plaintiff can reside in only one district at a time—the statute explicitly provides that an entity plaintiff resides "*only* in *the* judicial district in which it maintains its principal place of business"—Louisiana cannot assert dual residency outside the Middle District.  *See id.* § 1391(c)(2) (emphases added); *see also* Wright & Miller, 14D Federal Practice & Procedure § 3805 (4th ed. 2023 update) ("[R]eference to 'the' and the singular 'its principal place of business' compels the conclusion that an entity plaintiff (unlike an entity defendant) can reside in only one district at a time.").

Some courts have relied on *dicta* in a Fifth Circuit decision from 130 years ago to conclude that States should be deemed to "reside[] at every point within the[ir] boundaries[.]"  *Atlanta & F. R. Co. v. W. Ry. Co. of Alabama*, 50 F. 790, 791 (5th Cir. 1892); *e.g.*, *Walsh*, 2023 WL 2663256, at *3.  But *Atlanta* concerned the residency of corporations for jurisdictional purposes; it did not address the residency of States for venue purposes.  *See* 50 F. at 791.  Besides, *Atlanta* precedes the modern amendments to the venue statute by decades, and thus it has been superseded by the statute's definitions of "residency" "[f]or all venue purposes."  28 U.S.C. § 1391(c).  For similar reasons, the Ninth Circuit's decision in *California v. Azar*, 911 F.3d 558 (9th Cir. 2018), was erroneous, principally in that the court's interpretation rewrites § 1391's definition of "residency . . . [f]or all venue purposes" to essentially read "residency for all venue purposes, except for States, which reside in any district within their borders."  But courts "are not free to rewrite the statutory text."  *McNeil v. United States*,

508 U.S. 106, 111 (1993).  For venue purposes, therefore, the State of Louisiana resides solely in the Middle District of Louisiana.

### B.   Plaintiffs Identify No Events or Omissions Giving Rise to their Claims Occurring In This District

As a secondary basis for venue, Plaintiffs allege that venue is proper because "the Final Rule affects Louisiana's employment operations throughout the State."  Compl. ¶ 16.  But they do not allege anything specifically establishing that "a substantial part of the events or omissions giving rise to the claim occurred" in this District. 28 U.S.C. § 1391(e)(1)(B).

Indeed, the Complaint here fails to allege that *any* concrete events or omissions giving rise to Plaintiffs' claims occurred in this District.  *Cf. Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1372 (11th Cir. 2003) (asking first "[w]hat acts or omissions by [the defendant] 'gave rise' to [the plaintiff's] claim?").  Plaintiffs' claims are all devoted to challenging EEOC's Final Rule.  *See, e.g.*, Compl. ¶ 8 ("The Final Rule is unlawful. Accordingly, Louisiana and Mississippi seek preliminary and permanent relief."); ¶ 15 ("The Final Rule is a final agency action that is judicially reviewable under the Administrative Procedure Act."); ¶¶ 54-77 (articulating claims, all seeking relief against the Final Rule).  But issuance of the Final Rule did not occur in this District; it occurred in Washington, D.C., where EEOC is headquartered.

At most, Plaintiffs have pled that they might feel the *effects* of the Final Rule in this District. *Cf.* Compl. ¶ 16 ("the Final Rule affects Louisiana's employment operations throughout the State"). Even that allegation is not presented with sufficient specificity for this Court to ensure that any claimed effects have, in fact, occurred in this District.  *Cf. Mickle v. Sagora Senior Living, Inc.*, No. 1:19-CV-44, 2019 WL 13197050, at *3 (E.D. Tex. Apr. 23, 2019) (concluding that venue is improper where the plaintiff "generally alleges that venue is proper . . . without including a single fact showing that any part of the events giving rise to this cause of action occurred in this forum").  But more fundamentally, Plaintiffs' argument is inconsistent with the Supreme Court's decision in *Leroy v. Great Western United Corp.*, which makes clear that a claim does not "arise" in a District merely because some of its effects may be felt there.  *See* 443 U.S. 173, 1836 (1979) ("We therefore reject the Court of

Appeals' reasoning that the 'claim arose' in Dallas because . . . that is where Idaho's statute had its impact on Great Western."); *see also, e.g.*, *Woodke v. Dahm*, 70 F.3d 983, 985 (8th Cir. 1995) ("[B]y referring to 'events or omissions giving rise to the claim,' Congress meant to require courts to focus on relevant activities of the defendant, not of the plaintiff."); *Associated Gen. Contractors of Am., Inc. v. Fed. Acquisition Regul. Council*, --- F. Supp. 3d ----, 2024 WL 1078260, at *8 (W.D. La. Mar. 12, 2024) (Joseph, J.) ("In assessing venue under § 1391(e)(1)(B), the Court must examine which alleged acts or omissions by the defendant 'gave rise' to the plaintiff's claim." (quoting *Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1372 (11th Cir. 2003), modifications omitted)); *Bigham v. Envirocare of Utah, Inc.*, 123 F. Supp. 2d 1046, 1048 (S.D. Tex. 2000) ("In determining whether or not venue is proper, the Court looks to the defendant's conduct, and where that conduct took place. Actions taken by a plaintiff do not support venue." (citation omitted)).  Thus, Plaintiffs' claimed "effects" allegation is irrelevant.

Finally, even if Plaintiffs could establish venue based on where the effects of the challenged policy are felt, Plaintiffs' allegations still do not constitute "*substantial* events material to th[e] claims occurr[ing] in the forum district."  *Emps. Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1166 (10th Cir. 2010) (emphasis added).  To qualify as substantial, "material acts or omissions within the forum [must] bear a close nexus to the claims."  *Tactacell*, 620 F. Supp. 3d at 530.  "Substantiality is more of a qualitative than quantitative inquiry, determined by assessing the overall nature of the plaintiff's claims and the nature of the specific events or omissions in the forum, and not by simply adding up the number of contacts."  *Id.*  Here, the overall nature of Plaintiffs' claims is that they are challenging a Final Rule issued in Washington, D.C., by a federal agency headquartered in Washington, D.C., based on decisions about the Final Rule's content that the agency made in Washington, D.C.  Notably, Plaintiffs' claims present pure questions of law attacking the Final Rule's validity, and they seek both preliminary and permanent relief against the Final Rule in its entirety (and presumably on a nationwide basis).  *See* Compl. ¶ 82(f) (asking the Court to "[p]ostpone the June 18, 2024, effective date of the Final Rule and stay the Rule under 5 U.S.C. § 705"); *id.* ¶ 82(e) (requesting that the Court "[v]acate and set aside the Final Rule as unlawful under 5 U.S.C. § 706").  Thus, it is difficult to see how any localized events in this District could conceivably be material to their claims.  *Cf. Associated Gen. Contractors*, 2024

8

WL 1078260, at *8 (substantial events in the District lacking because "the claims in the Amended Complaint concern the promulgation of the PLA Rule and its enforcement nationwide," and therefore "the events giving rise to the PLA Rule took place where . . . the Final Rule [was] both drafted and enacted, that is, in Washington, D.C."). Even if some events could be said to have occurred in this District, therefore, "a close nexus [to the District] is lacking" and thus "so too is the substantiality necessary to support venue." *Tactacell*, 620 F. Supp. 3d at 530.

## II.   Even if Venue Is Proper, the Court Should Transfer This Case to the District of Columbia, or Alternatively the Middle District of Louisiana or Southern District of Mississippi

If venue is improper, the Court should transfer the case pursuant to 28 U.S.C. § 1406(a). But, even if the Court finds that venue is proper in this District, it should nevertheless transfer the case to the District of Columbia or to a District in which one of Plaintiffs resides pursuant to 28 U.S.C. § 1404(a).

Under section 1404, "[f]or the convenience of parties and witnesses [or] in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). "[W]hile a plaintiff has the privilege of filing his claims in any judicial division appropriate under the general venue statute, § 1404(a) tempers the effects of the exercise of this privilege." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 313 (5th Cir. 2008) (en banc). "Where the plaintiff's chosen forum has no factual nexus to the case, that choice carries little significance if other factors weigh in favor of transfer." *Hanby v. Shell Oil Co.*, 144 F. Supp. 2d 673, 677 (E.D. Tex. 2001); *see also, e.g., Icon Indus. Controls Corp. v. Cimetrix, Inc.*, 921 F. Supp. 375, 384 (W.D. La. 1996) ("[S]uch deference is lessened when the operative facts of the dispute occur outside plaintiff's chosen forum."). "The underlying premise of § 1404(a) is that courts should prevent plaintiffs from abusing their privilege under [28 U.S.C.] § 1391 by subjecting defendants" to venues that lack any substantial connection to the litigation. *In re Volkswagen of Am., Inc.*, 545 F.3d at 313. By filing in a District that have no connection to the claims, parties, or potential witnesses in this case, Plaintiffs have "abus[ed] their privilege under § 1391." *Id.*

**A.      The Convenience of the Parties and Witnesses Warrants Transfer**

When weighing "the convenience of parties," the Court may consider any number of factors, including "private interest factors" such as "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id.* at 315.  The Court may also consider "public interest factors," such as "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *Id.*  These factors "are not necessarily exhaustive or exclusive."  *Id.*  Further, the public factors collectively—which include "systemic integrity and fairness," *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 30 (1988)—"may be determinative, warranting transfer or its denial even where the convenience of the parties and witnesses points toward the opposite result."  *Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 978 (7th Cir. 2010).  Here, both the private and public factors warrant transfer.

First, the private factors, which focus on the convenience of the parties and witnesses in litigating in the chosen District, weigh in favor of transfer here. As described, the challenged policy was conceived and promulgated in Washington, D.C., and the administrative record—upon which this APA case will be decided—is also located there.  *See Volkswagen*, 545 F.3d at 316.

Second, the public interest factors strongly favor transfer.  This District has no "local interest" in having the case adjudicated here, *id.*, and certainly none as strong as the Districts where the State capitals are located and thus where the States reside.  *Cf.* Compl. ¶ 50 (claiming injury to the States' sovereignty based on the Final Rule infringing on state laws enacted by the "elected representatives" of Louisiana and Mississippi).  Plaintiffs' claims—which seek declaratory and injunctive relief seeking to invalidate or set aside a policy promulgated in Washington, D.C.—also have no connection to this District, and instead have a strong connection to the District of Columbia.  And there is no reason to think that any effect on Louisiana's employment operations is any greater in this District than

10

elsewhere in the State, such as where the State capital is located.  *See id.* ¶ 16 (claiming that the Final Rule "affects Louisiana's employment operations *throughout the State*" (emphasis added)).

Plaintiffs have not identified anyone in this District who has "an interest—that is, a stake—in the resolution of this controversy." *Volkswagen*, 545 F.3d at 318.  "In short, there is no relevant factual connection to" this District.  *Id.*  In such circumstances, it is an abuse of discretion to "deny[] transfer where only the plaintiff's choice weighs in favor of denying transfer and where the case has no connection to the transferor forum and virtually all of the events and witnesses regarding the case . . . are in the transferee forum." *In re Radmax, Ltd.*, 720 F.3d 285, 288 (5th Cir. 2013); *cf. Abell v. U.S. Army Corps of Eng'rs*, 2023 WL 3570594, at *3 n.5 (W.D. La. May 19, 2023) (questioning whether venue would be appropriate in case where "the proposed dredging location is in Alaska, the permit application and appeal are being reviewed in Alaska, and there is apparently substantial local interest in Alaska," and the only connections to the Western District were two individual plaintiffs who "are merely two of 'numerous investors'").

### B.     The Interests of Justice Favor Transfer

Finally, even if the convenience factors did not clearly favor transfer to Washington, D.C., "the interest[s] of justice," 28 U.S.C. § 1404(a), do.  *See* Wright & Miller, 15 Fed. Prac. & Proc. Juris. § 3854 (collecting cases).  In recent years and across Presidential administrations, there has been an increasingly frequent practice of many States and other litigants filing most of their lawsuits against the federal government in single-judge divisions or divisions where they are almost always guaranteed to procure a particular judge assignment.  *See, e.g.*, Appendix A, Brief of Professor Stephen I. Vladeck As Amicus Curiae, *United States v. Texas*, No. 22-58 (Sept. 19, 2022) (listing examples filed by State of Texas), *available at* https://perma.cc/55GH-3CYH; *see also* Ryan J. Owens and Ryan C. Black, *The Supreme Court Must Stop the Trend of Judge-Shopping*, The Hill (Mar. 5, 2020) (describing judge-shopping during the Trump administration), *available at* https://thehill.com/opinion/judiciary/484703-the-supreme-court-must-stop-the-trend-of-judge-shopping/.   This practice undermines public confidence in the judicial system, rewards gamesmanship, and overworks certain members of the judiciary at the expense of the random-assignment system functioning as intended.  As Justice

Gorsuch recently warned, "[t]here are currently more than 1,000 active and senior district court judges, sitting across 94 judicial districts," and thus "there is a nearly boundless opportunity" for plaintiffs "to shop for a friendly forum." *Dep't of Homeland Sec. v. New York*, 140 S. Ct. 599, 600–01 (2020) (Gorsuch, J. concurring) (criticizing "gamesmanship" by plaintiffs seeking nationwide injunctions). This concern is heightened in single-judge divisions, where a party can effectively select its preferred judge. *See Positive Software Sols., Inc. v. New Century Mortg. Corp.*, 476 F.3d 278, 292 (5th Cir. 2007) (Wiener, J. dissenting) ("The trial judge who is to hear a case is almost never 'selected' by or agreed on by the parties; rather, such judge is . . . designated by objectively random or blind assignment through long established court procedures (except in the rare case of a party's successful forum shopping in a single-judge district . . .).").

This very issue was recently highlighted by the Committee on Court Administration and Case Management of the Judicial Conference of the United States.  On March 15, 2024, the Judicial Conference Committee issued "Guidance for Civil Case Assignment in the District Courts," specifically suggesting that:

> District courts should apply district-wide assignment to . . . civil actions seeking to bar or mandate nationwide enforcement of a federal law, including a rule, regulation, policy, or order of the executive branch or a federal agency, whether by declaratory judgment and/or any form of injunctive relief.

Memorandum, at 1.  In the Judicial Conference Committee's view, this recommendation was warranted because "[c]ase assignment practices or methods that do not reflect the longstanding Judicial Conference policy of random case assignment tend to undermine the independence of the branch and the trust of the public in the judiciary." *Id.* at 2; *see also Guidance for Civil Case Assignment in District Courts*, at 1 ("The Judicial Conference's longstanding policies supporting the random assignment of cases and ensuring that district judges remain generalists deter both judge-shopping and the assignment of cases based on the perceived merits or abilities of a particular judge.").  A media report in the wake of this policy quotes the Chief Judge of this District as describing random case assignments for certain cases as "a good idea," and saying that judge shopping "has been a

12

problem for both sides of the aisle." *See* Jacqueline Thomsen, Federal Courts Aim to Curb Judge Shopping with New Policy, Bloomberg Law, March 12, 2024, https://perma.cc/YP3E-MSPM.

Nonetheless, the current case assignment policy for this District (formalized prior to the Judicial Conference's new policy) is susceptible to litigants filing in a particular location in an effort to obtain a particular judge. Specifically, civil cases filed in the Lake Charles Division have a 90% likelihood of being assigned to a particular judge, and a 10% likelihood of being assigned to a different judge. *See* Standing Order 1.61, *Assignment of Cases to District and Magistrate Judges* (Jan. 12, 2024), https://perma.cc/3QAG-YJ2X. And the State of Louisiana has filed in this particular Division an outsize number of challenges seeking nationwide relief against federal policies. *See, e.g.*, *Louisiana v. EPA*, No. 2:23-cv-692 (W.D. La. filed May 24, 2023) (seeking nationwide relief against enforcement of disparate-impact regulations under Title VI); *Louisiana v. Biden*, No. 2:21-cv-1074 (W.D. La. filed Apr. 22, 2021) (seeking nationwide relief against Executive Order regarding social costs of greenhouse gas emissions); *Louisiana v. Biden*, No. 2:21-cv-778 (W.D. La. filed Mar. 24, 2021) (seeking nationwide relief against an alleged "pause" of new oil and natural gas leases on public lands or in offshore waters). Indeed, even after counsel for the United States specifically raised the issue of venue with Louisiana, they nonetheless elected to file in this District and Division.

The State of Louisiana's apparent practice of frequently filing in this particular District and Division, without a clear connection to the District or Division, contributes to the "perception that different forms of justice would be available to litigants, depending upon the division in which a suit was filed," regardless of the impartiality of the judge sitting in the single-judge division. *In re Gibson*, 423 F. App'x 385, 388 (5th Cir. 2011); *see also* Tr. 93:25-94:11, *United States v. Texas*, No. 22-58 (Nov. 29, 2022) (Kagan, J.) (suggesting single judge divisions facilitate the perception that litigants can "pick [their] trial court judge"), *available at* https://www.supremecourt.gov/oral_arguments/argument_transcripts/2022/22-58_4fc4.pdf. This practice conflicts with the principle that, "[i]n federal court, the parties clearly have no right to a 'judge of their choice,'" *McCuin v. Texas Power & Light Co.*, 714 F.2d 1255, 1262 (5th Cir. 1983), and thus the Fifth Circuit "permit[s] intra-district case

transfers to prevent judge-shopping," *Garcia v. Int'l Constr. Equip. Inc.*, 765 F. App'x 109, 110 (5th Cir. 2019).

There is no reason to indulge this practice further.  Defendants have moved expeditiously to transfer this matter.  Any delay caused by Plaintiffs' selection of venue is entirely of Plaintiffs' making, especially given that this issue was raised even before Plaintiffs filed suit.  The fact that Plaintiffs may seek emergency relief is no basis for ratifying their selection of an inappropriate venue for their claims. *See Rock Bit Int'l, Inc. v. Smith Int'l, Inc.*, 957 F. Supp. 843, 844 (E.D. Tex. 1997) ("Speed of disposition of lawsuits without any Beaumont connection is not a valid reason for forum shopping.  If it were otherwise, why would the plaintiff not choose Kansas, South or North Dakota, or the famed 'rocket docket' of the Eastern District of Virginia?"); *see also In re Radmax*, 720 F.3d at 289 (standard "delay associated with transfer is not to be taken into consideration when ruling on a § 1404(a) motion to transfer").  And here, more than most cases, there is a public interest in declining to reward Plaintiffs' selection of this largely single-judge Division in which to hear claims that have no connection to the Division.

In short, there is no local interest in having this case adjudicated in a District or Division where none of the parties resides, none of the underlying events occurred, and none of the potential evidence exists.  This is exactly the sort of case where other venues—including the District Court for the District of Columbia—"have a greater 'stake' in the litigation" than this District.  *In re Planned Parenthood Fed'n of Am., Inc.*, 52 F.4th 625, 632 (5th Cir. 2022) (citing *Volkswagen*, 545 F.3d at 317-18). Accordingly, the Court should transfer this case, either to Washington, D.C. or to a District in which one of the Plaintiffs resides.

## **CONCLUSION**

For these reasons, the Court should transfer this case to the District Court for the District of Columbia, or to the Middle District of Louisiana or Southern District of Mississippi.

Dated: May 21, 2024                          Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

EMILY B. NESTLER
Assistant Branch Director

*/s/ Daniel Schwei*
DANIEL SCHWEI (N.Y. Bar #4901336)
Special Counsel
LAURA B. BAKST (D.C. Bar #1782054)
ALEXANDRA WIDAS (D.C. Bar #1645372)
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
Tel: (202) 305-8693
Facsimile: (202) 616-8460
Email: daniel.s.schwei@usdoj.gov

*Counsel for Defendant*