**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAKE CHARLES DIVISION**

| | |
|---|---|
| THE STATE OF LOUISIANA,<br>By and through its Attorney General, Elizabeth<br>B. Murrill; and<br><br>THE STATE OF MISSISSIPPI,<br>By and through its Attorney General, Lynn<br>Fitch,<br><br>                                      PLAINTIFFS,<br><br>v.<br><br>EQUAL EMPLOYMENT OPPORTUNITY<br>COMMISSION,<br><br>                                      DEFENDANT. | CIVIL ACTION NO. 2:24-cv-629 |

**Plaintiffs' Opposition to Motion to Transfer Venue**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..........................................................................................................iii

INTRODUCTION ......................................................................................................................1

LEGAL STANDARD .................................................................................................................2

ARGUMENT.............................................................................................................................3

    A.   Venue Is Proper Because Louisiana Resides Here...............................................3

    B.   The Government Cannot Demonstrate That Another
           Venue Is Clearly More Convenient. ...................................................................7

CONCLUSION........................................................................................................................13

# TABLE OF AUTHORITIES

## Cases

*Alabama v. Army Corps of Eng'rs*,
   382 F. Supp. 2d 1301 (N.D. Ala. 2005) ....................................................................... 1, 4

*Arizona v. Garland*,
   2024 WL 1645417 (W.D. La. Apr. 16, 2024) ...................................................................12

*Atlanta & F.R. Co. v. W. Ry. Co. of Ala.*,
   50 F. 790 (5th Cir. 1892) ............................................................................... 2, 4, 6

*California v. Azar*,
   911 F.3d 558 (9th Cir. 2018) .......................................................................1, 4, 5, 7

*California v. HHS*,
   281 F. Supp. 3d 806 (N.D. Cal. 2017) ....................................................................... 1, 4

*Callais v. Landry*,
   2024 WL 1903930 (W.D. La. Apr. 30, 2024) .................................................................12

*Daily Wire, LLC v. U.S. Dep't of State*,
   2024 WL 2022294 (E.D. Tex. May 7, 2024) .............................................................. 1, 5, 6

*Florida v. United States*,
   2022 WL 2431443 (N.D. Fla. Jan. 18, 2022) ............................................................. 1, 5, 7

*In re Clarke*,
   94 F.4th 502 (5th Cir. 2024) ...................................................................2, 3, 7, 8, 9

*Little Sisters of the Poor Saints Peter and Paul Home v. Pennsylvania*,
   591 U.S. 657 (2020) ...................................................................................... 1, 6

*Pennsylvania v. Trump*,
   351 F. Supp. 3d 791 (E.D. Pa. 2019) ......................................................................1,6

*Tennessee v. EEOC*,
   No. 24-cv-84 (E.D. Ark.) ...................................................................................8

*Texas v. Garland*,
   2023 WL 4851893 (N.D. Tex. July 28, 2023) ..........................................1, 4, 5, 6, 7, 10, 11, 12

*Texas v. Mayorkas*,
   2023 WL 5616184 (S.D. Tex. Aug. 29, 2023) ...............................................................1

*Texas v. U.S. Dep't of Homeland Security*,
   661 F. Supp. 3d 683 (S.D. Tex. 2023) ............................................................ 1, 6, 7, 10, 12

*U.S. Conference of Catholic Bishops v. EEOC,*
　　No. 24-cv-691 (W.D. La.) ........................................................................................2, 3, 8, 9, 10

*Utah v. Walsh,*
　　2023 WL 2663256 (N.D. Tex. Mar. 28, 2023) .......................................1, 6, 7, 9, 10, 11, 12

**Statutes**

28 U.S.C. § 1391 .......................................................................................................2, 4, 5, 6, 7

28 U.S.C. § 1404 ...........................................................................................................3, 11, 13

28 U.S.C. § 1406 ..........................................................................................................................3

**Rules**

Fed. R. Civ. P. 11 .................................................................................................................. 3, 8, 9

**Other Authorities**

14D Wright & Miller, *Federal Practice and Procedure* § 3815 (4th ed. 2022) .............................................. 4, 6

**INTRODUCTION**

The federal government believes this Court will not impartially adjudicate this abortion case. Of course, the government does not dare say that aloud. (It does not even dare mention the word "abortion," the central feature of this important case.) But that offensive message is the subtext of the government's Motion to Transfer Venue, ECF No. 5-1 (Mot.), which—without apparent irony—proposes to *engage* in judge-shopping in the name of *avoiding* judge-shopping. And that offense against this Court is not the only one. The government also says that "some cases" have rejected the government's silly argument that a State like Louisiana does not actually reside everywhere within its borders—and the government uses a *see, e.g.* citation signal to identify one case. Mot. at 5 (citing *Utah v. Walsh*, 2023 WL 2663256 (N.D. Tex. Mar. 28, 2023)). The full truth? The government has universally lost this argument from coast to coast in front of (as apparently the government views them) Trump, Obama, Clinton, H.W. Bush, and Nixon judges—with their most recent loss coming this month and their most notable loss coming from the Ninth Circuit:

1.  *Daily Wire, LLC v. U.S. Dep't of State*, 2024 WL 2022294 (E.D. Tex. May 7, 2024);

2.  *Texas v. Mayorkas*, 2023 WL 5616184 (S.D. Tex. Aug. 29, 2023);

3.  *Texas v. Garland*, 2023 WL 4851893 (N.D. Tex. July 28, 2023);

4.  *Utah v. Walsh*, 2023 WL 2663256 (N.D. Tex. Mar. 28, 2023);

5.  *Texas v. U.S. Dep't of Homeland Security*, 661 F. Supp. 3d 683 (S.D. Tex. 2023);

6.  *Florida v. United States*, 2022 WL 2431443 (N.D. Fla. Jan. 18, 2022);

7.  *Pennsylvania v. Trump*, 351 F. Supp. 3d 791, 809 (E.D. Pa. 2019), *rev'd on other grounds sub. nom. Little Sisters of the Poor Saints Peter and Paul Home v. Pennsylvania*, 591 U.S. 657 (2020);

8.  *California v. HHS*, 281 F. Supp. 3d 806 (N.D. Cal. 2017), *aff'd in relevant part California v. Azar*, 911 F.3d 558 (9th Cir. 2018); and

9.  *Alabama v. Army Corps of Eng'rs*, 382 F. Supp. 2d 1301 (N.D. Ala. 2005).

As these courts and the Fifth Circuit have recognized, a State "resides at every point within the boundaries of the state." *Atlanta & F.R. Co. v. W. Ry. Co. of Ala.*, 50 F. 790, 791 (5th Cir. 1892). That is common sense: Louisiana resides everywhere in Louisiana. No judge has held otherwise. And that defeats the government's Motion here.

The Court should call the government's Motion what it is: a blatant attempt to choose another judge of the government's liking because the government believes that this Court will not impartially adjudicate the abortion question in this case. If the government truly believes that, it should summon the courage to seek this Court's recusal. Otherwise, the Motion is offensive to this Court and our system of government. And given that this Court will now decide a parallel case raising identical legal issues, *U.S. Conference of Catholic Bishops v. EEOC*, No. 24-cv-691 (W.D. La.)—and consolidation with this case seems likely—there is especially no merit to the government's demand that this case be litigated in a forum of the government's choosing. The Court should deny the Motion.

## LEGAL STANDARD

A civil action against a federal agency (like this one) may be brought "in any judicial district" in which "the plaintiff resides if no real property is involved in the action." 28 U.S.C. § 1391(e)(1)(C). Or, any judicial district in which "a substantial part of the events or omissions giving rise to the claim occurred." *Id.* § 1391(e)(1)(B). If venue is improper in a particular case, the district court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." *Id.* § 1406(a). In addition, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought[.]" *Id.* § 1404(a). As to the latter, transfer "is properly granted only if the moving party 'clearly establishes good cause' by 'clearly demonstrating that a transfer is for the convenience of the parties and witnesses, in the interest of justice.'" *In re Clarke*, 94 F.4th 502, 508 (5th Cir. 2024). "It is the movant's burden—and the movant's alone—to 'adduce evidence and arguments

that clearly establish good cause for transfer based on convenience and justice.'" *Id.* "At minimum, showing 'good cause' requires the movant 'clearly [to] demonstrate that its chosen venue is 'clearly more convenient.'" *Id.*

## ARGUMENT

The Court should deny the government's Motion because this is a proper venue and the government has not demonstrated that another venue is clearly more convenient.

*First*, venue is proper because the State of Louisiana resides here. Indeed, as a sovereign State, it resides everywhere within its borders. The government has never won its tired contrary argument—that a State resides only in the District where its capital city is located—as judge after judge has dismissed it out of hand as nonsensical. This Court should do the same.

*Second*, the government has not established that another venue is clearly more convenient. Nor can it: The government is poised to litigate—and this Court is poised to adjudicate—virtually identical issues in the parallel case, *U.S. Conference of Catholic Bishops v. EEOC*, No. 24-cv-691. How then can the government insist, consistent with Rule 11, that it nonetheless remains inconvenient for the government to litigate *this* case here? Plaintiffs gave the government a chance to avoid the potential Rule 11 issue by withdrawing its argument; the government refused. For the same reasons Plaintiffs must now contemplate Rule 11, the government comes nowhere close to "'clearly establish[ing] good cause for transfer based on convenience and justice.'" *In re Clarke*, 94 F.4th at 508.

## A.     Venue Is Proper Because Louisiana Resides Here.

**1.** One proper venue in a case against the federal government is a district where a plaintiff resides. 28 U.S.C. § 1391(e)(1)(C). This District is thus a proper venue for this action against the government so long as one Plaintiff resides here. Because the sovereign State of Louisiana resides here (as it does at virtually every other point within its borders), this is a proper venue.

"[P]recedent dictates this outcome." *Garland*, 2023 WL 4851893, at *3. That is because "[t]he Fifth Circuit confirmed more than a century ago that a state 'resides at every point within [its] boundaries.'" *Id.* (quoting *Atlanta & F.R. Co.*, 50 F. at 791). This Court's sister courts within the Fifth Circuit have thus "follow[ed] the Fifth Circuit's clear statement and conclude[d] that [a State] resides at every point within its boundaries." *Id.* As a result, a State "can bring suit against the federal government" in any District within the State's boundaries. *Id.*; *see also id.* ("[I]n recent months—and in response to similar transfer motions brought by the United States—district courts in this Circuit have joined the chorus of courts finding that states reside in every district within their borders." (collecting cases)). Thus, Louisiana "can bring suit against the federal government in this district." *Id.*

"[C]ommon sense" likewise "make[s] clear that a state resides in every district and division within its borders." *Garland*, 2023 WL 4851893, at *3. As the Ninth Circuit put it, "[a] state is ubiquitous throughout its sovereign borders." *Azar*, 911 F.3d at 570. Accordingly, "[a]ny other interpretation limiting [a State's] residency to a single district in the state would defy common sense." *Id.* at 570; *see also California*, 281 F. Supp. 3d at 824 ("[C]ommon sense dictates that for venue purposes, a state plaintiff with multiple federal judicial districts resides in any of those districts."); *Alabama*, 382 F. Supp. 2d at 1329 ("Common sense suggests that the Plaintiffs are correct.").

This fact is so basic that even Wright & Miller presents it without any fanfare: "Sometimes, cases to which Section 1391(e) applies are brought by states. A state is held to reside in any district within it." 14D Wright & Miller, *Federal Practice and Procedure* § 3815 (4th ed. 2022). Just so here.

**2.** The government has nothing in response. It first recites part of the venue statute: "For all venue purposes … an entity with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated, shall be deemed to reside … if a plaintiff, only in the judicial district in which it maintains its principal place of business." Mot. at 5 (quoting 28 U.S.C. § 1391(c)(2)). The government then reasons that, because Congress did not expressly define the residency of States in 28

U.S.C. § 1391, States must "fall into the residual category under § 1391(c)(2) for 'an entity with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated.'" *Id.* at 5–6. Finally, the government announces that "[t]he State of Louisiana maintains its principal place of business where it performs its official duties—that is, in its capital, Baton Rouge, located in the Middle District"—followed by an paragraph-long string cite of cases. *Id.* And because Louisiana's principal place of business is supposedly in Baton Rouge, the government concludes that Louisiana resides only in the Middle District.

From top to bottom, however, the government hides that courts have rejected every part of this argument. Start with the cited cases (Mot. at 5). The government does not disclose that the district court in *Garland* meticulously addressed each string-cited case and deemed them "unpersuasive because none addresses a sovereign state." 2023 WL 4851893, at *4. In fact, "none even uses the term 'principal place of business.'" *Id.* Rather than own up to these deficiencies, the government simply recycles the same misleading string citation here.

Consider also the government's losses on statutory text and context and the fact that Section 1391(c)(2) does not apply to States. As the Ninth Circuit explained, "[t]he venue statute explicitly refers to the incorporation status of the 'entity,' indicating that the term refers to some organization, not a state." *Azar*, 911 F.3d at 570; *see also id.* (noting that "[t]he legislative history confirms this interpretation"). Indeed, the statute "explicitly *distinguishes* between states and entities." *Id.* (emphasis added) (citing 28 U.S.C. § 1391(d)). The government "therefore improperly assume[s], without support from the text or legislative history, that 'entity' encompasses a state acting as a plaintiff." *Id.*; *see also Garland*, 2023 WL 4851893, at *6 ("By its plain terms, Section 1391(c)(2) refers to corporations and unincorporated associations—not sovereign states."); *Daily Wire, LLC*, 2024 WL 2022294, at *15 ("The provision … refers to 'entity' as one with 'the capacity to sue and be sued … whether or not incorporated,' which makes little sense if the term includes states."); *Florida*, 2022 WL 2431443, at *2 ("[T]he Court

finds this argument unpersuasive because it is grounded on § 1391(c)(2), which governs the residency of corporations and other business organizations, not sovereign states." (footnote omitted)); *Pennsylvania*, 351 F. Supp. 3d at 809 (same).

The government's argument runs aground in even more respects. For instance, "it is clear that Section 1391(c)(2) 'makes no reference one way or the other as to the residency of a sovereign state' because states, unlike corporations, do not have a principal place of business." *Garland*, 2023 WL 4851893, at *4 (quoting *Texas*, 2023 WL 2457480, at *3). Indeed, as just noted, the government "do[es] not cite any case holding that a sovereign state has a principal place of business." *Id.*; *Daily Wire, LLC*, 2024 WL 2022294, at *14 ("Likewise, the fact that 'states, unlike corporations, do not have a principal place of business' is another indication that § 1391(c)(2) does not apply to states."). Moreover, Section 1391(c)(2) "is not the 'generally phrased … catchall' that the defendants claim it is." *Garland*, 2023 WL 4851893, at *5. It "is the second in a list of three residency definitions—an odd place to hide a leftover catchall." *Id.* And it is not generally phrased because it "addresses specific entities." *Id.* Accordingly, the government's "attempt to characterize Section 1391(c)(2) as a residual clause is belied by a fair reading of the statutory text, context, precedent, and tradition." *Id.*

The government here closes with a few more misleading arguments. For example, the government cites (at 6) Section 3805 in Wright & Miller for its misplaced "principal place of business" argument. But the government does not disclose a neighboring provision—Section 3815, *see supra* at 4—which squarely rejects the government's argument. And to be clear: The government knows about Section 3815 from its recent losses. *See, e.g.*, *Daily Wire, LLC*, 2024 WL 2022294, at *14 n.3; *Walsh*, 2023 WL 2663256, at *3 (both citing Section 3815). Similarly, the government sweeps aside the Fifth Circuit's decision in *Atlanta & F.R. Co.* as "*dicta* … from 130 years ago." Mot. at 6. Article III judges show more respect. *E.g.*, *U.S. Dep't of Homeland Security*, 661 F. Supp. 3d at 689 ("[T]his Court is bound by Fifth Circuit precedent."). As every court to consider this issue has recognized, moreover, the Fifth

Circuit's statement that a State resides at all points within its boundaries is simply common sense. *See Garland*, 2023 WL 4851893, at *3 ("[C]ourts have consistently relied on this on-point precedent [*Atlanta & F.R. Co.*] when addressing plaintiff state's residency under Section 1391(e)." (citing *Azar*, *Walsh*, *Texas*, and *Florida*)).

Last, the government accuses the Ninth Circuit (but not every other court rejecting the government's argument?) of "rewrit[ing]" the venue statute to exclude States. Mot. at 6–7. This is disingenuous. As any ordinary English speaker knows—and as the courts have explained—"the venue statute does not define residency for all types of litigants." *Garland*, 2023 WL 4851893, at *5. And it "does not reference, let alone define, the residency of a state." *Id.* at *4. The courts could not thus "exclude" States from the limited set of residency definitions in the venue statute when they were already excluded to begin with. In truth, the government's unbroken string of losses is not the result of courts "rewriting" the venue statute; it is a reflection of the government's poor legal theory. Venue is proper.[1]

## B.    The Government Cannot Demonstrate That Another Venue Is Clearly More Convenient.

Because venue is plainly proper here, the burden shifts to the government—and the government "alone"—"to 'adduce evidence and arguments that clearly establish good cause for transfer based on convenience and justice.'" *In re Clarke*, 94 F.4th at 508. "That standard is not met if the movant merely shows that the transferee venue 'is more likely than not to be more convenient.'" *Id.* "Likewise, 'the fact that litigating would be more convenient for the defendant elsewhere is not enough

---

[1] Because venue is proper based on Louisiana's residence in this District, the Court "need not" consider whether venue also is proper under Section 1391(e)(1)(B) because a substantial part of the events or omissions giving rise to the claim occurred here. *Florida*, 2022 WL 2431443, at *2 n.1. Nonetheless, the Final Rule, by design, bears directly on the State of Louisiana as an employer—and the government does not dispute that the Final Rule is designed to force employers like Louisiana to extend abortion accommodations to all employees, including those within this District.

to justify transfer.'" *Id.* "Accordingly, to establish 'good cause,' a movant must show (1) that the marginal gain in convenience will be *significant*, and (2) that its evidence makes it plainly obvious—i.e., clearly demonstrated—that those marginal gains will *actually* materialize in the transferee venue." *Id.* (emphases in original). The government comes nowhere close to carrying its burden to show that litigating this case in Baton Rouge, Jackson, or Washington, D.C.—especially while simultaneously litigating *U.S. Conference of Catholic Bishops* here—would be clearly more convenient than litigating the case here.

**1.** This is principally so because the government is poised to litigate virtually identical issues in this Division before this Honorable Judge—in *U.S. Conference of Catholic Bishops*. How would it make any sense—let alone be "clearly more convenient"—to open an entirely separate line of litigation in a new forum elsewhere when the government is already here? The government's attorneys already have complained to this Court about conflicting schedules with their parallel Final Rule litigation in *Tennessee v. EEOC*, No. 24-cv-84 (E.D. Ark.), which resulted in this Court having to move the very first scheduled hearing in this case. ECF Nos. 11, 12. And now the government's three attorneys want to add a third silo of litigation in some other forum and thereby increase the risk of scheduling conflicts and hearing and decisional delays? That is a request for a *more inconvenient* state of affairs than simply litigating this case here in its proper venue alongside *U.S. Conference of Catholic Bishops.*

To be fair to the government, the complaint in *U.S. Conference of Catholic Bishops* was not on file when the government filed its Motion to Transfer in this case. So, Plaintiffs extended a courtesy to the government by offering to treat the government's convenience argument as withdrawn. *See* Ex. A at 2 ("Unless you move to transfer *U.S. Conference of Catholic Bishops*, I don't see how you can maintain … your [convenience] argument in this case without forcing us to invoke Rule 11."). The government refused, insisting that the cases "are not formally consolidated, are assigned to different judges, and appear to be proceeding on different procedural paths." *Id.* at 1–2. That refusal was nonsense then

because it avoided the fact that the government will not be inconvenienced at all by litigating this case alongside *U.S. Conference of Catholic Bishops*, which the government is already poised to litigate here. The refusal is especially nonsense now given that consolidation before this Court seems likely and the two cases will likely soon be on the same procedural path. Accordingly, whether or not the government withdraws its convenience argument now, the argument is meritless and—by having to brief an opposition to this argument—Plaintiffs are forced to contemplate invoking Rule 11.

**2.** The ordinary convenience factors only underscore that there is no merit to the government's convenience argument. "The private-interest factors are '(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive.' The public-interest factors are '(5) the administrative difficulties flowing from court congestion; (6) the local interest in having localized interests decided at home; (7) the familiarity of the forum with the law that will govern the case; and (8) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law.'" *In re Clarke*, 94 F.4th at 509.

*First*, on the private-interest factors, the government does not even try to invoke any particular factor. Its only argument is that "the challenged policy was conceived and promulgated in Washington, D.C., and the administrative record—upon which this APA case will be decided—is also located there." Mot. at 10. But that is true in every case challenging an Act of Congress or final agency action, yet no one thinks the government automatically gets a presumption in favor of litigating in its own backyard. And the government does not disclose that its argument is literally copied and pasted from its other failed transfer motions. *See Walsh*, 2023 WL 2663256, at *4 (rejecting "Defendants' sole justification for *all four* private interest factors militating in favor of transfer [which was] that the challenged policy 'was conceived and promulgated in Washington, D.C., and the administrative record—upon which this APA case will be decided—is also located there'"); *see also U.S. Dep't of Homeland*

*Security*, 661 F. Supp. 3d at 691 ("With respect to the first private interest factor—the relative ease of access to sources of proof—the Court finds that the vast majority of the evidence will be electronic, so it will be equally accessible in any forum. For example, the administrative record will be filed electronically."); *Garland*, 2023 WL 4851893, at \*7 (rejecting the government's claim that "[d]ocuments, including relevant to standing declarations and the enactment of the challenged Act, are also located in the Washington, D.C. area" and emphasizing that, "by allowing plaintiffs to sue in the district of their residence, Congress has already decided that suits against the federal government can be heard nationwide").

*Second*, the government fares no better on the public-interest factors. It says nothing about court congestion (factor 5) or conflict of laws (factor 8). Nor can it say anything now about this Court's familiarity with the relevant law (factor 6), given that the Court will adjudicate *U.S. Conference of Catholic Bishops*. Instead, all the government can muster is that "[t]his District has no 'local interest' in having the case adjudicated here" and "Plaintiffs' claims … also have no connection to the District, and instead have a strong connection to the District of Columbia." Mot. at 10. This a reprise of the government's improper-venue argument and, again, other courts have rejected it. *See Walsh*, 2023 WL 2663256, at \*4 ("Defendants' argument that there are no localized interests in this District relies on the notion that Texas does not reside in the Northern District of Texas. But Texas *does* reside in this District[.]" (citation omitted)). In addition, "[t]he citizens of the [Western District] have no lesser interest in the [legality] of federal laws than do those in metroplexes such as [Baton Rouge] and Washington, D.C." *Garland*, 2023 WL 4851893, at \*9; *Walsh*, 2023 WL 2663256, at \*4 ("Where parties 'are located across the state and across the country,' this is not the sort of 'localized case' where the citizens of Washington, D.C. have a greater 'stake' in the litigation than the residents of Amarillo."); *U.S. Dep't of Homeland Security*, 661 F. Supp. 3d at 691–92 ("[T]he Court finds that the citizens of the proposed transferee venues have no more interest in having this case decided there than in Victoria. There is no

dispute that the policy at issue in this case has national implications." (citation omitted)). "[I]t is the [government that bears] the burden of showing that one of the destination venues clearly has a greater local interest than the [Western District]"—but the most the government can show here is "that the localized-interest factor is neutral in this case," "and, thus, does not favor transfer." *Garland*, 2023 WL 4851893, at \*9. Moreover, the government is dead wrong to say that Plaintiffs' claims have nothing to do with this District. As the Court is aware, the State of Louisiana has state employees throughout the Western District—and the Final Rule's abortion-accommodation mandate bears directly on the State's employment relationship vis-à-vis each of those employees.

As in the other cases the government has lost, therefore, "the public- and private-interest factors weigh decidedly against transfer." *Id.*

**3.** That leaves only the government's argument that, under 28 U.S.C. § 1404(a), a transfer to a more favorable (in the government's estimation) forum is in the "interest of justice" because the State supposedly "shopped" for this Honorable Judge.

As an initial matter, the government never acknowledges the repeated judicial decisions chastising the government for contriving an inquiry under Section 1404(a) that does not exist. "[T]he statutory requirement that courts consider 'the interest of justice' in the transfer analysis is already satisfied by applying the public- and private-interest factors" above. *Garland*, 2023 WL 4851893, at \*9; *see also Walsh*, 2023 WL 2663256, at \*5 ("[T]he 'interest of justice' analysis referenced in Section 1404(a) is already encompassed in the public interest factors that courts consider under existing precedent.'") (collecting cases)). Having failed to show that the public-interest factors clearly cut in its favor, therefore, the government cannot sneak "an allegation of forum shopping" in the backdoor to try to score a transfer nonetheless. *Garland*, 2023 WL 4851893, at \*10.

In all events, the government's attack on Plaintiffs and this Court is bizarre. The government decries parties who file in "single-judge" Divisions "where a party can effectively select its preferred

judge." *E.g.*, Mot. at 12. But the government admits (*e.g.*, *id.* at 13) that this Division is *not* a single-judge Division—and this case had a 10% chance of being assigned to this Honorable Judge, *see* Standing Order 1.61 at 2. The government's copying and pasting of its failed arguments in actual single-judge-Division cases is entirely misplaced here. And that is especially so given that Louisiana has "no guarantee of a certain outcome" before this Court, *Garland*, 2023 WL 4851893, at *11. *See, e.g.*, *Callais v. Landry*, 2024 WL 1903930 (W.D. La. Apr. 30, 2024) (ruling against Louisiana); *Arizona v. Garland*, 2024 WL 1645417 (W.D. La. Apr. 16, 2024) (same).

Even more fundamentally, the government—without apparent irony—proposes to engage in the exact sort of judge-shopping that it imputes to Plaintiffs. If the government had its way, the government would litigate this case in front of judges in Baton Rouge, Jackson, or Washington, D.C. that the government believes would treat the government more favorably (and Plaintiffs more harshly) than this Court will. That would generate the precise sort of "perceive[d] injustice" the government complains about now. *Garland*, 2023 WL 4851893, at *12. Put otherwise, the government's "judge-shopping" accusation "cuts both ways." *Id.*; *U.S. Dep't of Homeland Security*, 661 F. Supp. 3d at 693 (Motions like this "exacerbate[] the very public perception" the government purportedly seeks to avoid). And it is deeply offensive to this Court and our system of justice.

If the government truly believes that this Court cannot be impartial, then it should move for the Court's recusal. That is the proper mechanism for the government's apparent concerns—not veiled accusations in transfer motions that trigger the very perceptions the government decries.

In short, the Court should end its order denying the Motion to Transfer just as the others have: "It would be a dereliction of the Court's duty to send this dispute to another judge to resolve when the case is already filed in a proper venue, and no evidence indicates—let alone clearly shows—that another forum would be more convenient or in the interest of justice." *Id.*; *see also Walsh*, 2023 WL 2663256, at *6 ("Defendants propose an unprecedented and unworkable standard for motions to

transfer that would turn Section 1404 analysis on its head. The Court rejects this approach and must therefore deny the Motion.").

## CONCLUSION

Plaintiffs respectfully request that the Court deny the Motion to Transfer.

Dated: May 31, 2024

Respectfully submitted,

**ELIZABETH B. MURRILL**
**Attorney General of Louisiana**

*/s/ Tracy Short*
J. Benjamin Aguiñaga*
  *Solicitor General*
Tracy Short (La #23940)
  *Assistant Chief Deputy Attorney General*
OFFICE OF THE LOUISIANA ATTORNEY
GENERAL
1885 North Third Street
Baton Rouge, LA 70804
(225) 326-6766
aguinagab@ag.louisiana.gov
shortt@ag.louisiana.gov

*Counsel for Plaintiff State of Louisiana*

**LYNN FITCH**
**Attorney General of Mississippi**

*/s/ Justin L. Matheny*
Justin L. Matheny*
  *Deputy Solicitor General*
MISSISSIPPI ATTORNEY GENERAL'S
OFFICE
P.O. Box 220
Jackson, MS 39205
(601) 359-3680
justin.matheny@ago.ms.gov

*Counsel for Plaintiff State of*
*Mississippi*

*pro hac pending

13