**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAKE CHARLES DIVISION**

| | |
|---|---|
| THE STATE OF LOUISIANA,<br>By and through its Attorney General, Elizabeth B. Murrill; and<br><br>THE STATE OF MISSISSIPPI,<br>By and through its Attorney General, Lynn Fitch,<br><br>                           PLAINTIFFS,<br><br>v.<br><br>EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>                           DEFENDANT. | Civil Action No. 2:24-cv-629 |

<br><br>

**MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFFS' MOTION FOR A § 705 STAY AND PRELIMINARY INJUNCTION**

# TABLE OF CONTENTS

TABLE OF CONTENTS ...................................................................................................ii

TABLE OF AUTHORITIES ............................................................................................iii

INTRODUCTION ..............................................................................................................1

BACKGROUND ................................................................................................................2

   I.   Congress Passes the PWFA to Promote Safe and Healthy
       Employee Pregnancies. .............................................................................................2

   II.  EEOC Proposes a Rule Requiring Employers to Accommodate
       Abortions That Would Be Illegal Under State Law. ...............................................4

   III. EEOC Ignores the Outcry and Issues its
       Abortion-Accommodation Mandate. .......................................................................5

LEGAL STANDARD ........................................................................................................6

ARGUMENT ......................................................................................................................7

   I.   The States Are Likely to Succeed on the Merits. ....................................................7

     A.  The Final Rule Exceeds EEOC's Statutory Authority, Violates
         the Constitution, and Is Arbitrary and Capricious. ...........................................7

     B.  The States Have Standing. .................................................................................16

   II.  The States Will Suffer Irreparable Injuries Absent a Stay and Injunction. ..........18

   III. The Equities and Public Interest Favor a Stay and Preliminary Injunction. ........21

PRAYER FOR RELIEF ...................................................................................................22

# TABLE OF AUTHORITIES

**Cases**

*303 Creative LLC v. Elenis,*
   600 U.S. 570 (2023) ...................................................................................................14

*Abbott v. Perez,*
   585 U.S. 579 (2018) ...................................................................................................20

*Bd. of Trustees of Univ. of Ala. v. Garrett,*
   531 U.S. 356 (2001) ...................................................................................................13

*BP p.l.c. v. Mayor & City Council of Baltimore,*
   141 S. Ct. 1532 (2021) ...............................................................................................11

*Bragdon v. Abbott,*
   524 U.S. 624 (1998) ...................................................................................................11

*Braidwood Mgmt., Inc. v. Equal Emp. Opportunity Comm'n,*
   70 F.4th 914 (5th Cir. 2023) ......................................................................................17

*BST Holdings, LLC v. OSHA,*
   17 F.4th 604 (5th Cir. 2021) ......................................................................................19

*City of Boerne v. Flores,*
   521 U.S. 507 (1997) ...................................................................................................13

*Clarke v. Commodity Futures Trading Comm'n,*
   74 F.4th 627 (5th Cir. 2023) ........................................................................................6

*Clean Water Action v. EPA,*
   936 F.3d 308 (5th Cir. 2019) ........................................................................................8

*Collins v. Yellen,*
   141 S. Ct. 1761 (2021) ...............................................................................................17

*Contender Farms, L.L.P. v. U.S. Dep't of Agric.,*
   779 F.3d 258 (5th Cir. 2015) ......................................................................................16

*Dobbs v. Jackson Women's Health Org.,*
   597 U.S. 215 (2022) ............................................................................................passim

*EEOC v. Houston Funding II, Ltd.,*
   717 F.3d 425 (5th Cir. 2013) ........................................................................................9

*Franciscan All., Inc. v. Becerra,*
   47 F.4th 368 (5th Cir. 2022) ......................................................................................20

*Garcia v. San Antonio Metro. Transit Auth.*,
   469 U.S. 528 (1985) ............................................................................................14

*Haaland v. Brackeen*,
   599 U.S. 255 (2023) ............................................................................................16

*Jama v. ICE*,
   543 U.S. 335 (2005) ............................................................................................11

*Kimel v. Fla. Bd. of Regents*,
   528 U.S. 62 (2000) ..............................................................................................13

*Louisiana v. Biden*,
   55 F.4th 1017 (5th Cir. 2022) .............................................................................19

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) ........................................................................................7, 16

*Maryland v. King*,
   567 U.S. 1301 (2012) ..........................................................................................20

*Missouri v. Biden*,
   83 F.4th 350 (5th Cir. 2023) ...............................................................................14

*Nat'l Inst. of Fam. & Life Advocs. v. Becerra*,
   585 U.S. 755 (2018) ............................................................................................20

*Nken v. Holder*,
   556 U.S. 418 (2009) ..............................................................................................6

*Opulent Life Church v. City of Holly Springs*,
   697 F.3d 279 (5th Cir. 2012) ..............................................................................21

*Planned Parenthood of Se. Pa. v. Casey*,
   505 U.S. 833 (1992) ..................................................................................3, 4, 9, 12

*Rest. L. Ctr. v. U.S. Dep't of Lab.*,
   66 F.4th 593 (5th Cir. 2023) ...............................................................................19

*Southwest Airlines Co. v. Saxon*,
   596 U.S. 450 (2022) ............................................................................................10

*Tex. Office of Pub. Util. Counsel v. FCC*,
   183 F.3d 393 (5th Cir. 1999) ..............................................................................16

*Texas v. EEOC*,
   933 F.3d 433 (5th Cir. 2019) ....................................................................7, 16, 18

*Texas v. EPA,*
    829 F.3d 405 (5th Cir. 2016) ................................................................. 6, 19

*Texas v. United States,*
    787 F.3d 733 (5th Cir. 2015) .................................................................... 18

*Turtle Island Foods, S.P.C. v. Strain,*
    65 F.4th 211 (5th Cir. 2023) .................................................................... 13

*VanDerStok v. Garland,*
    86 F.4th 179 (5th Cir. 2023) ...................................................................... 8

*Wages & White Lion Invs., LLC. v. FDA,*
    16 F.4th 1130 (5th Cir. 2021) ................................................................... 19

*Walker v. Texas Div., Sons of Confederate Veterans, Inc., Inc.,*
    576 U.S. 200 (2015) ........................................................................... 14, 21

*Yates v. United States,*
    574 U.S. 528 (2015) ................................................................................ 10

*Young v. United Parcel Serv., Inc.,*
    575 U.S. 206 (2015) .................................................................................. 2

**Statutes**

5 U.S.C. § 704 ..................................................................................................... 7

5 U.S.C. § 705 ..................................................................................................... 6

5 U.S.C. § 706 .................................................................................................. 7, 8

29 U.S.C. § 2611(2)(A) ....................................................................................... 2

29 U.S.C. § 2612(a)(1) ........................................................................................ 2

42 U.S.C. § 2000 ....................................................................................... passim

42 U.S.C. § 12112(a) ........................................................................................... 2

La. Rev. Stat. § 23:341 ....................................................................................... 2

La. Rev. Stat. § 23:342(B) ................................................................................. 17

La. Rev. Stat. § 40:1061 .................................................................................... 18

Miss. Code § 41-41-45 ...................................................................................... 18

**Other Authorities**

167 Cong. Rec. H2346 (daily ed. May 14, 2021) ...................................................................3

168 Cong. Rec. E1360 (Dec. 27, 2022)..................................................................................3

168 Cong. Rec. S10081 (daily ed. Dec. 22, 2022)..................................................................3

*Abortion*, Black's Law Dictionary (11th ed. 2019)..............................................................9

*Condition*, New Oxford Am. Dictionary 362 (3d ed. 2010) .................................................9

Consolidated Appropriations Act, 2023, div. II, Pub. L. 117-328 (2022), 136 Stat. at 6084 .................3

EEOC, *Implementation of Pregnant Workers Fairness Act*,
    89 Fed. Reg. 29,096 (Apr. 19, 2024) .................................................................passim

EEOC, *Regulations to Implement the Pregnant Workers Fairness Act*,
    88 Fed. Reg. 54,714 (Aug. 11, 2023)........................................................................4

*Elective abortion*, Stedmans Medical Dictionary 1470 (Nov. 2014) ...................................9

*Medical*, New Oxford Am. Dictionary 1087 (3d ed. 2010) ..................................................9

**Rules**

Fed. R. Civ. P. 65 ...................................................................................................................6

**Constitutional Provisions**

La. Const. art. I, § 20.1.........................................................................................................18

# INTRODUCTION

A purely elective abortion of a healthy pregnancy is a *procedure*, not a *condition*. That is common sense and ordinary English. And that is all the Court needs to hold to rule for Plaintiffs Louisiana and Mississippi in this case.

This case arises under the Pregnant Workers Fairness Act of 2022 (PWFA), which Congress passed to promote healthy pregnancies and healthy babies. The PWFA achieves that goal by requiring employers (including States) to provide reasonable accommodations to pregnant employees for "known limitations" related to "pregnancy, childbirth, and related medical conditions." Things like extra breaks and other virtually costless accommodations that protect both mother and child. But the Equal Employment Opportunity Commission (EEOC) has flipped the PWFA on its head. It did so by deeming an employee's purely elective abortion a "medical condition" that her employer must accommodate. *See* Compl. Ex. A, EEOC, *Implementation of Pregnant Workers Fairness Act*, 89 Fed. Reg. 29,096 (Apr. 19, 2024) (Final Rule). Put plainly: Under the Final Rule, the *pro*-pregnancy PWFA requires employers to accommodate the *termination* of healthy pregnancies. Even as to employers like the States, and even as to abortions that would be illegal under Louisiana and Mississippi law.

The Final Rule is unlawful and defies common sense and the English language. Not only is the Final Rule completely untethered from the statutory text, it also runs into a host of constitutional problems—not the least of which is its abrogation of the States' "legitimate interests," *Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215, 301 (2022), in regulating abortion and expressing their policies in favor of fetal life. For these and other reasons expressed below, the States are likely to succeed in their APA challenge to the Final Rule; they stand to suffer immediate compliance and sovereignty harms from the Final Rule; and the equities and the public interest cut squarely in their favor. The Court should stay the Final Rule's June 18, 2024, effective date and enjoin EEOC's enforcement of the Final Rule's abortion-accommodation mandate pending judicial review.

## BACKGROUND

In any given year, hundreds of thousands—if not millions—of female employees in America will become pregnant. For those women and their families, the bipartisan PWFA brought welcomed protections by ensuring healthy pregnancies and healthy babies. But EEOC's abortion-accommodation mandate turns a law about *promoting* healthy pregnancies into a mandate that employers accommodate the *termination* of healthy pregnancies. That mandate is unlawful.

## I. CONGRESS PASSES THE PWFA TO PROMOTE SAFE AND HEALTHY EMPLOYEE PREGNANCIES.

The PWFA fills a years-long gap in federal regulation of the relationship between employers and pregnant employees. Before the PWFA, three federal laws grazed the issue of pregnancy in the workplace: Title VII, as amended by Pregnancy Discrimination Act of 1978, requires accommodations for pregnant employees (and makes unlawful the failure to accommodate) *only if* the employer intentionally discriminates against pregnant employees compared to other employees "not so affected but similar in their ability or inability to work." 42 U.S.C. §§ 2000e(k), 2000e–2(a)(1); *see Young v. United Parcel Serv., Inc.*, 575 U.S. 206, 229–30 (2015). The Americans with Disabilities Act mandates accommodations only for complicated pregnancies that qualify as a disability. 42 U.S.C. § 12112(a). And the Family Medical Leave Act permits—in limited instances—pregnant and post-partum employees twelve weeks of unpaid leave. 29 U.S.C. §§ 2611(2)(A), 2612(a)(1). At the state level, pro-family employment laws—like Louisiana's—stood (and continue to stand) in the gap to protect women against other forms of pregnancy discrimination. *See* La. Rev. Stat. § 23:341; 89 Fed. Reg. 29,170 tbl. 1 (collecting state laws)

In 2021, a bipartisan coalition in Congress set out to pass the PWFA—the first federally required workplace accommodations for pregnant employees. The PWFA's primary sponsors touted

2

it as providing "commonsense accommodations" for pregnant workers nationwide.[1] This way, women need not choose between "their baby's health" and "their job." 167 Cong. Rec. H2346 (daily ed. May 14, 2021) (statement of Rep. Carolyn Maloney). At the same time, covered employers would face little to no expense for PWFA accommodations—like providing a stool, or a water bottle, or additional bathroom breaks. *See, e.g.*, 168 Cong. Rec. S10081 (daily ed. Dec. 22, 2022) (statement of Sen. Bob Casey); 168 Cong. Rec. E1360 (Dec. 27, 2022) (statement of Rep. Suzanne Bonamici during extension of remarks).[2] And so the PWFA was able to garner otherwise-unprecedented support from *both* Planned Parenthood and the U.S. Conference of Catholic Bishops. *See* 168 Cong. Rec. S10081 (daily ed. Dec. 22, 2022) (statement of Sen. Bob Casey). In December 2022, Congress passed, and President Biden signed, the PWFA into law as part of the year-end consolidated appropriations package. *See* Consolidated Appropriations Act, 2023, div. II, Pub. L. 117-328 (2022), 136 Stat. at 6084.

The PWFA's text illuminates why it received such bipartisan support: Covered employers cannot discriminate against employees with "known limitations related to the pregnancy, childbirth, or related medical conditions of a qualified employee." 42 U.S.C. § 2000gg-1(1). And "known limitation" means a "physical or mental condition related to, affected by, or arising out of pregnancy, childbirth, or related medical conditions." *Id.* § 2000gg(4). Examples of PWFA-prohibited discrimination include: (1) refusing to provide reasonable accommodations; (2) forcing an employee to accept an accommodation that is not reasonable; (3) denying employment opportunities because of the employee's need for a reasonable accommodation; (4) forcing an employee to take paid or unpaid leave rather than providing a reasonable accommodation; or (5) taking an adverse employment action against an employee because they requested a reasonable accommodation. *Id.* § 2000gg-1(1)–(5).

---

[1]    Bob Casey, *Casey, Cassidy Introduce Bipartisan Pregnant Workers Fairness Act, Propose Protections Against Workplace Discrimination* (Apr. 29, 2021), tinyurl.com/4jz68pcb.

[2]    *See also*, *e.g.*, *Republic Senator Blocks Murray-Casey-Cassidy Effort to Pass Pregnant Workers Fairness Act*, S. Comm. On Health, Educ., Labor & Pensions (Dec. 8, 2022), tinyurl.com/ywryjhru (According to Senator Murray, PWFA's purpose was "to provide basic, common sense, low cost, and even no cost accommodation.").

Abortion is not mentioned once. *See id.* § 2000gg *et seq.* The PWFA left it to EEOC to provide further "examples of reasonable accommodations." *Id.* § 2000gg-3(a).

## II.   EEOC PROPOSES A RULE REQUIRING EMPLOYERS TO ACCOMMODATE ABORTIONS THAT WOULD BE ILLEGAL UNDER STATE LAW.

Despite the clear statutory text and legislative history of PWFA, EEOC responded by wielding its rulemaking authority to propose a rule that would require employers—including States, religious entities, and every other covered employer—to accommodate purely elective abortions, including those that would be prohibited by an employer State's law. *See* EEOC, *Regulations to Implement the Pregnant Workers Fairness Act*, 88 Fed. Reg. 54,714 (Aug. 11, 2023) (Proposed Rule). Under the Proposed Rule, EEOC called "having . . . an abortion" an "example[ ] of [a] pregnancy, childbirth, or related medical condition[ ]," which in turn requires a reasonable accommodation under the PWFA. *Id.* at 54,774. In other words, the Proposed Rule spun the Act's *pro*-pregnancy purpose into an *anti*-pregnancy mandate.

Louisiana and Mississippi joined a comment opposing the Proposed Rule—one of over fifty thousand comments in opposition that EEOC received. *See* 89 Fed. Reg. at 29,104. For good reason: The Proposed Rule lacked statutory authority, violated the U.S. Constitution, and was arbitrary and capricious in violation of the APA. *See* Compl., Ex. B (States' Comment). Members of Congress echoed those concerns. For example, the PWFA's lead Republican co-sponsor in the Senate, Senator Bill Cassidy, highlighted the pre-passage agreement of his Democrat co-sponsor, Senator Bob Casey: that "under the act, . . . EEOC, could not—could not—issue any regulation that requires abortion leave" or "require employers to provide abortions in violation of State law."[3] By acting otherwise, Senator Cassidy argued, EEOC had "ignored the statute and substituted its views on abortion for

---

[3]    Comment at 2 (Sept. 29, 2023) (quoting 168 Cong. Rec. S7050 (daily ed. Dec. 8, 2022)), tinyurl.com/7jvbmnfc.

those of Congress."[4] Similarly, the U.S. House of Representatives' Committee on Education and the Workforce commented that the "PWFA [d]oes [n]ot [a]pply to [a]bortions" and rebuked EEOC for "issu[ing] regulations contrary to the statute itself."[5] And in the same vein, Senator Mike Braun rejected EEOC's proposed extension of its abortion-accommodation mandate to States, noting that the Supreme Court in *Dobbs* "reserve[d] to the States the ability" to regulate abortion.[6]

## III.   EEOC IGNORES THE OUTCRY AND ISSUES ITS ABORTION-ACCOMMODATION MANDATE.

EEOC finalized the unlawful rule anyway: Despite admitting (as it must) that the PWFA is silent on abortion, *see* 89 Fed. Reg. at 29,111, EEOC imagined the "inclusion of abortion in the definition of 'pregnancy, childbirth, or related medical conditions,'" *see id.* at 29,104 (capitalization altered).  In particular, EEOC reasoned that "[t]here are some medical conditions where the relation to pregnancy will be readily apparent"—including "having or choosing not to have an abortion." *Id.* at 29,191. Commissioner Lucas dissented and issued a statement criticizing the Commission majority's "controversial" and "misguided" decision and use of "linguistic gymnastics" to "broaden the scope of the statute in ways that . . . cannot reasonably be reconciled with the text." *See* Compl., Ex. D, Andrea R. Lucas, Comm'r, Equal Emp't Opportunity Comm'n, Statement re: Vote on Final Rule to Implement the Pregnant Workers Fairness Act (Apr. 15, 2024), at 1, 16. She explained that, "contrary to the final rule's definition, a medical 'condition' is not the same as medical 'procedures.'" *Id.* at 11. And because an abortion is a procedure, not a condition, the PWFA cannot plausibly be required to mandate accommodations for purely elective abortions.

EEOC's definitional bait-and-switch transforms the PWFA. Once effective, the Final Rule will leverage the PWFA's protections to require employers to accommodate employees' abortions and

---

[4]   *Id.* at 1.
[5]   The Hon. Virginia Foxx, Comment at 1–2 (Oct. 10, 2023), tinyurl.com/5evp62d5.
[6]   The Hon. Mike Braun, Comment (Oct. 10, 2023), tinyurl.com/4pfupzfh.

to permit the filing of EEOC charges (and private lawsuits) for retaliation, coercion, or harassment "reasonably likely to interfere with" employees' elective abortions (what EEOC euphemizes as "the exercise or enjoyment of PWFA rights"). 89 Fed. Reg. 29,148.[7] And under the Final Rule, the States will be liable to "the same extent" as "any other public or private entity"—despite the "conflict between PWFA and State laws" limiting abortions. *Id.* at 29,112–13, 29,182.

Given the impending irreparable harm, Plaintiffs Louisiana and Mississippi sued EEOC, asserting that the Final Rule violates the APA and the Constitution. *See* Complaint, ECF No. 1 (May 13, 2024). The States seek a § 705 stay of the Final Rule's abortion-accommodation mandate and preliminary injunctive relief against EEOC's enforcement of it pending judicial review. Plaintiffs conferred with EEOC's counsel, who oppose the requested relief.

## LEGAL STANDARD

The States request a preliminary injunction against enforcement of the abortion-accommodation mandate and a temporary stay of the Final Rule's June 18 effective date. *See* Fed. R. Civ. P. 65; 5 U.S.C. § 705 (court may stay agency's action "to the extent necessary to prevent irreparable injury"). The States are entitled to both to preserve the status quo if they "show (1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable harm if the injunction does not issue, (3) that the threatened injury outweighs any harm that will result if the injunction is granted, and (4) that granting the injunction is in the public interest." *Clarke v. Commodity Futures Trading Comm'n*, 74 F.4th 627, 640–41 (5th Cir. 2023); *see Texas v. EPA*, 829 F.3d 405, 424, 435 (5th Cir. 2016) (same factors govern § 705). The factors of "harm to the opposing party and weighing the public interest . . . merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009).

---

[7]   The novel prohibition on "harassment" short of "the level of unlawful retaliation" is found nowhere in the statutory text.  89 Fed. Reg. 29,216 & n.185.

## ARGUMENT

The Final Rule's absurd abortion-accommodation regime stands at odds with the PWFA and the Constitution, so the States are likely to prevail on their APA claims. Absent a stay and preliminary injunctive relief, the Final Rule will impose real economic compliance and constitutional costs. The Court should stay the Final Rule's abortion-accommodation mandate and enjoin EEOC from enforcing it during this suit.

## I. THE STATES ARE LIKELY TO SUCCEED ON THE MERITS.

Under the APA, courts must "hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, [] otherwise not in accordance with law," "contrary to constitutional right, power, privilege, or immunity," or "in excess of statutory jurisdiction, authority, or limitations." 5 U.S.C. §§ 704, 706(2); *see, e.g.*, *Texas v. EEOC*, 933 F.3d 433, 447 (5th Cir. 2019). This is a case where a federal agency checked virtually all of these boxes in undertaking unlawful agency action that must now be set aside. Specifically, EEOC promulgated a Final Rule requiring the States to accommodate employees' purely elective abortions while purporting to implement the pro-pregnancy PWFA. *See* 89 Fed. Reg. 29,096. In doing so, it disregarded the plain meaning of the PWFA, ignored statutory and constitutional guardrails on agency decision-making, and created a regulation that cannot coexist with basic precepts of federalism or First Amendment liberties. And there is "little question that the [EEOC] action . . . has caused [the States] injury, and that a judgment preventing . . . the action will redress it." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561–62 (1992). The States are thus likely to prevail.

### A. The Final Rule Exceeds EEOC's Statutory Authority, Violates the Constitution, and Is Arbitrary and Capricious.

The Final Rule presents nearly every basis for invalidating agency action under the APA. The easiest way to walk through the defects is to begin with EEOC's lack of statutory authority to promulgate the abortion-accommodation mandate. That defect is independently fatal. 5 U.S.C.

§ 706(2)(A), (C). That defect, moreover, is underscored by the mandate's constitutional problems, which are themselves independently fatal—either on the merits or as a matter of constitutional avoidance.[8] *Id.* § 706(2)(B). And when you add in EEOC's arbitrary and capricious handling of these issues, that is the nail in the coffin. *Id.* § 706(2)(A). The States are at least likely, if not certain, to succeed on their APA claim, and the Final Rule's abortion-accommodation must therefore be set aside.

**1. Exceeds Statutory Authority. a.** Like any agency when it acts, EEOC "must point to explicit Congressional authority justifying [its] decisions." *Clean Water Action v. EPA*, 936 F.3d 308, 313 n.10 (5th Cir. 2019). In an APA challenge, "the core inquiry" is "whether the proposed agency rule is a lawful extension of the statute under which the agency purports to act." *VanDerStok v. Garland*, 86 F.4th 179, 188 (5th Cir. 2023). The answer lies in statutory interpretation. *See id.* And that should be the beginning and the end of the analysis in this case because EEOC's abortion-accommodation mandate far exceeds EEOC's statutory authority.

As explained above, the PWFA requires employers to "make reasonable accommodations to the known limitations related to the pregnancy, childbirth, or related medical conditions of a qualified employee." 42 U.S.C. § 2000gg-1(1). The PWFA defines "known limitation" as a "physical or mental condition related to, affected by, or arising out of pregnancy, childbirth, or related medical conditions." *Id.* § 2000gg(4). Running with that language, the Final Rule reasons that "related medical conditions" are "medical conditions that relate to pregnancy or childbirth." 89 Fed. Reg. 29,191. True enough. But then the Final Rule makes a mistake: It claims that "[t]here are some medical conditions where the relation to pregnancy will be readily apparent"—*including* "having or choosing not to have an abortion." *Id.* And from that conclusion flows a host of compliance obligations and enforcement

---

8    Plaintiffs preserved their constitutional arguments both on the merits and as a matter of constitutional avoidance. *See* Compl. ¶¶ 57, 60–65. Although they principally pitch their constitutional arguments below as a matter of avoidance, therefore, the arguments substantively stand on their own as well.

threats for any employer who even thinks about not accommodating an employee's purely elective abortion.

This abortion-accommodation mandate is utterly atextual because an abortion is not a *condition*; it is a *procedure*. To be precise, it is a "procedure[]" intended to end the condition of being pregnant, *Planned Parenthood of Se. Pa. v. Casey*, 505 U.S. 833, 845 (1992), not a "*condition*" itself. A "condition"— the key statutory term here—is a "state of health or physical fitness" or "illness or other medical problem." *Condition*, New Oxford Am. Dictionary 362 (3d ed. 2010); *see also EEOC v. Houston Funding II, Ltd.*, 717 F.3d 425, 428–29 & n.4 (5th Cir. 2013) (noting in the Title VII context that a "condition" related to pregnancy is a "physiological" state that is "initiated by pregnancy and concludes sometime thereafter"). Those states of health, fitness, or physiology related to pregnancy include, for example, "gestational diabetes; preeclampsia; HELLP (hemolysis, elevated liver enzymes and low platelets) syndrome; hyperemesis gravidarum; [and] anemia." 89 Fed. Reg. 29,183. But abortion unquestionably is neither a health or physiological state nor an illness. It is a procedure to "artificially induce[] termination of a pregnancy for the purpose of destroying an embryo or fetus." *Abortion*, Black's Law Dictionary (11th ed. 2019).

The word *medical* in "medical conditions" reinforces this point. Any ordinary English speaker who says "I have a medical condition" reasonably may be understood to refer to a particular "diagnosis and treatment of disease and maintenance of health." *Houston Funding II*, 717 F.3d at 428 n.4. After all, the term *medical* means "of or relating to the . . . treatment of illness and injuries." *Medical*, New Oxford Am. Dictionary 1087 (3d ed. 2010). But purely elective abortions—that is, medically unnecessary abortions in violation of Louisiana and Mississippi law—do not fit that understanding: By definition, such elective procedures are "*without* medical justification." *Elective abortion*, Stedmans Medical Dictionary 1470 (Nov. 2014).

The surrounding statutory context likewise confirms that purely elective abortions are not "medical conditions." Recall that, in context, the PWFA refers to "the pregnancy, childbirth, or related medical conditions of a qualified employee." 42 U.S.C. § 2000gg-1(1). In fact, the PWFA repeats that list five separate times in the substantive provisions, then again in the definitional section, then again in the remedies section, then again in the rulemaking provision, and then again in the "relationship to other laws" provision. *Id.* § 2000gg-1(1), (2), (3), (4), (5); *id.* § 2000gg(4); *id.* § 2000gg-2(g); *id.* § 2000gg-3(a); *id.* § 2000gg-5(a)(1). Such usage of terms—particularly where, as here, Congress invoked them repeatedly—implicate the "well-settled" ejusdem generis canon, which assumes that terms in a series are similar in nature. *See Southwest Airlines Co. v. Saxon*, 596 U.S. 450, 457 (2022); *Yates v. United States*, 574 U.S. 528, 545 (2015). Birds of feather, as they say. Here, the critical terms are *pregnancy* and *childbirth*—both terms that expressly aim toward the healthy and safe birth of a child. To interpret the next term in the series—*related medical conditions*—to cover a pregnancy-ending, fetus-killing procedure would thus be directly contrary to ordinary ejusdem generis principles.

The Final Rule's rewriting of "related medical conditions" to include elective abortions is unlawful and exceeds EEOC's authority.

**b.** In the Final Rule, EEOC attempted to justify its revisions to the PWFA's text on the ground that three (seriously, three) pre-*Dobbs* lower court cases interpreted anti-discrimination language in a different statute—Title VII—to bar employers from taking adverse actions against employees because they "contemplated having, or chose to have, an abortion." 89 Fed. Reg. 29,110, 29,152 n.296. EEOC also had previously issued informal guidance on Title VII along those lines. *Id.* at 29,152 n.296. And thus, EEOC proclaimed that its past interpretation of Title VII is "settled," and thus, that Congress must have intended to carry it forward in the PWFA. *Id.* at 29,106, 29,191 n.23.

EEOC's wrong-headed understanding of Title VII is unavailing on its own terms—but this argument fails for even more basic reasons. Specifically, the argument does not get off the ground

because EEOC's inability to find more than three pre-*Dobbs* cases is not "the sort of 'judicial consensus so broad and unquestioned that we must presume Congress knew of and endorsed it.'" *See BP p.l.c. v. Mayor & City Council of Baltimore*, 141 S. Ct. 1532, 1542 (2021) (a "smattering of lower court opinions" is insufficient); *see also Jama v. ICE*, 543 U.S. 335, 351–52 (2005) ("decisions of two Courts of Appeals" were "too flimsy" to justify using the canon). That is especially so "where, as here, 'the text and structure of the [PWFA] are to the contrary.'" *BP p.l.c.*, 141 S. Ct. at 1541 ("This Court bears no 'warrant to ignore clear statutory language on the ground that other courts have done so.'").

As for EEOC's self-serving reliance on its own past Title VII guidance, this case is nothing like *Bragdon v. Abbott*, 524 U.S. 624 (1998) (cited at 89 Fed. Reg. 29,191 n.23), where the Supreme Court emphasized that "[a]ll indications are that Congress was well aware of the position taken by [the Department of Justice's Office of Legal Counsel] when enacting the [Americans with Disabilities Act] and intended to give that position its active endorsement." *Id.* at 645. Here, EEOC does not cite any support, textual or otherwise, for its view that—in passing the PWFA—Congress was aware of and intended to implement EEOC's view about the prior meaning of *different* language in a *different* statute to mandate abortion accommodations in the PWFA. To the contrary, EEOC acknowledges that multiple sponsors of the bill insisted the PWFA would *not* require abortion accommodations. 89 Fed. Reg. at 29,109. That undisputed congressional record, therefore, likewise confirms that the prior-construction canon is inapposite here.

And all this is on top of EEOC's painfully mistaken view of Title VII itself. As relevant here, Title VII includes "because of or on the basis of pregnancy, childbirth, or related medical conditions" in its definition of "because of sex" or "on the basis of sex." 42 U.S.C. § 2000e(k). And in the same provision, the statute states that "[t]his subsection shall not require an employer to pay for health insurance benefits for abortion, except where the life of the mother would be endangered if the fetus were carried to term, or except where medical complications have arisen from an abortion[.]" *Id.*

11

EEOC takes that latter reference to abortion to mean that abortion is somehow hiding in the terms "pregnancy, childbirth, or related medical conditions." But that reference to abortion is just one of innumerable examples where Congress goes out of its way to make clear that it is not mandating the funding of abortion—including, for example, the familiar Hyde and Weldon Amendments and approximately one dozen provisions *in the same appropriations legislation containing the PWFA* that barred appropriations and federal entities from supporting and facilitating abortion. *See* Compl., Ex. B at 3 n.1 (States' Comment). That Congress went out of its way here, also, to expressly prohibit funding for abortion is entirely unremarkable and does not magically transform Title VII into an abortion-accommodation mandate.

Finally, even if Title VII were written as EEOC prefers it, EEOC has no answer to the fact that the PWFA is fundamentally different than Title VII. Title VII is an anti-discrimination law unlike the PWFA. The PWFA expressly incorporates some portions of Title VII, *e.g.*, 42 U.S.C. § 2000gg(2), (3), but notably *does not* incorporate the abortion-reference EEOC prefers. And the PWFA's substantive language is narrower than Title VII's: It requires reasonable accommodations for "*known limitations* related to [] pregnancy, childbirth, or related medical conditions"—language that does not appear in Title VII. *Id.* § 2000gg-1(1) (emphasis added). In each of these respects, Title VII is markedly different than the PWFA, and thus Title VII offers no interpretative help to EEOC here. And that ends this case on the text in the States' favor.[9]

---

[9]    For this reason, Plaintiffs do not need the wealth of legislative history showing that the PWFA was not intended to cover abortion, but it is certainly "extra icing on a cake already frosted." *Van Buren v. United States*, 593 U.S. 374, 396 (2021); *see also, e.g.*, 168 Cong. Rec. S7050 (daily ed. Dec. 8, 2022) (statement of Sen. Bob Casey) (Under the PWFA, "EEOC, could not—could not—issue any regulation that requires abortion leave" or "require employers to provide abortions in violation of State law."). Similarly, although Plaintiffs do not need the major questions doctrine, it too is extra icing given that the Final Rule attempts to regulate abortion—an issue of "great social significance," *Dobbs*, 597 U.S. at 300—and the abortion-accommodation mandate is "novel and fundamentally different" than any federal abortion law in history, *Biden v. Nebraska*, 143 S. Ct. 2355, 2369 (2022). *See also West Virginia v. EPA*, 597 U.S. 697, 723 (2022). These extra tools of interpretation thus only confirm that the abortion-accommodation mandate is unlawful.

**2. Contrary to Constitution.** The Final Rule's constitutional problems confirm its illegality. *See Turtle Island Foods, S.P.C. v. Strain*, 65 F.4th 211, 219 (5th Cir. 2023) ("[W]e 'shun an interpretation that raises serious constitutional doubts and instead adopt an alternative that avoids those problems.'").

*First*, and foremost, EEOC's abortion-accommodation mandate (on pain of money damages and other penalties) exceeds Congress's constitutional ability to abrogate the States' sovereign immunity. *See* 89 Fed. Reg. 29,182 (States "will not be immune under the 11th Amendment to actions brought under the PWFA."). Congress's Section 5 power to abrogate sovereign immunity "extends only to 'enforc[ing]' the provisions of the Fourteenth Amendment." *City of Boerne v. Flores*, 521 U.S. 507, 519 (1997). And "the Fourteenth Amendment does not protect the right to an abortion" as a protected class or characteristic, *Dobbs*, 597 U.S. at 240 & n.22, 301, nor is declining to affirmatively accommodate abortion irrational or reflective of States' "history of purposeful unequal treatment" given the States' many legitimate interests in limiting the procedure, *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 82–83 (2000). Particularly in light of *Dobbs*, Congress could not validly abrogate the States' sovereign immunity under the Fourteenth Amendment to establish the abortion-accommodation mandate. And that is the best reason in the world to avoid interpreting the PWFA as EEOC prefers.

*Second*, the abortion-accommodation mandate does not satisfy basic congruence-and-proportionality review. "[I]n order to authorize private individuals to recover money damages against the States, there must be a pattern of discrimination by the States which violates the Fourteenth Amendment, and the remedy imposed by Congress must be congruent and proportional to the target violation." *Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 374 (2001). But there is nothing in the legislative record to suggest that Congress identified a problematic pattern of unconstitutional violations regarding abortion that the PWFA was intended to remedy. As a result, the abortion-accommodation "remedy" the Final Rule proposes is not congruent and proportional.

*Third*, the abortion-accommodation mandate uniquely violates the States' free speech rights. The Supreme Court "has made clear that the government (state and otherwise) has a 'right' to speak on its own behalf." *Missouri v. Biden*, 83 F.4th 350, 372 (5th Cir. 2023). Now, the government will likely complain here (as they did in *Missouri*) that States do not have *First Amendment* rights—and perhaps, in fact, the States' right to speak "derives from a state's sovereign nature, rather than from the First Amendment itself." *Id.* But "regardless of the source of the right," *id.*, it is undisputed that the States indeed have this right. *See Walker v. Texas Div., Sons of Confederate Veterans, Inc., Inc.*, 576 U.S. 200, 216 (2015) (State can "engag[e] in expressive conduct"). And that is the right the abortion-accommodation mandate threatens to destroy. Specifically, the States have made their views on abortion clear, through constitutions, through statutes, and through their own employment policies: Abortion is illegal with narrow exceptions, and the States will not accommodate purely elective abortions that would violate State law. *See* Compl. ¶¶ 10–12 (collecting State laws); Schober Decl. ¶¶ 7, 14; Hardwick Decl. ¶ 9. But the Final Rule, by design, seeks to alter that message by forcing States to accommodate those very abortions. Put in the Supreme Court's words, the Final Rule (and its liability for anti-interference) purports to do what "[n]o government" can—"affect a speaker's message by forcing [the speaker] to accommodate other views." *303 Creative LLC v. Elenis*, 600 U.S. 570, 596 (2023). And make no mistake, the Final Rule directly targets the States' speech. *See, e.g.*, 89 Fed. Reg. 29,141, 29,148 (declining to decide whether certain statements, including "statements in employee handbooks," would violate the Final Rule: it "will depend on the language of the statement"); *see also id.* at 29,216 (stating only that "the coercion provision does not apply to *any and all* conduct or statements that an individual finds intimidating" (emphasis added)).

*Finally*, and most fundamentally, the abortion-accommodation mandate "is destructive of state sovereignty." *Garcia v. San Antonio Metro. Transit Auth.*, 469 U.S. 528, 554 (1985). That is because the Final Rule disrupts the "dual sovereignty between the States and the Federal Government" by forcing

the States to provide (and fund) accommodations for elective abortions that directly conflict with the States' own laws and policies refusing to accommodate such abortions. *See id.* The Supreme Court's assurance that the States have "legitimate interests" in regulating abortion, *Dobbs*, 597 U.S. at 301, would be hollow if the federal government could just use the Fourteenth Amendment as a back door to force States to facilitate abortions. That is not how sovereignty works. And that is just another sign that the abortion-accommodation is unlawful.

**3. Arbitrary and Capricious.** The foregoing defects may be simultaneously characterized as "arbitrary and capricious"—and so, the States here offer only one additional example of the arbitrary and capricious nature of the Final Rule. Everyone knew that the Final Rule would have a profound impact on the States as employers. And thus everyone knew the potential for federalism, sovereignty, immunity, and related issues. Many comments received by the agency—including one joined by the plaintiff States here—stated as much.  Yet EEOC dismissed all this out of hand. EEOC said the Final Rule "does not have 'federalism implications,'" 89 Fed. Reg. 29,182, and any "interaction or conflict between PWFA and State laws . . . will be addressed on a case-by-case basis," *id.* at 29,112. Similarly, EEOC left any free-speech issues to be addressed in "a case-by-case analysis." *Id.* at 29,144, 29,148, 29,151, 29,220 n.206. Punting is fine on 4th-and-long, but not on these serious matters of constitutional concern. Here, punting chills free speech and forces compliance in the meantime by employers who fear enforcement actions, and forces difficult choices for States that must decide whether to change their policies or else risk enforcement actions. It was arbitrary and capricious for EEOC to avoid these issues altogether—and in all events, *this* is the proper "case" to do EEOC's "case-by-case analysis."[10]

---

[10]   Plaintiffs' Complaint likewise emphasized that EEOC's Final Rule is arbitrary and capricious because its "economic analysis assumes that the Final Rule will impose no added costs on States." Compl. ¶ 70. That assumption is plainly wrong because States like "Louisiana and Mississippi do not currently require employers to accommodate elective abortions that are prohibited by State law," and thus common sense suggests that

          *      *      *

For these reasons, the States are likely—and indeed certain—to prevail on their APA claims.

**B.      The States Have Standing.**

The States also have standing to sue because of the unrecoverable compliance costs and the affront to the States' sovereignty presented by the Final Rule. "Article III requires a plaintiff to show that she has suffered an injury in fact that is fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Haaland v. Brackeen*, 599 U.S. 255, 291–92 (2023). Because Louisiana and Mississippi—as employers—are directly regulated by the PWFA and the Final Rule, 89 Fed. Reg. 29,182, there is "little question that the [EEOC] action . . . has caused [the States] injury, and that a judgment preventing . . . the action will redress it." *Lujan*, 504 U.S. at 561–62.

**1.** Under the "ordinary rule," a party that is the "object[] of the [r]egulation[] may challenge it." *Contender Farms, L.L.P. v. U.S. Dep't of Agric.*, 779 F.3d 258, 266 (5th Cir. 2015). Here, the Final Rule "amounts to an increased regulatory burden" requiring the States "to comply with the [Rule] to avoid enforcement actions"—and that is sufficient for standing purposes. *Contender Farms*, 779 F.3d at 266 (first quote); *EEOC*, 933 F.3d at 447 (second quote). Indeed, this case is "easy" because EEOC "explicitly states that [the Final Rule] applies to state employers." *EEOC*, 933 F.3d at 446; *see* 89 Fed. Reg. 29,112–13, 29,182. And that is true regardless of EEOC's position as to when it plans to enforce the Rule against the States. *See Tex. Office of Pub. Util. Counsel v. FCC*, 183 F.3d 393, 449 (5th Cir. 1999) (refusing to "find a lack of standing simply because an agency has refused to enforce its own regulations").

---

employers in these States will incur *some* costs even if EEOC did not even try to quantify them. For that additional reason, therefore, the Final Rule is arbitrary and capricious.

The on-the-ground reality underscores the immediate harm the States face and that is redressable by a decision in their favor. Consider, for example, Louisiana's Office of the Attorney General.  It employs hundreds of women. Schober Decl. ¶ 11. For each of those women, OAG will provide, and has provided, accommodations for pregnancy, childbirth, and related medical conditions. Schober Decl. ¶¶ 12–13. It has done so consistent with state law for years and will continue to do so under the PWFA. Schober Decl. ¶ 13; *see* La. Rev. Stat. § 23:342(B) (reasonable accommodations for "pregnancy, childbirth, and related medical conditions"). But OAG has not provided and will not provide any accommodation (including unpaid leave) to facilitate an employee's purely elective abortion that would be illegal under Louisiana law—no matter where the abortion has been or will be performed—so long as an accommodation is not otherwise required by federal or state law. Schober Decl. ¶ 14.[11]

But EEOC's intent to enforce the Final Rule and the PWFA coerces the States to change their stance. 89 Fed. Reg. 29,112–13, 29,182; *see Braidwood Mgmt., Inc. v. Equal Emp. Opportunity Comm'n*, 70 F.4th 914, 928 (5th Cir. 2023). The moment the Final Rule takes effect—and only because of its abortion-accommodation mandate—the States will be forced to change their accommodations policies or else face enforcement action. Schober Decl. ¶ 15; Hardwick Decl. ¶¶ 10–12. And changing their policies alone will cost the States, at minimum, an estimated $500 and 120 employee hours in training costs, legal expenses, administrative costs, and productivity losses. Schober Decl. ¶¶ 15–18; Hardwick Decl. ¶¶ 10–12. For Article III standing purposes, such compliance costs are classic "pocketbook injury" redressable through a pre-enforcement APA rule challenge. *Collins v. Yellen*, 141 S. Ct. 1761, 1779 (2021).

---

[11]   The "constitutional right to interstate travel" no more requires an employer to accommodate traveling interstate for an abortion than it would require an employer to grant vacation days for a family trip.  *Cf. Dobbs*, 597 U.S. at 346 (Kavanaugh, J., concurring).

**2.** The States also have a discrete injury to their sovereignty traceable to the Final Rule and redressable by a decision in their favor. The States' "sovereign interest in the power to create and enforce a legal code" gives rise to "standing based on (1) federal assertions of authority to regulate matters they believe they control, (2) federal preemption of state law, and (3) federal interference with the enforcement of state law." *Texas v. United States*, 787 F.3d 733, 749 (5th Cir. 2015). So "being pressured to change state law constitutes an injury" for standing purposes. *EEOC*, 933 F.3d at 446.

These basic principles are especially critical here in the context of abortion—one of the most contentious social issues of our time. In *Dobbs*, the Supreme Court returned "the authority to regulate abortion" to "the people and their elected representatives." 597 U.S. at 292. The States, in turn, have exercised that authority to prohibit abortions except in limited instances. *See* La. Rev. Stat. § 40:1061; Miss. Code § 41-41-45. Their policy on abortion is thus clear. And in fact, Louisiana has gone so far as to amend its Constitution to promote life over death: "To protect human life, nothing in this constitution shall be construed to secure or protect a right to abortion or require the funding of abortion." La. Const. art. I, § 20.1. Consistent with this pro-life policy, the States as employers do not accommodate elective abortions for their employees. Schober Decl. ¶ 14; Hardwick Decl. ¶ 9.

As explained above, however, the Final Rule would force the States to alter their express values "to protect human life" by, instead, accommodating elective abortions. Such abortions would be illegal under State law—and yet the Final Rule would force the States to be complicit in them by expressly accommodating them. That is a direct attack on State sovereignty. *See EEOC*, 933 F.3d at 447. Accordingly, the States have standing to sue to protect their sovereignty.

## II.   THE STATES WILL SUFFER IRREPARABLE INJURIES ABSENT A STAY AND INJUNCTION.

For the same reasons they have standing, the States also face irreparable harm without a stay of and injunction against the Final Rule. They employ thousands of women as state employees, regularly have pregnant employees, and do not provide any accommodation to facilitate an employee's

elective abortion. Schober Decl. ¶ 14; Hardwick Decl. ¶ 9. Compelling employers like Louisiana and Mississippi to provide such accommodations for purely elective abortions under the Final Rule would thus cause irreparable harm to the States. Specifically, without a stay and an injunction, the States will suffer at least three specific, immediate, and irreparable injuries.

*Compliance.* It is well settled that "the nonrecoverable costs of complying with a putatively invalid regulation typically constitute irreparable harm" *Rest. L. Ctr. v. U.S. Dep't of Lab.*, 66 F.4th 593, 597 (5th Cir. 2023); *see Louisiana v. Biden*, 55 F.4th 1017, 1034 (5th Cir. 2022) ("complying with a regulation later held invalid almost *always* produces the irreparable harm of nonrecoverable compliance costs"); *BST Holdings, LLC v. OSHA*, 17 F.4th 604, 618 (5th Cir. 2021) (same). That is because, even if the costs would ordinarily be redressable in the form of money damages, EEOC's assertion of sovereign immunity would render such damages unrecoverable and thus "irreparable" harm. *See, e.g.*, *Wages & White Lion Invs., LLC. v. FDA*, 16 F.4th 1130, 1142 (5th Cir. 2021). The amount of those costs or the States' abilities to absorb the costs has no bearing on the irreparability of the harm. *EPA*, 829 F.3d at 433–34 ("it is not so much the magnitude but the irreparability that counts.").

The Final Rule will trigger a laundry list of compliance measures that the States would be required to undertake:

- Engaging in legal research to understand and prepare for the new requirements;

- Reviewing and updating policies as needed to comply with the new requirements;

- Informing and training employees about benefits;

- Reviewing, assessing, and otherwise processing any requested accommodations the States would not otherwise cover; and

- Answering, responding, litigating, or otherwise defending against charges of discrimination filed with EEOC, investigations by EEOC, lawsuits by DOJ, and private actions by allegedly aggrieved individuals.

Schober Decl. ¶¶ 15–17; Hardwick Decl. ¶¶ 10–11. And the abortion accommodations themselves will lead to productivity lost by the employee's absence, the complications arising from the States' attempts to fill the employee's gap in employment, and so on. Schober Decl. ¶ 17; Hardwick Decl. ¶ 10.  Louisiana's OAG alone estimates spending $500 and 120 employee hours to cover these costs. Schober Decl. ¶ 18.

*Infringement on State Sovereignty.* More fundamentally—and as detailed above—the Final Rule's abortion-accommodation mandate directly infringes the States' sovereignty. The citizens of Louisiana and Mississippi, through their respective elected representatives, have generally prohibited abortion with narrow exceptions. And they have the right to do so. As the Supreme Court emphasized in *Dobbs*, States may regulate abortion to further their legitimate interests, including:

> respect for and preservation of prenatal life at all stages of development; the protection of maternal health and safety; the elimination of particularly gruesome or barbaric medical procedures; the preservation of the integrity of the medical profession; the mitigation of fetal pain; and the prevention of discrimination on the basis of race, sex, or disability.

597 U.S. at 301. But the Final Rule plots an end-run around *Dobbs*. Under the Final Rule, the federal government could simply use the administrative state to coerce States to facilitate abortions—even though such coercion forces States like Louisiana and Mississippi to violate their policies of regulating abortion to protect unborn life and the interests above. That, too, is textbook irreparable harm. *See Abbott v. Perez*, 585 U.S. 579, 602 n.17 (2018) ("[T]he inability to enforce its duly enacted plans clearly inflicts irreparable harm on the State[.]" (citing *Maryland v. King*, 567 U.S. 1301 (2012) (Roberts, C.J., in chambers))).

*Compelled Speech.* Similarly, "the loss of freedoms guaranteed by the First Amendment . . . constitute[s] per se irreparable harm." *Franciscan All., Inc. v. Becerra*, 47 F.4th 368, 380 (5th Cir. 2022). By requiring the States to adopt policies facilitating purely elective abortions, the Final Rule unconstitutionally impinges upon the States' own right to speak and choose their own messaging. On

the issue of abortion and the importance of protecting the unborn, Louisiana and Mississippi have chosen a simple message: Abortion is prohibited with narrow exceptions. But the federal government seeks to alter that message by forcing the States to nonetheless accommodate abortions that are contrary to, and directly undermine, the States' message. Again, that is irreparable harm. *See Nat'l Inst. of Fam. & Life Advocs. v. Becerra*, 585 U.S. 755, 766 (2018) ("By requiring petitioners to inform women how they can obtain state-subsidized abortions—at the same time petitioners try to dissuade women from choosing that option—the licensed notice plainly 'alters the content' of petitioners' speech."); *cf. Walker*, 576 U.S. at 216 ("With respect to specialty license plate designs, Texas is not simply managing government property, but instead is engaging in expressive conduct.").

*     *     *

Because the States will be irreparably harmed absent a stay and injunction, the Final Rule's effective date should be stayed and its enforcement enjoined.

## III.   THE EQUITIES AND PUBLIC INTEREST FAVOR A STAY AND PRELIMINARY INJUNCTION.

The equities and the public interest, moreover, cut directly in the States' favor. That is primarily because all the potential harm falls on regulated employers like the States, not EEOC or anyone else. EEOC has no interest in enforcing an illegal Rule—and neither EEOC nor pregnant workers will suffer harm from a stay of and injunction against the abortion-accommodation mandate, because the PWFA's protections otherwise will remain in full force. *See* 42 U.S.C. § 2000gg-2(a)(1), (a)(3) (PWFA remedies). In fact, this is a particularly easy analysis given EEOC's burden—in light of the constitutional problems with the Final Rule—to "present powerful evidence of harm[s] to [their] interests" if a stay or injunction were granted. *Opulent Life Church v. City of Holly Springs*, 697 F.3d 279, 297–98 (5th Cir. 2012) ("injunctions protecting First Amendment freedoms are always in the public interest"). That is an impossible burden for EEOC. A stay and injunction are warranted.

## PRAYER FOR RELIEF

The States respectfully request that this Court stay the Final Rule's June 18 effective date and grant the States' motion for a preliminary injunction.

Dated: June 3, 2024                          Respectfully submitted,

ELIZABETH B. MURRILL
**Attorney General of Louisiana**

 _/s/ Tracy Short_
J. Benjamin Aguiñaga (*pro hac vice*)
  *Solicitor General*
Tracy Short (La #23940)
  *Assistant Chief Deputy Attorney General*
OFFICE OF THE LOUISIANA ATTORNEY
GENERAL
1885 North Third Street
Baton Rouge, LA 70802
(225) 326-6705
aguinagab@ag.louisiana.gov
shortt@ag.louisiana.gov

*Counsel for Plaintiff State of Louisiana*

LYNN FITCH
**Attorney General of Mississippi**

 _/s/ Justin L. Matheny_
Justin L. Matheny*
  *Deputy Solicitor General*
MISSISSIPPI ATTORNEY GENERAL'S
OFFICE
P.O. Box 220
Jackson, MS 39205
(601) 359-3680
justin.matheny@ago.ms.gov

*Counsel for Plaintiff State of Mississippi*

*pro hac pending