## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAKE CHARLES DIVISION

STATE OF LOUISIANA, *et al.*,

               *Plaintiffs*,

     v.

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,

               *Defendant*.

Case No. 2:24-cv-629

## DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR A § 705 STAY AND PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................1

BACKGROUND ................................................................................................................2

I.  Legal Framework Prior to the PWFA ..........................................................2

II.  The Pregnant Workers Fairness Act ............................................................3

    A.  Statutory Framework ..........................................................................3

    B.  EEOC's Rulemaking Implementing the PWFA ................................4

III.  Procedural History .......................................................................................5

STANDARD OF REVIEW ................................................................................................5

ARGUMENT ................................................................................................................6

I.  This Court Lacks Jurisdiction Over Plaintiffs' Claims ...............................6

    A.  Plaintiffs' Injuries Are Highly Speculative ......................................6

    B.  Plaintiffs' Theories of Injury Fail for Additional Reasons ...............8

        1.  Plaintiffs' Compliance Costs Are Unproven ........................8

        2.  The Final Rule Does Not Interfere With Enforcing Any State Laws ..............9

        3.  Plaintiffs Have Not Demonstrated Any Speech Injury ........10

    C.  Plaintiffs Have Not Proven that Their Injuries Are Traceable to EEOC or Redressable by an Order Against EEOC ........................11

    D.  Plaintiffs' Claims Are Not Ripe Given Their Fact-Specific Nature ....................12

II.  Plaintiffs Have Not Otherwise Shown a Likelihood of Success on Their Claims ................13

    A.  The PWFA's Text Requires Accommodations For Abortion ...............13

        1.  Title VII's Text Encompasses Employment Protections for Abortion, and Congress Used the Same Language in the PWFA ....................13

        2.  The Text of the PWFA Itself Covers Abortions ..................15

        3.  Materials Outside the PWFA's Text Do Not Change the Analysis ..................17

    B.  The PWFA Validly Abrogates State Sovereign Immunity ...............18

    C.  Plaintiffs' First Amendment Challenges Fail ................................20

D.  The Final Rule Does Not Infringe on State Sovereignty.......................................................22

III.  The Balance of the Equities Forecloses Relief...............................................................................24

IV.  Any Remedy Should Be Limited to Proven Injuries....................................................................25

CONCLUSION.........................................................................................................................................25

# TABLE OF AUTHORITIES

## Cases

*Abbott Lab'ys v. Gardner,*
  387 U.S. 136 (1967) ............................................................................................ 12

*Advantage Media, L.L.C. v. City of Eden Prairie,*
  456 F.3d 793 (8th Cir. 2006) ............................................................................. 12

*Air Transp. Ass'n of Am. v. FAA,*
  169 F.3d 1 (D.C. Cir. 1999) ............................................................................... 23

*Alden v. Maine,*
  527 U.S. 706 (1999) ............................................................................................ 12

*Alexander v. Gardner-Denver Co.,*
  415 U.S. 36 (1974) .............................................................................................. 4

*Alvarado v. Mine Serv., Ltd.,*
  626 F. App'x 66 (5th Cir. 2015) ......................................................................... 4

*Arkansas Times LP v. Waldrip,*
  37 F.4th 1386 (8th Cir. 2022) ............................................................................ 21

*Bd. of Trustees of Univ. of Ala. v. Garrett,*
  531 U.S. 356 (2001) ............................................................................................ 12

*Bragdon v. Abbott,*
  524 U.S. 624 (1998) ............................................................................................ 15

*Braidwood Management, Inc. v. EEOC,*
  70 F.4th 914 (5th Cir. 2023) ........................................................................... 8, 12

*Bridas S.A.P.I.C. v. Gov't of Turkmenistan,*
  345 F.3d 347 (5th Cir. 2003) ............................................................................. 23

*California v. EPA,*
  72 F.4th 308 (D.C. Cir. 2023) ........................................................................... 23

*Career Coll. & Sch. of Tex. v. Dep't of Educ.,*
  98 F.4th 220 (5th Cir. 2024) ............................................................................. 8

*City of Boerne v. Flores*
  521 U.S. 507 (1997) ............................................................................................ 19

*Clapper v. Amnesty Int'l USA,*
  568 U.S. 398 (2013) ......................................................................................... 7, 8

*Colorado v. EPA,*
  989 F.3d 874 (10th Cir. 2021) ........................................................................... 6

*Consumer Data Indus. Ass'n v. Texas,*
  No. 21-51038, 2023 WL 4744918 (5th Cir. July 25, 2023) ................................................. 11

*Contender Farms, LLP v. Dep't of Agric.,*
  779 F.3d 258 (5th Cir. 2015) ................................................................................................ 8

*DeJesus v. Fla. Cent. Credit Union,*
  No. 8:17-cv-2502, 2018 WL 4931817 (M.D. Fla. Oct. 11, 2018) .................................... 14

*Dobbs v. Jackson Women's Health Org.,*
  597 U.S. 215 (2022) ...................................................................................................... 6, 22

*Doe v. C.A.R.S. Prot. Plus, Inc.,*
  527 F.3d 358 (3d Cir. 2008) .............................................................................................. 14

*Ducharme v. Crescent City Deja Vu, L.L.C.,*
  406 F. Supp. 3d 548 (E.D. La. 2019) ......................................................................... 6, 12, 14

*EEOC v. Houston Funding II, Ltd.*
  717 F.3d 425 (5th Cir. 2013) ............................................................................................ 16

*Estiverne v. La. State Bar Ass'n,*
  863 F.2d 371 (5th Cir. 1989) ............................................................................................ 20

*FCC v. Prometheus Radio Proj.,*
  592 U.S. 414 (2021) .......................................................................................................... 23

*Fitzpatrick v. Bitzer,*
  427 U.S. 445 (1976) ..................................................................................................... 18, 19

*FTC v. Standard Oil Co. of Cal.,*
  449 U.S. 232 (1980) .......................................................................................................... 24

*Gen. Elec. Co. v. Gilbert,*
  429 U.S. 125 (1976) ...................................................................................................... 2, 14

*George v. McDonough,*
  596 U.S. 740 (2022) .......................................................................................................... 14

*Haaland v. Brackeen,*
  599 U.S. 255 (2023) ................................................................................................ 6, 11, 25

*Hodel v. Va. Surface Min. & Reclamation Ass'n, Inc.,*
  452 U.S. 264 (1981) .......................................................................................................... 23

*Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Boston,*
  515 U.S. 557 (1995) .......................................................................................................... 21

*In re Union Pac. R.R. Emp. Pracs. Litig.,*
  479 F.3d 936 (8th Cir. 2007) ....................................................................................... 14, 15

*Johanns v. Livestock Mktg. Ass'n,*
 544 U.S. 550 (2005) ................................................................................ 21

*Katzenbach v. Morgan,*
 384 U.S. 641 (1966) ......................................................................... 19, 20

*Keene Corp. v. United States,*
 508 U.S. 200 (1993) ......................................................................... 17, 18

*Lake Carriers' Ass'n v. MacMullan,*
 406 U.S. 498 (1972) .................................................................................. 8

*Louisiana v. Biden,*
 55 F.4th 1017 (5th Cir. 2022) ............................................................... 24

*Lujan v. Defs. of Wildlife,*
 504 U.S. 555 (1992) ................................................................. 6, 7, 8, 11

*Maitland v. Univ. of Minnesota,*
 260 F.3d 959 (8th Cir. 2001) ......................................................... 19, 20

*Manhattan Cmty. Access Corp. v. Halleck,*
 587 U.S. 802 (2019) ................................................................................ 20

*Maryland v. King,*
 567 U.S. 1301 (2012) .............................................................................. 24

*Missouri v. Biden,*
 83 F.4th 350 (5th Cir. 2023) .................................................................. 21

*Morgan v. Fletcher,*
 518 F.2d 236 (5th Cir. 1975) ................................................................. 24

*Mountain States Legal Found. v. Glickman,*
 92 F.3d 1228 (D.C. Cir. 1996) ............................................................... 22

*Munaf v. Geren,*
 553 U.S. 674 (2008) .................................................................................. 5

*Murthy v. Missouri,*
 144 S. Ct. 7 (2023) .................................................................................. 21

*NAACP v. Hunt,*
 891 F.2d 1555 (11th Cir. 1990) ............................................................. 20

*Nat'l Mining Ass'n v. United Steel Workers,*
 985 F.3d 1309 (11th Cir. 2021) ............................................................. 23

*Nat'l Truck Equip. Ass'n v. NHTSA,*
 711 F.3d 662 (6th Cir. 2013) ................................................................. 23

*Nevada Dep't of Hum. Res. v. Hibbs,*
538 U.S. 721 (2003) ................................................................................ 18, 19, 20

*Newport News Shipbuilding & Dry Dock Co. v. EEOC,*
462 U.S. 669 (1983) ........................................................................................... 2

*NLRB v. Bell Aerospace Co.,*
416 U.S. 267 (1974) ..................................................................................... 22, 23

*O'Shea v. Littleton,*
414 U.S. 488 (1974) ........................................................................................... 7

*Okpalobi v. Foster,*
244 F.3d 405 (5th Cir. 2001) (en banc) .......................................................... 11

*Planned Parenthood of Greater Texas Surgical Health Servs. v. City of Lubbock,*
542 F. Supp. 3d 465 (N.D. Tex. 2021) ............................................................ 11

*Rest. L. Ctr. v. Dep't of Lab.,*
66 F.4th 593 (5th Cir. 2023) .............................................................................. 8

*Roark & Hardee LP v. City of Austin,*
522 F.3d 533 (5th Cir. 2008) ........................................................................... 21

*Rumsfeld v. Forum for Acad. & Institutional Rts. (FAIR), Inc.,*
547 U.S. 47 (2006) ............................................................................................ 21

*Smith v. City of Jackson,*
544 U.S. 228 (2005) .......................................................................................... 14

*Student Gov't Ass'n v. Board of Trs. of Univ. of Mass.,*
868 F.2d 473 (1st Cir. 1989) ............................................................................ 20

*Summers v. Earth Island Inst.,*
555 U.S. 488 (2009) ........................................................................................ 7, 8

*Telescope Media Grp. v. Lucero,*
936 F.3d 740 (8th Cir. 2019) ...................................................................... 21, 22

*Tennessee v. Lane,*
541 U.S. 509 (2004) ..................................................................................... 18, 19

*Tex. Office of Pub. Util. Counsel v. FCC,*
183 F.3d 393 (5th Cir. 1999) ............................................................................. 8

*Texas v. EEOC*
933 F.3d 433 (5th Cir. 2019) ............................................................................. 8

*Texas v. EPA,*
829 F.3d 405 (5th Cir. 2016) ............................................................................. 8

*Texas v. Garland,*
    --- F. Supp. 3d ----, 2024 WL 967838 (N.D. Tex. Feb. 27, 2024) ............................ 9, 11

*Turic v. Holland Hosp., Inc.,*
    85 F.3d 1211 (6th Cir. 1996) ...................................................................................... 14

*United States v. Texas,*
    599 U.S. 670 (2023) ..................................................................................................... 10

*Valentine Properties Assocs., LP v. Dep't of Hous. & Urb. Dev.,*
    785 F. Supp. 2d 357 (S.D.N.Y. 2011) ......................................................................... 23

*Virginia ex rel. Cuccinelli v. Sebelius,*
    656 F.3d 253 (4th Cir. 2011) ....................................................................................... 10

*Walker v. Texas Division, Sons of Confederate Veterans, Inc.,*
    576 U.S. 200 (2015) ................................................................................................. 20, 21

*West v. Gibson,*
    527 U.S. 212 (1999) ................................................................................................. 24-25

*West Virginia v. EPA,*
    597 U.S. 697 (2022) ..................................................................................................... 18

*Whitmore v. Arkansas,*
    495 U.S. 149 (1990) ....................................................................................................... 7

*Whole Woman's Health v. Jackson,*
    595 U.S. 30 (2021) ......................................................................................................... 11

*Winter v. Nat. Res. Def. Council, Inc.,*
    555 U.S. 7 (2008) ...................................................................................................... 5, 24

*Young v. United Parcel Service, Inc.,*
    575 U.S. 206 (2015) ........................................................................................................ 3

*Zimmerman v. City of Austin, Texas,*
    881 F.3d 378 (5th Cir. 2018) .................................................................................... 7, 10

*Zipes v. Trans World Airlines,*
    455 U.S. 385 (1982) ........................................................................................................ 4

## Statues

5 U.S.C. § 705 ..................................................................................................................... 5, 6

29 U.S.C. § 2612 ..................................................................................................................... 3

42 U.S.C. § 109 ....................................................................................................................... 3

42 U.S.C. § 136 ....................................................................................................................... 3

42 U.S.C. § 2000e .............................................................................................................. 2, 13

42 U.S.C. § 2000e-2 ................................................................................................... 2

42 U.S.C. § 2000e-3 ................................................................................................. 10

42 U.S.C. § 2000e-6 ................................................................................................. 11

42 U.S.C. § 2000gg ............................................................................................ *passim*

42 U.S.C. § 2000gg-1 ............................................................................... 1, 3, 15, 17

42 U.S.C. § 2000gg-2 ....................................................................................... 3, 4, 20

42 U.S.C. § 2000gg-6 ............................................................................................... 25

42 U.S.C. § 12102 ..................................................................................................... 3

42 U.S.C. § 12112 ..................................................................................................... 3

42 U.S.C. § 12203 ................................................................................................... 10

La. Rev. Stat. § 40:1061 ......................................................................................... 10

La. Rev. Stat. § 23:341 ............................................................................................. 6

La. Rev. Stat. § 23:342 ............................................................................................. 6

Miss. Code § 41-41-45 ........................................................................................... 10

## Regulations

29 C.F.R. part 1604, App'x, Questions 34-37 (1979) ........................................ 2, 15

29 C.F.R. § 825.120 ................................................................................................. 3

29 C.F.R. § 1636.3 ................................................................................................. 16

29 C.F.R. § 1636.8 ................................................................................................. 25

89 Fed. Reg. 29,096 (Apr. 19, 2024) ............................................................... *passim*

## Other Authorities

Cmt. EEOC-2023-0004-98384 at 2 (Oct. 10, 2023),
    https://www.regulations.gov/comment/EEOC-2023-0004-98384 ..................... 4

H.R. Rep. No. 95-948 (1978) ............................................................................. 2, 14

H.R. Rep. No. 117-27 (2021) ............................................................................ *passim*

## INTRODUCTION

The Pregnant Workers Fairness Act (PWFA) is an anti-discrimination statute that builds on Title VII of the Civil Rights Act of 1964 (Title VII) and other laws to expand workplace protections for pregnant employees and employees with pregnancy- or childbirth-related conditions. Specifically, the PWFA requires that covered employers (including States) reasonably accommodate "known limitations related to the pregnancy, childbirth, or related medical conditions of a qualified employee," unless the accommodation "would impose an undue hardship." 42 U.S.C. § 2000gg-1(1). The Equal Employment Opportunity Commission (EEOC) issued regulations to implement the PWFA. *See Implementation of the Pregnant Workers Fairness Act*, 89 Fed. Reg. 29,096 (Apr. 19, 2024) (hereafter "Final Rule"). As relevant here, EEOC explained that because Title VII's text has made clear for over four decades that Title VII protects employees who choose to have (or not have) an abortion—and because Congress enacted the PWFA with identical language as Title VII, for the express purpose of expanding Title VII's protections—the PWFA must also be understood as protecting employees who choose to have (or not have) an abortion.

Plaintiffs, the States of Louisiana and Mississippi, challenge this portion of the Final Rule, specifically with respect to any duty "to accommodate purely elective abortions, including those that would be prohibited by [that] State's law." PI Br. (ECF No. 17-1) at 4. But Plaintiffs' motion fails to demonstrate their entitlement to relief.

First, Plaintiffs lack standing: their injuries are speculative, and they have not proven that relief here would redress their purported injuries. Second, Plaintiffs' substantive claims lack merit. The PWFA's text, in relevant part, is identical to Title VII's, which protects employees who choose to have (or not have) an abortion; so too, then, does the PWFA. Plaintiffs also cannot challenge Congress's abrogation of state sovereign immunity by narrowly focusing on only one remedy covered by the statute. And the Final Rule neither regulates speech nor transgresses federalism principles. Finally, Plaintiffs fail to demonstrate irreparable harm, and enjoining any aspect of the Final Rule would frustrate EEOC's mission, cause confusion, and undermine the PWFA's purpose of protecting millions of workers. Plaintiffs' motion should therefore be denied.

## BACKGROUND

### I.  LEGAL FRAMEWORK PRIOR TO THE PWFA

Congress enacted the PWFA to "fill a gap in the existing legal framework," H.R. Rep. No. 117-27, at 10 (2021), which offered only limited protections for pregnant workers. *See id.* at 10-26; *see also* PI Br. at 2. In particular, Congress sought to build on and expand protections for pregnant workers in Title VII. Under Title VII, employers may not "discriminate against any individual . . . because of such individual's race, color, religion, sex, or national origin[.]"42 U.S.C. § 2000e-2(a)(1). Initially, the Supreme Court interpreted this prohibition not to include pregnancy discrimination. *See Gen. Elec. Co. v. Gilbert*, 429 U.S. 125 (1976). Congress responded quickly and in 1978 enacted the Pregnancy Discrimination Act (PDA), which "unambiguously expressed its disapproval of both the holding and the reasoning of the Court in the *Gilbert* decision." *Newport News Shipbuilding & Dry Dock Co. v. EEOC*, 462 U.S. 669, 678 (1983). Specifically, Congress amended Title VII to clarify that sex-based discrimination encompasses pregnancy discrimination:

> The terms "because of sex" or "on the basis of sex" include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes, including receipt of benefits under fringe benefit programs, as other persons not so affected but similar in their ability or inability to work[.]

42 U.S.C. § 2000e(k). Congress understood that this provision's "basic language covers decisions by women who chose to terminate their pregnancies." H.R. Rep. No. 95-948, at 7 (1978). In response to concerns about requiring employers to pay for abortions, however, Congress added the following:

> This subsection shall not require an employer to pay for health insurance benefits for abortion, except where the life of the mother would be endangered if the fetus were carried to term, or except where medical complications have arisen from an abortion[.]

42 U.S.C. § 2000e(k); *see* H.R. Rep. No. 95-948, at 7. Shortly after this amendment, EEOC promulgated guidelines again confirming that the PDA protects employees who have (or do not have) abortions, and in certain circumstances requires employers to provide benefits, such as leave, for abortions. *See* 29 C.F.R. part 1604, App'x, Questions 34-37. EEOC has maintained this position for over forty years. But even after the PDA, Title VII requires accommodations for pregnant employees only in certain

circumstances, *see Young v. United Parcel Service, Inc.*, 575 U.S. 206, 229 (2015), which Congress concluded creates "an oftentimes insurmountable hurdle" for pregnant employees. H.R. Rep. No. 117-27, at 16.

The Americans with Disabilities Act (ADA) and Family and Medical Leave Act of 1993 (FMLA) also establish some protections for pregnant employees. Title I of the ADA prohibits covered employers from "discriminat[ing] against a qualified individual on the basis of disability," 42 U.S.C. § 12112(a), which includes not making "reasonable accommodations to the known physical or mental limitations" of a qualified employee absent "undue hardship." *Id.* § 12112(b)(5)(A). But even as amended in 2008 to broaden the definition of "disability," *see* 42 U.S.C. § 12102(4)(A), the ADA has been construed to exclude many pregnancy-related conditions. *See* H.R. Rep. No. 117-27, at 19-21. The FMLA provides eligible employees with leave benefits for certain family and medical reasons, *see* 29 U.S.C. §§ 2612(a)(1), 2614(a)(1), including for "incapacity due to pregnancy," 29 C.F.R. § 825.120(a)(4), but many employees are not FMLA-eligible, *see* 42 U.S.C. § 12102(4)(A).

## II.    THE PREGNANT WORKERS FAIRNESS ACT

### A.    Statutory Framework

To remedy the existing framework's deficiencies, Congress enacted the PWFA as part of the Consolidated Appropriations Act, 2023, *see* Pub. L. No. 117-328, div. II, 136 Stat. 4459, 6084-89 (2022), with an effective date of June 27, 2023, *see id.* § 109, 136 Stat. at 6089.

In general, the PWFA requires covered employers to "make reasonable accommodations to the known limitations related to the pregnancy, childbirth, or related medical conditions of a qualified employee, unless . . . the accommodation would impose an undue hardship on the operation of the business of such covered entity[.]" 42 U.S.C. § 2000gg-1(1). The PWFA borrows heavily from existing statutes. For example, Congress defined both "reasonable accommodation" and "undue hardship" by reference to the ADA. *See id.* § 2000gg(7). Congress also included anti-retaliation and anti-coercion provisions similar to those found in Title VII and the ADA—*i.e.*, making it unlawful to discriminate against employees who file charges or participate in investigations, or to "coerce, intimidate, threaten, or interfere with any individual['s]" exercise of rights under the statute, *id.* § 2000gg-2(f)(1), (2); *see also id.* §§ 2000e-3(a) (Title VII anti-retaliation), 12203(b) (ADA anti-coercion). The PWFA's definition of

employer is likewise the same as Title VII's. *See id.* § 2000gg(2)(B).

The PWFA also incorporates Title VII's remedies and enforcement procedures. *See id.* § 2000gg-2. An individual who believes their rights have been violated must first file a Charge of Discrimination with EEOC within a statutorily defined time from the allegedly unlawful practice. *Id.* § 2000e-5(b). EEOC notifies the employer within ten days, investigates the charge—which may include soliciting a position statement from the employer—and then determines whether "reasonable cause" exists to believe discrimination occurred. *Id.* If EEOC does not find "reasonable cause" or determines that a defense applies, the charge is dismissed, and the employee may file suit within 90 days of receiving a Notice of Right to Sue. *Id.* § 2000e-5(b), (f)(1). If reasonable cause exists, EEOC will attempt to conciliate the charge; if conciliation fails, EEOC will either file suit against the employer or inform the charging party that they may bring suit.[1]

This process is generally the same for State employers, except, if conciliation fails, EEOC refers the matter to the Department of Justice (DOJ) to make its own determination whether to file suit. *See id.* Additionally, DOJ has independent authority (regardless of any EEOC referral) to bring suit when there is a "pattern or practice" in violation of the PWFA. *Id.* § 2000e-6(a). Regardless of the plaintiff, the proceeding is *de novo. See Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 44-45 (1974). The PWFA allows for both injunctive relief and damages, *see* 42 U.S.C. § 2000gg-2(a), with limitations on when damages may be awarded. *Id.* § 2000gg-2(g).

### B.      EEOC's Rulemaking Implementing the PWFA

The PWFA directs that EEOC "shall issue regulations . . . to carry out this chapter," *id.* § 2000gg-3(a). In its Final Rule, EEOC explained that because the PWFA uses the same statutory language as Title VII—"pregnancy, childbirth, or related medical conditions"—and because the PWFA was intended to fill a gap in the existing Title VII framework, that language in the PWFA should have the same meaning as in Title VII. *See* 89 Fed. Reg. at 29,105-14. And because Title VII's

---

[1] The time limits for filing a charge and suit are not jurisdictional and are subject to waiver, estoppel, and equitable tolling. *Zipes v. Trans World Airlines*, 455 U.S. 385, 393 (1982); *Alvarado v. Mine Serv., Ltd.*, 626 F. App'x 66, 69 (5th Cir. 2015).

language protects employees who choose to have (or not have) an abortion, so too does the PWFA. *See id.* But the PWFA's application to abortion is narrow: the Final Rule "does not regulate the provision of abortion services or affect whether and under what circumstances an abortion should be permitted"; "does not require any employee to have—or not to have—an abortion, does not require taxpayers to pay for any abortions, and does not compel health care providers to provide any abortions." *Id.* at 29,104. The Final Rule also confirms that the PWFA covers both "employee[s] seeking an abortion" and "employees who choose not to have an abortion[.]" *Id.* at 29,111.

As for the PWFA's anti-retaliation and anti-coercion provisions, the Final Rule again borrows from the existing Title VII and ADA frameworks. *See* 89 Fed. Reg. at 29,148. For the anti-coercion provision, "the provision does not apply to any and all conduct or statements that an individual finds intimidating; it prohibits only conduct that is reasonably likely to interfere with the exercise or enjoyment of PWFA rights." *Id.* Finally, EEOC acknowledged that employers may have defenses available to PWFA charges—*e.g.*, undue hardship and constitutional defenses—and committed to evaluating those defenses on a case-by-case basis, as it does under Title VII, *see id.* at 29,145-55.

## III.   PROCEDURAL HISTORY

The Final Rule takes effect on June 18, 2024, *see* 89 Fed. Reg. at 29,096, though as noted the PWFA has been in effect since June 2023. Plaintiffs here filed suit on May 13, 2024, naming only EEOC as a Defendant. *See* ECF No. 1 ¶ 13. Plaintiffs' motion for preliminary relief requests a preliminary injunction against enforcement of the Final Rule and a stay of its effective date under 5 U.S.C. § 705, *see* ECF No. 17 at 1, though Plaintiffs conceded narrower relief was available at a hearing before this Court on June 5, 2024. *See* Tr. at 14, 27.

### STANDARD OF REVIEW

"A preliminary injunction is an extraordinary and drastic remedy" that "is never awarded as of right." *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008). To obtain such relief, Plaintiffs "must establish that [they are] likely to succeed on the merits, that [they are] likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [their] favor, and that [the relief] is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *see*

*Colorado v. EPA*, 989 F.3d 874, 883 (10th Cir. 2021) (same standard for 5 U.S.C. § 705).

## ARGUMENT

## I.   THIS COURT LACKS JURISDICTION OVER PLAINTIFFS' CLAIMS

"Article III requires a plaintiff to show that she has suffered an injury in fact that is fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Haaland v. Brackeen*, 599 U.S. 255, 291-92 (2023); *see Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). Plaintiffs have not carried their burden to establish each element here.

### A.   Plaintiffs' Injuries Are Highly Speculative

All of Plaintiffs' claimed injuries stem from an asserted duty to accommodate "elective abortions" that "would be illegal under State law." PI Br. at 18. The common premise for their alleged injuries, then, is that individual State employees will *actually seek* accommodations from the Plaintiff States for abortions that violate State law. But this premise is highly speculative, rendering Plaintiffs' claimed injuries "conjectural or hypothetical" rather than "actual or imminent." *Lujan*, 504 U.S. at 560.

As an initial matter, Plaintiffs do not clearly articulate the scope of their claimed injury. Louisiana's Department of Justice asserts that they will not provide accommodations for any "abortion that would be illegal under Louisiana law[,] no matter where the abortion has been or will be performed," but only "so long as an accommodation is not otherwise required by federal or state law." PI Br. at 17; *see* La. Decl. ¶ 14. Of course, the PWFA is a federal law requiring those very accommodations. Louisiana's state PDA equivalent has likewise been interpreted to include abortion, *see Ducharme v. Crescent City Deja Vu, L.L.C.*, 406 F. Supp. 3d 548, 558 (E.D. La. 2019), and its state PWFA uses the same relevant language as its PDA, *see* La. Rev. Stat. §§ 23:341, 23:342. Thus, it is unclear what, exactly, Louisiana refuses to accommodate. Certainly, Louisiana has not identified any state law purporting to make an out-of-state abortion "illegal under Louisiana law," or prohibiting accommodations in such circumstances. *Cf. Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215, 346 (2022) (Kavanaugh, J., concurring). As for Mississippi, they claim not to "accommodate or provide leave to employees for the express purpose of obtaining an elective abortion that violates state law," but again they acknowledge that their state abortion laws apply only "within the State." Miss. Decl.

¶¶ 6, 9. Thus, the current record establishes, at most, that Plaintiffs will not accommodate abortions occurring within their State that actually violate their State law. But any such theory assuming future criminal acts is inherently speculative. *See, e.g.*, *O'Shea v. Littleton*, 414 U.S. 488, 497 (1974).

Even assuming the broadest possible version of the States' claimed injury extending to out-of-state abortions, it is still speculative whether any particular employee would ever seek such an accommodation, let alone prompt an enforcement action against the State.  Plaintiffs' theory requires assuming that (1) a pregnant State employee will decide to have an abortion; (2) that abortion will not be available under State law; (3) the employee will have the resources to arrange for an abortion outside the State, as well as the means to pay for the abortion and associated travel; (4) the employee will need an accommodation for that abortion; and (5) the employee will be unable to use existing leave or protections afforded by other statutes to obtain the accommodation. And there are even more contingencies before any enforcement action is filed: (6) the employee, after being denied an accommodation for the abortion, will file a charge with EEOC; (7) EEOC will reject the employer's defenses, find reasonable cause exists to believe discrimination occurred, fail to resolve the matter voluntarily, and refer the matter to DOJ; and (8) DOJ, who is not a defendant here, will independently decide to bring suit against the State.

The Supreme Court has routinely rejected theories of injury that, like Plaintiffs' theories here, "rel[y] on a highly attenuated chain of possibilities." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013); *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009); *Whitmore v. Arkansas*, 495 U.S. 149, 157-60 (1990). That is particularly true when the theory "depends in large part on the actions of third[ ]part[ies]." *Zimmerman v. City of Austin, Texas*, 881 F.3d 378, 390 (5th Cir. 2018). Here, even if limited only to the first set of contingencies, it is wholly speculative that a pregnant State employee will choose to have an abortion that cannot be obtained under State law, will have the means available to obtain an out-of-state abortion, and will then seek a PWFA accommodation for it from her State employer.

Certainly, Plaintiffs have not submitted evidence *proving* that their claimed injuries are actual or imminent, which is their burden at this stage. *See Lujan*, 504 U.S. at 561. Plaintiffs' generalized statistics

about their overall number of female employees, *see* La. Decl. ¶ 11; Miss. Decl. ¶ 7, do not suffice to prove that the injury is "actual or imminent," *Lujan*, 504 U.S. at 560; *see Summers*, 555 U.S. at 497-99. Indeed, despite the PWFA being in effect since June 2023 (and Title VII for decades more), Plaintiffs do not identify *any* employee who has ever sought an accommodation or leave for an abortion that was unlawful under State law, let alone filed an EEOC charge for the denial of such an accommodation. Nor do they identify any history of enforcement actions in similar situations. The record thus confirms that Plaintiffs' injury is not "certainly impending." *Clapper*, 568 U.S. at 410.[2]

**B.     Plaintiffs' Theories of Injury Fail for Additional Reasons**

**1.     Plaintiffs' Compliance Costs Are Unproven**

Plaintiffs claim that EEOC's rule, once effective, "would impose significant costs," such as "costs associated with training hundreds of human relations staff," Miss. Decl. ¶ 10, and "re-printing policy manuals," La. Decl. ¶ 16. As an initial matter, these types of compliance costs are a cognizable injury-in-fact only when the costs are necessary to avoid a genuine threat of enforcement; otherwise they are self-inflicted injuries. *See Clapper*, 568 U.S. at 416 ("Respondents' contention that they have standing because they incurred certain costs as a reasonable reaction to a risk of harm is unavailing—because the harm respondents seek to avoid is not certainly impending."); *Lake Carriers' Ass'n v. MacMullan*, 406 U.S. 498, 507 (1972).[3] Here, the threat of enforcement is speculative.

---

[2] For these reasons, this case is unlike *Braidwood Management, Inc. v. EEOC*, in which the Fifth Circuit found standing because EEOC conceded that "Braidwood's current practices violate Title VII"; EEOC had previously brought an enforcement action against a different company based on "a less violative set of facts"; and the plaintiffs had "hired at least one . . . employee in the past, whom they would now be prevented from acting against without running the risk of an enforcement action." 70 F.4th 914, 929, 932 & n.33 (5th Cir. 2023); *cf. also Texas v. EEOC*, 933 F.3d 433, 447 & n.26 (5th Cir. 2019) (finding standing where court concluded EEOC made a binding determination "deem[ing] unlawful the hiring practices of multiple Texas agencies" and one such agency had already received a charge of discrimination). Here, in contrast, there is no record of Plaintiffs' employees seeking unlawful abortions, and Plaintiffs do not identify any past enforcement actions in similar situations.

[3] In the Fifth Circuit's cases that have found standing based on compliance costs, there appears to have been no dispute that, in the absence of those compliance efforts, the challenging party faced a genuine threat of enforcement. *See Career Coll. & Sch. of Tex. v. Dep't of Educ.*, 98 F.4th 220, 234-37 (5th Cir. 2024); *Rest. L. Ctr. v. Dep't of Lab.*, 66 F.4th 593, 599-600 (5th Cir. 2023); *Texas v. EPA*, 829 F.3d 405, 433 (5th Cir. 2016); *Contender Farms, LLP v. Dep't of Agric.*, 779 F.3d 258, 266 (5th Cir. 2015).

In any event, neither State has demonstrated any tangible costs. They have not attempted to distinguish between compliance costs attributable to the narrow part of the Final Rule they challenge and compliance costs attributable to the unchallenged portions of the Final Rule or the PWFA itself. In fact, Plaintiffs would be required to undertake the alleged costs—like updating policies and manuals, notifying employees, and training staff on the PWFA and Final Rule's requirements—regardless of the abortion-accommodation requirement. They would also be required to undertake those efforts to provide accommodations for abortions that they concede are lawful, *see* La Decl. ¶ 6; Miss. Decl. ¶ 6, and covered by the PWFA, *see* PI Br. at 10.[4] Moreover, Plaintiffs already provide leave benefits to their employees and employ human resources staff to administer those benefits. *See, e.g.*, La. Decl. ¶¶ 12, 16; Miss. Decl. ¶¶ 8-10. They do not contend that existing staff are unable to implement the Final Rule (including its abortion-related requirements) consistent with their normal duties, which presumably includes administering numerous similar laws. Absent proof of a net increase in costs or expenditures, Plaintiffs cannot claim injury from the challenged portion of the Final Rule.

### 2.    The Final Rule Does Not Interfere With Enforcing Any State Laws

Plaintiffs also claim that the Final Rule injures their "sovereign interest in the power to create and enforce a legal code," and "being pressured to change state law constitutes an injury for standing purposes." PI Br. at 18 (citation omitted). But Plaintiffs do not identify any enforceable State law with which the Final Rule interferes or which they are currently "pressured" to modify.

As the Final Rule makes clear, "the PWFA . . . does not regulate the provision of abortion services or affect whether and under what circumstances an abortion should be permitted." 89 Fed. Reg. at 29,104. The Final Rule operates in an entirely different sphere from Plaintiffs' abortion laws: the PWFA provides pregnant women with a right to reasonable accommodations (absent undue

---

And in *Tex. Office of Pub. Util. Counsel v. FCC*, 183 F.3d 393 (5th Cir. 1999), PI Br. at 16, the agency had asserted jurisdiction which led private parties to start billing customers in a certain way, *id.* at 448-49 & n.103; there was no speculation about whether the relevant factual circumstance would ever occur.

[4] The narrowness of Plaintiffs' challenge here distinguishes this case (among other reasons) from *Texas v. Garland*, --- F. Supp. 3d ----, 2024 WL 967838, at *16 (N.D. Tex. Feb. 27, 2024), which found Texas had standing to challenge the PWFA as a whole, *appeal pending*, No. 24-10386 (5th Cir). Indeed, that Court held that many of Plaintiffs' claimed compliance costs here were attributable to the PWFA itself. *See id.* at *15.

hardship), whereas Plaintiffs' cited laws impose liability on individuals who *perform* certain abortions, and do not regulate pregnant women at all. *See* La. Rev. Stat. § 40:1061; Miss. Code § 41-41-45. State declarations of "pro-life policy," PI Br. at 18, also are not sufficient for standing. *See Virginia ex rel. Cuccinelli v. Sebelius*, 656 F.3d 253, 276-72 (4th Cir. 2011). And with respect to funding restrictions, the Final Rule is again unequivocal: "Nothing in the PWFA requires an employer to pay for an abortion[.]" 89 Fed. Reg. at 29,109. The PWFA also does not "require an employer-sponsored health plan to pay for or cover . . . abortion," or require "an employer to pay any travel-related expenses for an employee to obtain an abortion." *Id.* at 29,104. Thus, the Final Rule cannot possibly interfere with the enforcement of any State laws governing when abortions may be obtained, or prohibiting the use of public funds for abortions, given that the Final Rule does not affect either type of law.

### 3.      Plaintiffs Have Not Demonstrated Any Speech Injury

Lastly, Plaintiffs vaguely claim that the Final Rule "impinges upon the States' own right to speak and choose their own messaging." PI Br. at 20. But Plaintiffs do not identify any "messaging" they currently engage in, or imminently wish to engage in, that is proscribed by the PWFA. *See Zimmerman*, 881 F.3d at 388 (pre-enforcement standing requires the plaintiff to establish "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by statute"). Nor can Plaintiffs rely on their State laws as embodying abstract "messages," and then argue that a conflict between those messages and federal policies constitutes Article III injury; that type of theory would eviscerate limits on Article III standing and allow States to challenge virtually any federal policy with which they disagree. *See United States v. Texas*, 599 U.S. 670, 680 n.3 (2023).

To the extent Plaintiffs' declarants express concern about liability under the PWFA's anti-retaliation and anti-coercion provisions, *see, e.g.*, Miss Decl. ¶ 12; La. Decl. ¶ 9, they similarly provide no evidence that anti-abortion "messaging" that would violate the PWFA is currently occurring (or is likely to occur) within State workplaces. That reality is particularly unlikely given that Title VII and the ADA have similar provisions. *See* 42 U.S.C. §§ 2000e-3(a), 12203(b). Regardless, the Final Rule confirms that general statements about an employer's views on abortion do not constitute coercion under the PWFA. *See* 89 Fed. Reg. at 29,148 ("[T]he making of general statements regarding an

employer's mission or religious beliefs is not the type of conduct that the Commission previously has determined would be prohibited by this provision."). Thus, this theory also fails.

### C.   Plaintiffs Have Not Proven that Their Injuries Are Traceable to EEOC or Redressable by an Order Against EEOC

Plaintiffs also lack standing because they have not established traceability or redressability for four reasons. First, EEOC—the sole Defendant—lacks authority to bring an enforcement action against the Plaintiff States; that can be done only by DOJ. *See* 42 U.S.C. §§ 2000gg-2(a)(1), 2000e-5(f)(1). Any injury thus is not traceable to EEOC and cannot be redressed by the requested relief. *See Haaland*, 599 U.S. at 291-92. Even if this Court enjoined EEOC from investigating charges and making determinations (relief that would be inappropriate), DOJ would retain independent authority to sue Plaintiffs based on a "pattern or practice" in violation of the PWFA. 42 U.S.C. § 2000e-6. Plaintiffs cannot belatedly request that relief extend to agencies not named. *Cf. Lujan*, 504 U.S. at 568.

Second, any relief entered in this case would not bind private individuals who would be free to pursue the same PWFA claims against Plaintiffs even if EEOC were enjoined. The States will thus be exposed to the same claimed injuries regardless of any relief here. *See Okpalobi v. Foster*, 244 F.3d 405, 427 (5th Cir. 2001) (en banc) (concluding there is no standing because "[t]he defendants have no authority to prevent a private plaintiff from invoking the statute in a civil suit"); *Planned Parenthood of Greater Texas Surgical Health Servs. v. City of Lubbock*, 542 F. Supp. 3d 465, 480 (N.D. Tex. 2021) (finding there is no redressability when an "order in this case will not prevent private suits"); *cf. Whole Woman's Health v. Jackson*, 595 U.S. 30, 44 (2021). The Plaintiff States here seek relief only against the Final Rule, not the statute governing the procedures for EEOC's acceptance and processing of private charges. It would thus be inappropriate to enjoin EEOC's duties under that unchallenged statute. Moreover, even in *Texas v. Garland*, which involved a challenge to the PWFA as a whole, the Court recognized that its relief could not "prevent [a private individual] from filing her own PWFA lawsuit against Texas." 2024 WL 967838, at *52. Any relief here would similarly not affect private suits and would not "reduce the total amount of risk and liability," *Consumer Data Indus. Ass'n v. Texas*, No. 21-51038, 2023 WL 4744918, at *6 (5th Cir. July 25, 2023), or alleged compliance costs facing Plaintiffs.

Third, Plaintiffs also have not established that their injuries are necessarily attributable to the Final Rule (or the PWFA), as opposed to separate, unchallenged laws like Title VII. *See, e.g.*, *Advantage Media, L.L.C. v. City of Eden Prairie*, 456 F.3d 793, 801 (8th Cir. 2006) (no redressability where "unchallenged provisions" of same code would still prohibit plaintiff's desired conduct). Plaintiffs offer leave benefits (including unpaid leave even when the employee has exhausted other available leave), *see, e.g.*, Miss. Decl. ¶ 8; La. Decl. ¶ 12. Title VII thus already compels them to offer those same benefits to employees affected by pregnancy, childbirth, or related medical conditions who are similar in their ability or inability to work, which would include leave regarding abortion. *See* Background, § I. And Louisiana's PDA analogue likewise encompasses abortion. *Ducharme*, 406 F. Supp. 3d at 557.

Fourth and finally, Plaintiffs lack standing to challenge the abrogation of State sovereign immunity in particular. The only defendant here is a Federal agency, and State sovereign immunity is irrelevant to the Federal Government's ability to bring a claim against Plaintiffs for money damages. *See Alden v. Maine*, 527 U.S. 706, 755 (1999) (state sovereign immunity does not extend to suits "by the Federal Government"). The abrogation provision is relevant only for suits filed by private individuals, but as noted, no private individuals can be bound by relief entered here. (And even absent abrogation, those private individuals can still seek injunctive relief against Plaintiffs, *see Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 374 n.9 (2001).) Because the United States need not rely on the abrogation provision, there is no injury attributable to that provision that is redressable through this suit.

### D.    Plaintiffs' Claims Are Not Ripe Given Their Fact-Specific Nature

Even if Plaintiffs can overcome the above standing deficiencies, their claims still are not ripe. *See Abbott Lab'ys. v. Gardner*, 387 U.S. 136, 148-49 (1967). There is no hardship to declining review, given the abstract nature of Plaintiffs' claimed injuries and their ability to raise the same arguments as defenses, should an enforcement proceeding ever arise.

The Fifth Circuit rejected a ripeness argument where there was "no more factual detail . . . required to resolve the claims," as proven by the agency's failure to give a single "example of factual development that would be helpful to the court." *Braidwood*, 70 F.4th at 931. Here, by contrast, there are numerous factual issues that would be useful—if not essential—to know before evaluating

Plaintiffs' actions with regard to a denied accommodation or retaliation or coercion, including: the specific accommodation requested; the circumstances of the abortion, including if it was medically indicated and whether it was an "illegal" abortion; the particulars of the employer's leave policies; the burdens on the employer of granting the accommodation, including any undue hardship; and any allegedly retaliatory or coercive acts. Based on those facts, courts may not need to decide Plaintiffs' claims, or at least the analysis would be substantially easier. Thus, Plaintiffs' claims are not ripe.

## II.  PLAINTIFFS HAVE NOT OTHERWISE SHOWN A LIKELIHOOD OF SUCCESS ON THEIR CLAIMS

### A.  The PWFA's Text Requires Accommodations For Abortion

Plaintiffs challenge the Final Rule's requirement to accommodate abortions. But they ignore Title VII's text, which confirms that the phrase "pregnancy, childbirth, or related medical conditions" includes abortion. By using identical language in the PWFA, Congress made clear that accommodations under the PWFA cover abortion too. And the PWFA's text likewise confirms this.

#### 1.  Title VII's Text Encompasses Employment Protections for Abortion, and Congress Used the Same Language in the PWFA

Over four decades ago, Congress amended Title VII to clarify that "[t]he terms 'because of sex' or 'on the basis of sex' include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions[.]"42 U.S.C. § 2000e(k). In that same subsection, Congress provided that "[t]his subsection shall not require an employer to pay for health insurance benefits for abortion, *except where* the life of the mother would be endangered if the fetus were carried to term, or except where medical complications have arisen from an abortion." *Id.* (emphasis added). That latter sentence—and particularly its confirmation that employers *can* be required to pay for abortion when "the life of the mother would be endangered" or "where medical complications have arisen from an abortion"—necessarily means that abortion is included within the first sentence's prohibition of discrimination based on "pregnancy, childbirth, or related medical conditions."

Plaintiffs portray this second sentence as merely being "one of innumerable examples where Congress goes out of its way to make clear that it is not mandating the funding of abortion." PI Br. at 12. That wholly overlooks the "except" clauses, which *preserve* a requirement, necessarily contained

in the first sentence, to fund abortions in certain circumstances. And the language of that second sentence is substantive, unlike other provisos or rules of construction existing within § 2000e(k) itself.

Thus, when Congress enacted the PWFA with the purpose of expanding Title VII's protections and used the same phrase "pregnancy, childbirth, or related medical conditions" that appears in Title VII, Congress intended the identical phrase in the PWFA to have the same meaning. *See* 89 Fed. Reg. at 29,104-08; *see also George v. McDonough*, 596 U.S. 740, 746 (2022) ("Where Congress employs a term of art obviously transplanted from another legal source, it brings the old soil with it."); *Smith v. City of Jackson*, 544 U.S. 228, 233 (2005) ("[W]hen Congress uses the same language in two statutes having similar purposes . . . it is appropriate to presume that Congress intended that text to have the same meaning in both statutes."). This alone should confirm abortion is covered by the PWFA, given that statute's purpose of *expanding* employees' rights beyond what Title VII offered.

Plaintiffs instead portray the Final Rule as relying only on a ratification argument. PI Br. at 11. But far from it: Congress *itself* knowingly defined the phrase "pregnancy, childbirth, or related medical conditions" to include abortion when it enacted § 2000e(k) four-plus decades ago. *See* H.R. Conf. Rep. No. 95-1786, at 4; H.R. Rep. No. 95-948, at 7. Indeed, the Supreme Court's decision in *Gilbert* noted EEOC's view that Title VII extended to abortion even before the PDA, *see* 429 U.S. at 140, and the PDA was specifically intended to align Title VII with EEOC's guidelines:

> The EEOC guidelines . . . require employers to treat disabilities caused or contributed to by pregnancy, miscarriage, abortion, childbirth and recovery therefrom as all other temporary disabilities. It is the Committee's view that these guidelines rightly implemented the Title VII prohibition of sex discrimination[.]

H.R. Rep. No. 95-948, at 2 (citation omitted). The Final Rule's statutory analysis is therefore not simply a ratification argument but is instead rooted in the text of Title VII itself.

In any event, the cases are in accord that Title VII's protections for "pregnancy, childbirth, or related medical conditions" include abortion. *See Doe v. C.A.R.S. Prot. Plus, Inc.*, 527 F.3d 358, 364 (3d Cir. 2008); *Turic v. Holland Hosp., Inc.*, 85 F.3d 1211, 1214 (6th Cir. 1996); *see also Ducharme*, 406 F. Supp. 3d at 556; *In re Union Pac. R.R. Emp. Pracs. Litig.*, 479 F.3d 936, 942 (8th Cir. 2007); *DeJesus v. Fla. Cent. Credit Union*, No. 8:17-cv-2502, 2018 WL 4931817, at *3 (M.D. Fla. Oct. 11, 2018). And these judicial

decisions are on top of EEOC's own guidance, which has, for decades, defined the phrase "pregnancy, childbirth, or related medical conditions" to include abortion. *See* 29 C.F.R. part 1604, App'x, Questions 34-37 (1979); *cf. Bragdon v. Abbott*, 524 U.S. 624, 645 (1998).

Perhaps recognizing that the overwhelming weight of authority indicates that Title VII protects employees who choose to have (or not have) an abortion, Plaintiffs assert that "the PWFA is fundamentally different than Title VII." PI Br. at 12. But that argument is contrary to their own admission that the PWFA was enacted to fill gaps in the PDA. *See id.* at 2; Background § I. Given the statutes' interrelatedness, it would be surprising for Congress to have intended for the coverage of "pregnancy, childbirth, or related medical conditions" to be narrower under the PWFA than the PDA, particularly where discrimination claims may arise under both statutes—and certainly the text of the PWFA gives no such indication. *See* 89 Fed. Reg. at 29,108. In sum, Title VII's plain meaning covers abortions and Congress's decision to use identical text in the PWFA means that the PWFA does too.

### 2.    The Text of the PWFA Itself Covers Abortions

Even absent the longstanding interpretation of "pregnancy, childbirth, or related medical conditions" from Title VII, the same conclusion obtains under the PWFA itself, as EEOC explained in the Final Rule. The PWFA requires reasonable accommodation of "known limitations related to . . . pregnancy, childbirth, or related medical conditions." 42 U.S.C. § 2000gg-1(1). By including "childbirth" separately from "pregnancy," Congress made clear that it intended to cover "pregnancy" regardless of its outcome (whether birth, miscarriage, abortion, or otherwise). 89 Fed. Reg. at 29,107. And individuals who have an abortion are, definitionally, pregnant. *Id.* at 29,106. Thus, if an employee is denied an accommodation because they are seeking an abortion, that employee has been necessarily denied an accommodation for reasons "related to pregnancy," 42 U.S.C. § 2000gg-1(1). *See* 89 Fed. Reg. at 29,107; *In re Union Pac.*, 479 F.3d at 942 ("abortion can only occur when a woman is pregnant").

In any event, even accepting Plaintiffs' contention *arguendo*—namely, that abortion itself is a procedure, not a condition, *see* PI Br. at 9—the statutory language would still cover it. Pregnancy can sometimes result in complications that threaten a woman's life or health, and termination of the pregnancy is medically recommended. *See* 89 Fed. Reg. at 29,103 n.57. Plaintiffs do not dispute that

those complications are "related medical conditions" that come within the PWFA's text. *See* PI Br. at 9 (arguing PWFA does not cover "purely elective abortions—that is, medically unnecessary abortions in violation of Louisiana and Mississippi law"). Even when no medical complication precipitates an abortion, however, there are still conditions accompanying an abortion—such as cramping, nausea, or needing to recover—that constitute "related medical conditions" to pregnancy, even by Plaintiffs' proffered definition. *See id.* (defining "medical" to include "diagnosis and treatment of disease and maintenance of health;" defining "condition" to include "state of health or physical fitness or illness or other medical problem" (cleaned up)); *see also EEOC v. Houston Funding II, Ltd.*, 717 F.3d 425, 428-29 (5th Cir. 2013) (sources "broadly construe" the term "medical condition").

Additionally, again assuming Plaintiffs' framing, they provide no reason why the "known limitation" must be, as they contend, the abortion itself, as opposed to the physical conditions stemming from it. *See* 42 U.S.C. § 2000gg(4). If "physical or mental condition[s]," *id.*, arise out of a procedure that one would need only if pregnant, such as an abortion, those conditions are limitations subject to the PWFA regardless of how one thinks of the procedure itself. *See* 29 C.F.R. § 1636.3(a)(2) (known limitation "includes when an employee is seeking health care related to pregnancy, childbirth, or a related medical condition itself"). Indeed, even under Plaintiffs' framing, the "known limitation" would not be identified at the procedure level, as the nature of the limitation would inform the accommodation needed: the accommodation for physical unavailability (*e.g.*, due to recovery or seeking health care) is typically leave, whereas the accommodation for cramping may be additional breaks. For similar reasons, it is irrelevant whether the abortion is performed with a "medical justification." PI Br. at 9. Regardless of a woman's reason for having an abortion, she may experience limitations (physical conditions) as a result of it; those limitations are *related to* and *arise out of* the condition of pregnancy.

Two additional features of the statutory scheme confirm that Plaintiffs' interpretation is incorrect. First, Plaintiffs' interpretation would exclude from the PWFA's scope accommodations for regular check-ups during pregnancy, as well as for other procedures, like amniocentesis or ultrasound (which may be "elective"). That was not Congress's intent. *See* H.R. Rep. No. 117-27, at 29 (PWFA accommodations cover "prenatal appointments"); *Houston Funding II*, 717 F.3d at 429 (concluding

lactation is covered under PDA, without analyzing whether it is "elective"). Second, the PWFA was enacted against the backdrop of the ADA's longstanding rule that "employers often may be required to provide the reasonable accommodation of leave so that an employee can obtain medical treatment." 89 Fed. Reg. at 29,189-90. The PWFA, then, should treat obtaining abortion care in a similar manner.

Finally, Plaintiffs' invocation of the *ejusdem generis* canon, *see* PI Br. at 10, ignores that Congress sought to broadly cover limitations with a nexus to pregnancy or childbirth. Each time Congress used the phrase "pregnancy, childbirth, or related medical condition," it was preceded by expansive language. *See* 42 U.S.C. § 2000gg-1(1) (requiring accommodation of "known limitations *related to* the pregnancy, childbirth, or related medical conditions" (emphasis added)); *see also id.* § 2000gg-1(2) ("affected by"); *id.* § 2000gg(4) ("related to, affected by, or arising out of"). Abortion is inherently "related to" and "aris[es] out of" pregnancy and involves an "employee affected by pregnancy."

### 3.      Materials Outside the PWFA's Text Do Not Change the Analysis

Plaintiffs cannot overcome the PWFA's text by relying on legislative history. In any event, multiple Members of Congress recognized that the PWFA protects employees who have (or do not have) an abortion. *See, e.g.*, H. Rep. No. 117-27, at 60 (stating in Minority Report that the statute "could require [an] organization to comply with" a request for "time off to have an abortion procedure . . . as a reasonable accommodation"); 167 Cong. Rec. H2228-29 (May 12, 2021) (statement of Rep. Taylor Greene declining to support PWFA because it covers abortions); *id.* at H2325 (statement of Rep. Letlow expressing same); *see also* 89 Fed. Reg. at 29,110 n.92 (discussing comments from other Members supporting Final Rule). That includes Senate Sponsor Bob Casey, who recognized that "'pregnancy, childbirth, and related medical conditions,' . . . has been previously defined to include . . . abortion." Cmt. EEOC-2023-0004-98384 at 2 (Oct. 10, 2023), https://www.regulations.gov/comment/EEOC-2023-0004-98384; *contra* PI Br. at 12 n.9.

Other statutory restrictions on abortion also do not indicate that Congress intended to exclude it here. *Contra* PI Br. at 11-12. To the contrary, explicit restrictions on abortion in Plaintiffs' cited statutes and elsewhere in the Consolidated Appropriations Act in which the PWFA was passed confirm that when Congress wishes to exclude abortion, it says so explicitly. *See Keene Corp. v. United*

*States*, 508 U.S. 200, 208 (1993). Finally, the major questions doctrine is not implicated because EEOC was not exercising discretion in deciding what conditions are covered by the PWFA but enforcing "policy decisions" made by "Congress itself." *West Virginia v. EPA*, 597 U.S. 697, 723, 735 (2022).

## B.   The PWFA Validly Abrogates State Sovereign Immunity

Plaintiffs briefly argue that the "EEOC's abortion-accommodation . . . exceeds Congress's constitutional ability to abrogate the States' sovereign immunity." PI Br. at 13. In fact, the Final Rule did not abrogate state sovereign immunity at all; that determination was made by Congress, in a provision of the PWFA that Plaintiffs do not even challenge. *See* 42 U.S.C. § 2000gg–4. But even as to Congress, Plaintiffs' arguments fail. Congress has "broad power . . . to remedy and to deter violation of rights guaranteed by the Fourteenth Amendment," including by enacting "prophylactic legislation that proscribes facially constitutional conduct." *Tennessee v. Lane*, 541 U.S. 509, 518 (2004) (cleaned up). Congress properly invoked that authority here with respect to private claims for money damages.

Importantly, Plaintiffs do not challenge the PWFA's abrogation of sovereign immunity generally—*i.e.*, with respect to PWFA violations unrelated to abortion. *See* PI Br. at 13. That is for good reason: the Supreme Court has twice upheld workplace discrimination and accommodation laws as valid Section 5 legislation. *See Fitzpatrick v. Bitzer*, 427 U.S. 445 (1976) (upholding Title VII's abrogation of state sovereign immunity for gender-based discrimination claims); *Nevada Dep't of Hum. Res. v. Hibbs*, 538 U.S. 721, 730 (2003) (upholding FMLA's abrogation for the family-care provision, because it seeks to remedy "invalid gender stereotypes in the employment context").

Just like the FMLA provision at issue in *Hibbs*, the PWFA properly remedies unconstitutional sex discrimination by countering gender stereotypes, including stereotypes regarding pregnancy. In enacting the PWFA, Congress reiterated its recognition from over four decades ago that "[t]he assumption that women will become pregnant and leave the labor market is at the core of the sex stereotyping resulting in unfavorable disparate treatment of women in the workplace." H.R. Rep. 117-27, at 13. Congress received testimony about this continuing problem, *see* 117 Cong. Rec. 2331, 2338, including that "[i]n the 21st century, sex discrimination against pregnant workers often takes the form of reliance on insidious gender role stereotyping concerning women's place in the home and in the

workplace" and "such stereotypes—such as, that motherhood and employment are irreconcilable—force pregnant women to choose between having a child and having a job." *Id.* at 2338 (quotation omitted). Despite existing legal protections, these sex stereotypes continued to result in pregnant women being denied accommodations, H.R. Rep. No. 117-27, at 11, 27, including by "state employers [who] continue to participate in and foster unconstitutional sex discrimination, including gender-role stereotyping." 117 Cong. Rec. 2338; *see id.* at 2338-39 (discussing "[e]vidence of persistent discrimination by state actors against pregnant workers in need of accommodation"). Thus, Congress responded to this "difficult and intractable problem" by enacting the PWFA's targeted, incrementally greater protections for pregnancy-related accommodations, in an effort to further counteract "the pervasive presumption that women are mothers first, and workers second." *Hibbs*, 538 U.S. at 736-37.

Plaintiffs are unable to dispute this. *See* PI Br. at 13. Instead, they contend that they can excise a specific type of conduct from the general waiver of sovereign immunity—accommodations for abortions—and challenge the waiver only as to that conduct. But the Supreme Court has repeatedly recognized that "[l]egislation which deters or remedies constitutional violations can fall within the sweep of Congress' enforcement power[,] even if in the process it prohibits conduct which is not itself unconstitutional and intrudes into 'legislative spheres of autonomy previously reserved to the States.'" *City of Boerne v. Flores*, 521 U.S. 507, 518 (1997) (quoting *Fitzpatrick,* 427 U.S. at 445); *see Lane*, 541 U.S. at 518; *Katzenbach v. Morgan*, 384 U.S. 641, 648 (1966). Plaintiffs' myopic focus on the appropriateness of certain types of accommodations misunderstands that the proper inquiry is whether the accommodation obligation, on the whole, appropriately serves the problem Congress sought to address. *See, e.g.*, *City of Boerne*, 521 U.S. at 532-33 (considering whether RFRA, as a whole, is "proportion[al] to a supposed remedial or preventive object"); *Maitland v. Univ. of Minnesota*, 260 F.3d 959, 963, 965 & n.5 (8th Cir. 2001) (declining to individually "review . . . the 'proportionality and congruity' of remedies" where plaintiff claimed Congress improperly abrogated state immunity "with respect to Title VII sex-discrimination claims brought by men" but not women). Similarly, while Congress must "ha[ve] evidence of a pattern of constitutional violations on the part of the States," *Hibbs*, 538 U.S. at 729, the Court has never imposed a requirement that it identify a pattern of state

discrimination for every remedy extended under a statute, as Plaintiffs suggest, *see* PI Br. at 13. *Cf. Katzenbach*, 384 U.S. at 656 n.15 (upholding abrogation in Voting Rights Act's prohibition on English literacy requirements notwithstanding that most states did not maintain any literacy requirements); *Maitland*, 260 F.3d at 965 & n.5. Plaintiffs do not dispute (and have thus conceded) that the abrogation of sovereign immunity for pregnancy-related accommodations is generally valid, and the inclusion of accommodations related to abortion as one of many remedies does not change that calculus.

In any event, inclusion of abortion-related accommodations is congruent and proportional. Sex stereotyping can infect employer determinations as to abortion-related accommodations just as readily as to other pregnancy-related accommodations. For example, an employer may take adverse action against a woman seeking time off for an abortion in reliance on a constitutionally impermissible view that her proper role in society is to procreate. *Cf. Hibbs*, 538 U.S. at 729 (discussing "the many state laws limiting women's employment opportunities" based in part on a belief that "a woman is, and should remain, 'the center of home and family life'"). And as described, the abortion-related accommodation obligations are narrow, and further offset by the undue hardship exception as well as the unavailability of damages where the employer "demonstrates good faith efforts, in consultation with the employee . . . , to identify and make a reasonable accommodation[.]" 42 U.S.C. § 2000gg-2(g). Plaintiffs are thus unlikely to succeed on their challenge.

### C.   Plaintiffs' First Amendment Challenges Fail

Plaintiffs contend that the Final Rule "uniquely violates the States' free speech rights" by requiring them to "accommodate purely elective abortions." PI Br. at 14. But Plaintiff States have no First Amendment rights to invoke, as multiple courts of appeals have held. *See, e.g., NAACP v. Hunt*, 891 F.2d 1555, 1565 (11th Cir. 1990); *Student Gov't Ass'n v. Board of Trs. of Univ. of Mass.*, 868 F.2d 473, 481 (1st Cir. 1989); *Estiverne v. La. State Bar Ass'n*, 863 F.2d 371, 379 (5th Cir. 1989); *see also Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802, 804 (2019) ("The Free Speech Clause of the First Amendment constrains governmental actors and protects private actors.").

Plaintiffs cite *Walker v. Texas Division, Sons of Confederate Veterans, Incorporated*, 576 U.S. 200 (2015), as implicitly suggesting that States may engage in expressive conduct protected by the First

Amendment. PI Br. at 27. But that case involved the distinct "government speech" doctrine, which operates as a shield, preventing private parties from bringing First Amendment challenges to the content of the government entity's own speech. *See Walker*, 576 U.S. at 207 ("When government speaks, it is not barred by the Free Speech Clause from determining the content of what it says."); *Johanns v. Livestock Mktg. Ass'n*, 544 U.S. 550, 560 (2005) (describing "government speech" as "not susceptible to First Amendment challenge"). That doctrine is not a sword providing governmental entities with affirmative rights under the First Amendment to invoke against other governmental entities. Nor does the Fifth Circuit's decision in *Missouri v. Biden*, 83 F.4th 350 (5th Cir. 2023), support granting First Amendment rights to States as abstract entities; in that case there were identified state officials, acting in their official capacities, who had "suffered, and will likely continue to suffer, direct censorship on social media." *Id.* at 371. Moreover, the relief in that case has been stayed and the case is currently pending before the Supreme Court, *see Murthy v. Missouri*, 144 S. Ct. 7 (2023), and thus it should not form the basis for emergency, discretionary relief here.

Even if they had First Amendment rights, Plaintiffs' claims would still fail. The Final Rule "regulates conduct, not speech. It affects what [employers] must *do* . . . not what they may or may not *say*." *Rumsfeld v. Forum for Acad. & Institutional Rts. (FAIR), Inc.*, 547 U.S. 47, 60 (2006); *see also id.* at 62 ("[I]t has never been deemed an abridgment of freedom of speech . . . to make a course of conduct illegal merely because the conduct was in part . . . carried out by means of language[.]"); *Roark & Hardee LP v. City of Austin*, 522 F.3d 533, 550 (5th Cir. 2008) (quoting same). Fundamentally, there is nothing communicative or "inherently expressive," *FAIR*, 547 U.S. at 66, about an employer granting an accommodation to an employee. *See, e.g.*, *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Boston*, 515 U.S. 557, 572 (1995) ("public accommodation statutes" that "prohibit discrimination" "do not, as a general matter, violate the First . . . Amendment[]"); *see also Telescope Media Grp. v. Lucero*, 936 F.3d 740, 757 (8th Cir. 2019) (similar). As in *FAIR*, "an observer would have no way of knowing [the employer] was expressing [approval or] disapproval of [the employee's actions] without accompanying explanatory speech." *Arkansas Times LP v. Waldrip*, 37 F.4th 1386, 1392 (8th Cir. 2022). Granting an employee an accommodation thus does not implicate the First Amendment.

Moreover, the Final Rule does not require any employer to express any view on abortion to anyone. Plaintiffs contend that the Final Rule purports to "affect a speaker's message by forcing [the speaker] to accommodate other views." PI Br. at 14. But the regulated activity in the Final Rule is not speech—it is retaliation or coercion, which fits under the rubric of "antidiscrimination laws that . . . target conduct." *Telescope Media Grp.*, 936 F.3d at 757. And when it comes to speech, the Final Rule makes clear that the anti-coercion "provision does not apply to any and all conduct or statements that an individual finds intimidating; it prohibits only conduct that is reasonably likely to interfere with the exercise or enjoyment of PWFA rights." 89 Fed. Reg. at 29,148. That is the exact same standard as the ADA, *see id.*, with which employers have complied for decades without First Amendment concerns.

Finally, Plaintiffs contend that the Final Rule is arbitrary and capricious because it "left any free-speech issues to be addressed in 'a case-by-case analysis.'" PI Br. at 15. Without First Amendment rights to invoke, however, they are not within the zone of interests for this challenge. *See Mountain States Legal Found. v. Glickman*, 92 F.3d 1228, 1232 (D.C. Cir. 1996). Regardless, EEOC extensively reviewed and responded to comments raising potential First Amendment concerns, *see* 89 Fed. Reg. at 29,144-53, including specifically with respect to the coercion provision. *Id.* at 29,148. EEOC further committed to considering any First Amendment defenses on a case-by-case basis and sought to facilitate employers' abilities to raise such defenses. *Id.* at 29,147-48, 29,151-52. There is nothing irrational about that approach, especially for sensitive, fact-bound situations involving issues of speech. *Cf. NLRB v. Bell Aerospace Co.*, 416 U.S. 267, 294 (1974) ("[T]he choice between rulemaking and adjudication lies in the first instance within the [agency's] discretion.").

### D.      The Final Rule Does Not Infringe on State Sovereignty

Plaintiffs claim that the Final Rule "is destructive of state sovereignty" because it undermines the States' interests in regulating abortion, as recognized in *Dobbs*. PI Br. at 14-15. Yet nothing in *Dobbs* prevents the Federal Government from legislating in areas that implicate abortion. *See* 597 U.S. at 338 (Kavanaugh, J., concurring) (Court "leaves the issue [of abortion] for the people and their elected representatives to resolve through the democratic process in the States or *Congress*" (emphasis added)). And Plaintiffs make no argument that the PWFA (let alone the Final Rule) exceeds Congress's Article I

powers or any other independent limit on Congressional authority; thus, it does not violate federalism principles. *See Hodel v. Va. Surface Min. & Reclamation Ass'n, Inc.*, 452 U.S. 264, 291 (1981).

Plaintiffs also claim that the Final Rule is arbitrary and capricious because of EEOC's assertion that it "'has no federalism implications,' and any 'interaction or conflict between PWFA and State laws . . . will be addressed on a case-by-case basis,'" PI Br. at 15 (quoting 89 Fed. Reg. 29,182, 29,122). To the extent Plaintiffs are disputing EEOC's compliance with Executive Order No. 13132, *see* 89 Fed. Reg. at 29,182, that Executive Order is not privately enforceable. *See California v. EPA*, 72 F.4th 308, 317-18 (D.C. Cir. 2023); *Valentine Properties Assocs., LP v. Dep't of Hous. & Urb. Dev.*, 785 F. Supp. 2d 357, 368 (S.D.N.Y. 2011), *aff'd*, 501 F. App'x 16 (2d Cir. 2012). Assuming a more generic arbitrary-and-capricious claim, EEOC's discussion of this topic was "reasonable and reasonably explained." *FCC v. Prometheus Radio Proj.*, 592 U.S. 414, 423 (2021). EEOC rationally responded to Plaintiffs' referenced comment, *see* PI Br. at 15, which contained only a single conclusory sentence on this topic, *see* ECF No. 1-2 at 8-9 ("EEOC has not addressed the federalism concerns associated with forcing States to accommodate abortions that are illegal under state law."), by noting the lack of any conflict:

> The Commission does not agree . . . [the Rule] requires covered entities, including State and local governments, to violate State laws that limit access to abortion, nor does the rule transgress limits of federalism. The rule does not prescribe when, where, or under what circumstances an abortion can be obtained or what procedures may be used.

89 Fed. Reg. at 29,112. EEOC further supported its conclusion by noting that despite Title VII covering abortions "for nearly 45 years . . . comments on this topic did not point to a situation where a State was forced to violate its own laws." *Id.* at 29,113. But "[t]o the extent any such issues arise in connection with the PWFA," EEOC committed to "address[] [them] on a case-by-case basis . . . given the State- and fact-specific nature of these issues." *Id.* As discussed above, adopting a case-by-case approach was perfectly reasonable, especially given that EEOC has used this same case-by-case approach for defenses under Title VII and the ADA for decades. *See id.* at 29,144-54; *see also NLRB v. Bell Aerospace Co.*, 416 U.S. at 294.[5]

---

[5] Plaintiffs, in a brief footnote, suggest that the Final Rule is arbitrary and capricious because

## III.    THE BALANCE OF THE EQUITIES FORECLOSES RELIEF

Plaintiff also cannot demonstrate the other requirements for preliminary relief. *See Winter*, 555 U.S. at 20. As discussed *supra* in Part I.A, all of Plaintiffs' claimed injuries are speculative at best. *See Louisiana v. Biden*, 55 F.4th 1017, 1034 (5th Cir. 2022) (irreparable harm "must be more than 'speculative'"). And even if the speculative risk of a charge against Plaintiffs for refusing an abortion-related accommodation were to materialize, they may still avoid liability by raising their defenses in that proceeding—a possibility that forecloses irreparable injury. *See Morgan v. Fletcher*, 518 F.2d 236, 240 (5th Cir. 1975); *see also FTC v. Standard Oil Co. of Cal.*, 449 U.S. 232, 244 (1980). Finally, as to compliance costs, Plaintiffs have not alleged "more than de minimis harm." *Louisiana*, 55 F.4th at 1035.

On the other side of the balance, entry of an injunction would severely harm both the Government and members of the public who require accommodations. "Any time a [government] is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers) (cleaned up). And an injunction would interfere with Congress's judgment about how best to achieve the PWFA's purposes of "eliminat[ing] discrimination and promot[ing] women's health and economic security." H.R. Rep. No. 117-27, at 1. Those purposes are compelling governmental interests, yet Plaintiffs seek to disable EEOC from pursuing them.

Enjoining the Final Rule or EEOC's administrative procedures, could additionally have *negative* effects on Plaintiffs (and employers and employees within the Plaintiff States) by "forc[ing] into court matters that the EEOC might otherwise have resolved," and "preventing earlier resolution" of employees' charges, thereby "increas[ing] the burdens of both time and expense." *West v. Gibson*, 527

---

the Economic Analysis incorrectly "assumes that the Final Rule will impose no added costs on States." PI Op. at 15 n.10. Even if such argument was properly presented, *but see Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347, 356 (5th Cir. 2003), it would fail for multiple reasons. The Economic Analysis was generated pursuant to Executive Orders, *see* 89 Fed. Reg. at 29,155, that are not privately enforceable, *see* E.O. 12,866 § 10; E.O. 13,563 § 7(d); E.O. 14,094 § 4(c); *Nat'l Mining Ass'n v. United Steel Workers*, 985 F.3d 1309, 1326-27 (11th Cir. 2021); *Nat'l Truck Equip. Ass'n v. NHTSA*, 711 F.3d 662, 670 (6th Cir. 2013); *Air Transp. Ass'n of Am. v. FAA*, 169 F.3d 1, 8-9 (D.C. Cir. 1999). And, contrary to Plaintiffs' contention, the Economic Analysis did recognize that there may be some costs to states like Plaintiffs but determined that because state laws were "substantially similar," the "additional costs" would be "minimal." *Id.* at 29,169.

U.S. 212, 219 (1999). At a minimum, the requested relief will confuse and delay private individuals' efforts to pursue their rights under the PWFA. Plaintiffs certainly have not proven that the speculative benefits they might gain from an injunction outweigh the certain, immediate harms it would cause to employees seeking to vindicate their rights under the PWFA.

## IV.   ANY REMEDY SHOULD BE LIMITED TO PROVEN INJURIES

If the Court disagrees with the above, any remedy must be appropriately limited, as the Court and Plaintiffs recognized at the June 5, 2024 hearing. *See* Tr. at 14, 26, 28. This is especially true because the PWFA and the Final Rule contain severability clauses. *See* 42 U.S.C. § 2000gg-6; 29 C.F.R. § 1636.8.

Here, any relief should be awarded only to remedy specific, proven injuries, which requires several limits. First, because Plaintiffs only challenge the Final Rule's abortion-accommodation requirements, any relief should only extend to that narrow portion of the rule. Second, relief should apply to Plaintiff-States in their capacities as employers, not to *all* PWFA-covered entities within those States. Plaintiffs lack standing to seek relief on behalf of private entities. *See Haaland*, 599 U.S. at 294-95 (State cannot bring claims "on behalf of [their] citizens because a State does not have standing as *parens patriae* to bring an action against the Federal Government." (cleaned up)). Third, Louisiana only alleges injuries associated with the Louisiana Department of Justice, *see* La. Decl. ¶¶ 14-17, and thus relief should only extend to that office, not the State as a whole. Fourth, any injunction should be limited to accommodations for abortions performed within each Plaintiff State that are illegal under that State's laws, as those are the only subset of abortions to which Plaintiffs claim the Final Rule unlawfully extends, *see* PI Br. at 10 (arguing "purely elective abortions are not 'medical conditions'"). Finally, any injunction should be limited to EEOC, and not extend to other entities or persons not before this Court—such as DOJ and private individuals—who retain rights to enforce the PWFA. These limits describe the maximum relief theoretically available, but the proper approach would be to deny Plaintiffs' motion entirely.

## CONCLUSION

Plaintiffs' motion for preliminary relief should be denied.

Dated: June 9, 2024

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

EMILY B. NESTLER
Assistant Branch Director

DANIEL SCHWEI
Special Counsel

*/s/  Alexandra Widas*
LAURA B. BAKST (D.C. Bar #1782054)
ALEXANDRA WIDAS (D.C. Bar #1645372)
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
Tel: (202) 616-8472
Facsimile: (202) 616-8460
Email: alexandra.j.widas@usdoj.gov

*Counsel for Defendant*