UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| STATE OF LOUISIANA, *et al.*, *Plaintiffs*, v. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, *Defendant*. | Case No. 2:24-cv-629 |
| UNITED STATES CONFERENCE OF CATHOLIC BISHOPS, *et al.*, *Plaintiffs*, v. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, *et al.*, *Defendants*. | Case No. 2:24-cv-691 |

**DEFENDANT'S REPLY MEMORANDUM OF LAW IN SUPPORT OF
RULE 59 MOTION TO ALTER OR AMEND JUDGMENT**

**INTRODUCTION**

Subsequent to this Court's entry of a preliminary injunction in the above cases, the Supreme Court issued its decision in *Murthy v. Missouri*, 144 S. Ct. 1972 (2024), addressing issues of Article III jurisdiction and reversing the Fifth Circuit's judgment in a case on which this Court previously relied. Accordingly, Defendants filed a motion for reconsideration pursuant to Fed. R. Civ. P. 59(e), providing this Court with an opportunity to address the *Murthy* decision's impact on its prior preliminary injunction. *See Louisiana*, ECF No. 55 ("Mot. for Reconsid."). Contrary to the Plaintiffs' assertions, that motion was procedurally proper. And for the reasons explained previously and further below, *Murthy* warrants reevaluation of the Plaintiffs' Article III standing, the State Plaintiffs' likelihood of success on their free speech claim, and at a minimum a narrower injunction applicable only to the named parties.

**ARGUMENT**

**I.    The Motion for Reconsideration Is Procedurally Proper**

Neither set of Plaintiffs disputes that, under Rule 59(e), "courts may consider new arguments based on an 'intervening change in controlling law.'" *Banister v. Davis*, 590 U.S. 504, 508 n.2 (2020). Nonetheless, the Bishops Plaintiffs contend that because *Murthy* does not "purport to overrule or substantively alter any precedent or standing principle . . . it is thus not an intervening change in law allowing reconsideration." USCCB Opp'n, ECF No. 67, at 2-3; *see also* States Opp'n, ECF No. 60, at 2 (portraying the motion as "improper[ly] attempt[ing] to rehash old legal theories").

This procedural argument is meritless. Plaintiffs do not (and cannot) dispute that *Murthy* is a new decision not previously available to Defendants at the time of the preliminary-injunction proceedings. It is certainly true that, during those preliminary-injunction proceedings, Defendants presented jurisdictional and other arguments opposing entry of relief. But this Court rejected those arguments. Now, Defendants believe that *Murthy*—a subsequent, controlling decision from the Supreme Court—confirms that several of Defendants' initial arguments should have been accepted. If Defendants are correct, that is a hallmark example of when a Rule 59(e) motion is appropriate. *See, e.g.*, *Bailey v. Domino's Pizza*, 867 F. Supp. 2d 835, 839 (E.D. La. 2012) (granting motion for

1

reconsideration because subsequent Supreme Court decision "knocks down one pillar" of court's prior decision).

Indeed, the fact that Defendants previously raised their jurisdictional and other arguments during the preliminary-injunction proceedings is what distinguishes this case from the Bishops' cited authority, *see* USCCB Opp'n at 3, because in that case the relevant argument "could have been offered or raised before the entry of judgment" but was not. *Ethridge v. Samsung SDI Co.*, 2023 WL 1974203, at *3 (S.D. Tex. Jan. 20, 2023). Here, Defendants have been consistent in timely raising their arguments, including filing a timely motion for reconsideration based on a Supreme Court decision issued after this Court ruled. There is nothing improper about Defendants providing this Court with the first opportunity to decide whether a subsequent Supreme Court decision affects its prior preliminary-injunction ruling.

If anything, Plaintiffs' oppositions confirm the appropriateness of Defendants' motion. Plaintiffs assert that the motion "notably" does not address the relevant statutory question under the Pregnant Workers Fairness Act, States Opp'n at 1, and "[t]ellingly . . . leaves most of the Court's order undisputed," USCCB Opp'n at 1. Defendants of course have not conceded any of those other questions. *Contra* USCCB Opp'n at 9 (characterizing the Final Rule as "an undisputedly unlawful regulation"). Instead, the motion for reconsideration is appropriately tailored to address only those issues affected by *Murthy*'s analysis (rather than seeking to re-litigate every potential issue relevant to the preliminary-injunction analysis). Plaintiffs' own arguments thus highlight the procedural correctness of the motion for reconsideration.

## II.     The *Murthy* Decision Confirms Both Sets of Plaintiffs' Lack of Standing

Plaintiffs attempt to portray *Murthy* as a distinguishable decision that changes nothing about this Court's prior standing analysis. On each theory of standing, however, Plaintiffs fail to grapple with the substance of *Murthy* and the logic of its reasoning.

First, the State Plaintiffs resort to claiming "compliance costs that are classic 'pocketbook injury,'" and accuse Defendants of "ignor[ing] this Court's express holding" that these costs are cognizable independent of any threat of future enforcement action. States Opp'n at 2 (modifications

2

omitted). But that prior holding is precisely why *Murthy* requires reconsideration—because *Murthy* makes clear that "the plaintiffs cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending." 144 S. Ct. at 1995. Thus, the claimed compliance costs are injury-in-fact only if there is a certainly impending threat of future enforcement. And here, neither set of Plaintiffs proves, through evidence, that there is a certainly impending threat of enforcement with respect to the narrow accommodations challenged here. Even if employers believe they have an "*ex ante* obligation to ensure that their employment practices and policies are compliant" with the Final Rule, USCCB Opp'n at 8, that does not equate to employers automatically having Article III injury-in-fact to challenge the Final Rule—particularly when it is wholly speculative that a concrete situation will ever arise in which an employee will actually request the specific type of accommodation to which the particular employer objects.

The States also invoke their claimed sovereign injury, *see* States Opp'n at 2-3, but they ignore *Murthy*'s requirement that a sovereign injury be proven with specificity. *See* 144 S. Ct. at 1996 (rejecting a claimed injury to "a sovereign interest in hearing from their citizens on social media" because "[t]he States have not identified any specific speakers or topics that they have been unable to hear or follow"). And although the States refer back to this Court's analysis in its preliminary injunction order, *see* States Opp'n at 2, the States do not dispute Defendants' argument that none of the state laws cited in that order actually conflicts with what the Final Rule requires. *See* Mot. for Reconsid. at 6.

As for potential private party enforcement, both sets of Plaintiffs contend that relief against EEOC "is at least partial relief." States Opp'n at 3; *see also* USCCB Opp'n at 6. But the same was true in *Murthy*—relief against the Government defendants would have been "at least partial relief" by eliminating one potential source of injury, even if the social-media platforms could still exercise their independent judgment to moderate the plaintiffs' content. The problem with that argument, of course, is that it is Plaintiffs' burden to "establish a substantial risk of future injury that is traceable to the Government defendants and likely to be redressed by an injunction against them." *Murthy*, 144 S. Ct. at 1993. And here, just as in *Murthy*, an injunction against EEOC "is unlikely to stop" Plaintiffs' claimed harms given the availability of private enforcement suits by independent actors who are not

3

parties to this case. *Id.* at 1996 n.11.

Indeed, the Bishops' argument on this issue proves the point: they attempt to satisfy redressability by arguing that "[t]his Court's injunction . . . properly stands in the way of *both* governmental *and* private enforcement." USCCB Opp'n at 6. But that position cannot be reconciled with *Murthy*'s recognition that non-parties are not "obliged to honor an incidental legal determination" produced in this suit, 144 S. Ct. at 1995, as well as the undisputed proposition that, even if EEOC is enjoined from issuing notices of right to sue, individuals can still seek to enforce their rights under the PWFA in court. *See Louisiana*, ECF No. 45 at 6-8. And the Bishops' assertion that, even if this Court's rulings are not binding on private parties, those "private parties would have an uphill climb" to enforce their rights, USCCB Opp'n at 6, is exactly what the Supreme Court rejected in *Haaland v. Brackeen*, 599 U.S. 255, 294 (2023) (holding that redressability cannot be satisfied by a judicial "opinion," and must stem from the binding power of the "federal court's judgment"), which was cited approvingly in *Murthy*, *see* 144 S. Ct. at 1995.

The Bishops try to further elide the role of private parties in the PWFA enforcement scheme by asserting that EEOC Commissioners can file charges of discrimination on their own. *See* USCCB Opp'n at 7. The Bishops point to these charges as having "skyrocketed by over *one-thousand percent* in just three years," *id.*, ignoring that this percentage increase appears substantial only because the overall number of charges was, and remains, quite small—less than three dozen in both FY2023 and FY2024. *See id.* at 7 n.3. Moreover, the Bishops point to nothing in the record suggesting they are imminently at risk of a Commissioner charge being filed against them with respect to denial of accommodations for which they have religious objections, or that any EEOC Commissioners have filed such charges against them in the past.

Finally, the Bishops contend that *Murthy* has nothing to do with their religion injuries, which the Fifth Circuit found sufficient in *Braidwood*. USCCB Opp'n at 3-5. The jurisdictional analysis in *Murthy*, however, was not limited to its factual context. In *Murthy*, the Supreme Court held that because the plaintiffs' theories of injury "depend on the *platform's* actions," and the platforms were not parties in the case and thus would "remain free to enforce, or not to enforce, those policies" causing the

4

plaintiffs' injuries, the plaintiffs could not establish standing against the Government defendants. *Id.* at 1986, 1995. So too here: the Bishops' injuries depend on non-party individuals actually needing and seeking accommodations to which the Bishops object, and regardless of any relief entered by this Court those non-parties will remain free to enforce their rights in court, which highlights the speculative nature of both the claimed injury and its redressability—particularly in the absence of any record evidence regarding those non-party individuals. The Fifth Circuit's decision in *Braidwood* is legally and factually distinguishable as Defendants have previously explained, *see USCCB*, ECF No. 29 at 8-9, but whatever else the case might stand for, it cannot overcome the Supreme Court's subsequent, controlling decision in *Murthy*. Under that decision, both sets of Plaintiffs here lack Article III standing.

### III.  *Murthy* Eliminated the Basis for the State Plaintiffs' Free Speech Claim

The State Plaintiffs do not dispute that, by virtue of the Supreme Court's conclusion in *Murthy* that none of the plaintiffs had standing, the Fifth Circuit's prior merits reasoning in *Missouri v. Biden*, 83 F.4th 350 (5th Cir. 2023), is no longer precedential. Thus, the primary decision cited by this Court to support the States' claim that they have a right "to control their own messaging with respect to the issue of abortion within their borders," PI Order at 25, no longer supports that conclusion.

The States instead contend that "the States' speech rights" are recognized in other decisions, such as the "line of cases protecting the government's ability to choose its own speech." States Opp'n at 4. But as previously explained, a government's ability to choose its own speech—and defeat private individuals' First Amendment challenges to such speech—does not support allowing States to bring affirmative claims against the United States arguing that a Federal policy is unlawful solely because it is contrary to the States' preferred "messaging." *See* Mot. for Reconsid. at 7-8.

The States also contend that Defendants' arguments here are contrary to what the United States argued before the Supreme Court in *Murthy*. States Opp'n at 4. But there is no inconsistency: as noted above, Defendants do not dispute the general principle that both States and the Federal Government are entitled to speak; that general right to speak, however, does not entail an affirmative right for States to challenge Federal policies on supposed "messaging" grounds. That is consistent

5

with what the United States argued in *Murthy*, and is what Defendants intended to convey in their motion for reconsideration. *See* Mot. for Reconsid. at 7-8. That motion's discussion of *Bd. of Regents of Univ. of Wisconsin Sys. v. Southworth*, 529 U.S. 217 (2000), could have been more detailed, but Defendants' bottom-line position is the same: although that case recognizes the principle "that the government can speak for itself," *id.* at 229, neither that general principle nor anything else in that decision—which went on to clarify that the case did *not* involve a situation where "the government itself is the speaker," *id.*—supports the type of novel claim the States assert here. And the States' claim is particularly unsupported now that the Fifth Circuit's decision in *Murthy* is no longer precedential.

### IV.     At a Minimum, Relief Should be Narrowed to Only the Named Parties

Even if the Court believes preliminary relief remains appropriate, *Murthy* makes plain that this Court cannot bind non-parties, and that Plaintiffs must have standing to seek each form of relief granted. *See* Mot. for Reconsid. at 8-9. Importantly, neither the States nor the Bishops make any effort to explain how they have standing to seek relief that extends beyond the named plaintiffs in their capacities as employers. That failure alone warrants narrowing of the injunction to vacate the relief extending to "[a]ny covered entity under the Final Rule with respect to all employees whose primary duty station is located in Louisiana or Mississippi[.]" PI Order at 31.

The failure to identify any theory of injury supporting broad relief extending to non-parties is particularly striking given that, as noted in the motion for reconsideration, the Court's PI Order did not identify a basis for granting such relief. *See id.* at 8 (citing the Court's assessment of harms in the PI Order at 29-30). And entry of relief affecting non-parties is contrary both to the standing principles reaffirmed in *Murthy*, as well as *Murthy*'s conclusion that private entities that "are not parties to the suit" are not "obliged to honor an incidental legal determination the suit produced." 144 S. Ct. at 1995. Plaintiffs' failure to meaningfully confront this issue in their oppositions highlights that a narrowed injunction, applying only to the named Plaintiffs in their capacities as employers, is appropriate.

Rather than engage on the relevant aspects of *Murthy*, the States attempt to portray Defendants' argument as a repackaged version of arguments presented during the preliminary-injunction proceedings. States Opp'n at 5. But again, the consistency of Defendants' arguments is a

6

virtue—not a reason to ignore them—and there is no reason this Court should ignore *Murthy*'s renewed support for those arguments.

The States also try to deflect by raising an issue on which *Murthy* plainly has no bearing, *i.e.*, whether this Court could have entered "broader relief" such as "a nationwide stay" of the challenged portion of the Final Rule. States Opp'n at 6; *see also* USCCB Opp'n at 8-9. As Defendants previously explained, however, even if such relief is available under current Fifth Circuit precedent, there is no basis for the Court to provide such relief in this case. *See Louisiana*, ECF No. 45 at 2-6 & n.1. Particularly in the face of Defendants' supplemental filing on these issues, *see id.*, Defendants have not "backtrack[ed]" on any argument, USCCB Opp'n at 9. Defendants have been consistent that relief should be limited, at most, to the named Plaintiffs in this suit, and *Murthy* further supports that limitation—a point to which neither the States nor the Bishops have offered any substantive response. Even if the Court believes some relief remains appropriate, therefore, the preliminary injunction should be narrowed to only the named Plaintiffs in this suit.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court vacate its PI Order. In the alternative, Defendants respectfully request that this Court vacate the free speech portion of its PI Order, and limit relief to, at most, the named Plaintiffs in this suit.

Dated: August 12, 2024

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

EMILY B. NESTLER
Assistant Branch Director

*/s/ Daniel Schwei*
DANIEL SCHWEI (N.Y. Bar #4901336)
Special Counsel
LAURA B. BAKST (D.C. Bar #1782054)
ALEXANDRA WIDAS (D.C. Bar #1645372)
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW

                    Washington, DC 20005
                    Tel: (202) 305-8693
                    Facsimile: (202) 616-8460
                    Email: daniel.s.schwei@usdoj.gov

*Counsel for Defendant*