**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAKE CHARLES DIVISION**

THE STATE OF LOUISIANA,
By and through its Attorney General, Elizabeth B. Murrill; and

THE STATE OF MISSISSIPPI,
By and through its Attorney General, Lynn Fitch,

PLAINTIFFS,

v.

Civil Action No. 2:24-cv-629

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

DEFENDANT.

<br>

**MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

TABLE OF CONTENTS ...................................................................................................... ii

TABLE OF AUTHORITIES .............................................................................................. iii

INTRODUCTION ................................................................................................................. 1

STATEMENT OF MATERIAL FACTS ............................................................................ 2

    I.   CONGRESS PASSES THE PWFA TO PROMOTE SAFE AND HEALTHY EMPLOYEE PREGNANCIES .................................................................................................................. 2

    II.  EEOC PROPOSES A RULE REQUIRING EMPLOYERS TO ACCOMMODATE ABORTIONS THAT WOULD BE ILLEGAL UNDER STATE LAW ......................................... 4

    III. EEOC IGNORES THE OUTCRY AND ISSUES ITS ABORTION-ACCOMMODATION MANDATE ............................................................................................................................ 5

    IV. PLAINTIFF STATES SUE THE EEOC ........................................................................... 6

LEGAL STANDARD ............................................................................................................ 7

ARGUMENT .......................................................................................................................... 8

    I.   THE STATES HAVE STANDING ..................................................................................... 8

    II.  THE COURT SHOULD RENDER SUMMARY JUDGMENT FOR THE STATES ................... 13

        A.   Count I: The Final Rule Exceeds EEOC's Statutory Authority .......................... 14

        B.   Remaining Counts ..................................................................................................... 25

    III. THE DEFAULT RULE IN FAVOR OF VACATUR APPLIES HERE .................................. 30

PRAYER FOR RELIEF ..................................................................................................... 31

## TABLE OF AUTHORITIES

**Cases**

*303 Creative LLC v. Elenis,*
  600 U.S. 570 (2023) ................................................................................................26

*Amin v. Mayorkas,*
  24 F.4th 383 (5th Cir. 2022) .....................................................................................8

*Axon Enter., Inc. v. FTC,*
  598 U.S. 175 (2023) ................................................................................................30

*Bd. of Trustees of Univ. of Ala. v. Garrett,*
  531 U.S. 356 (2001) ................................................................................................26

*Biden v. Nebraska,*
  143 S. Ct. 2355 (2022) ............................................................................................23

*BP p.l.c. v. Mayor & City Council of Baltimore,*
  141 S. Ct. 1532 (2021) ......................................................................................19, 20

*Bragdon v. Abbott,*
  524 U.S. 624 (1998) ................................................................................................20

*Braidwood Mgmt., Inc. v. Equal Emp. Opportunity Comm'n,*
  70 F.4th 914 (5th Cir. 2023) ...................................................................................10

*Calcutt v. FDIC,*
  37 F.4th 293 (6th Cir. 2022) (Murphy, J., dissenting), *rev'd on other grounds by* 598 U.S. 623 (2023).29

*Career Colleges & Schs. of Tex. v. Dep't of Educ.,*
  98 F.4th 220 (5th Cir. 2024) ...................................................................................31

*City of Boerne v. Flores,*
  521 U.S. 507 (1997) ................................................................................................25

*Clean Water Action v. EPA,*
  936 F.3d 308 (5th Cir. 2019) ...................................................................................14

*Collins v. Yellen,*
  141 S. Ct. 1761 (2021) ......................................................................................11, 29

*Consumers' Research v. Consumer Product Safety Commission,*
  91 F.4th 342 (5th Cir. 2024) ...................................................................................30

*Contender Farms, L.L.P. v. U.S. Dep't of Agric.,*
  779 F.3d 258 (5th Cir. 2015) .....................................................................................9

*Data Mktg. P'ship v. United States Dep't of Labor,*
    45 F.4th 846 (5th Cir. 2022) ................................................................................................. 30

*Davidson v. Fairchild Controls Corp.,*
    882 F.3d 180 (5th Cir. 2018) ................................................................................................. 8

*Dobbs v. Jackson Women's Health Org.,*
    597 U.S. 215 (2022) ..................................................................................................... passim

*Ducharme v. Crescent City Déjà vu, L.L.C.,*
    406 F. Supp. 3d 548 (E.D. La. 2019) ...................................................................................21

*EEOC v. Houston Funding II, Ltd.,*
    717 F.3d 425 (5th Cir. 2013) ...........................................................................................15, 16

*ExxonMobil Pipeline v. Dep't of Transp.,*
    867 F.3d 564 (5th Cir. 2017) ................................................................................................. 7

*Food & Drug Admin. v. Brown & Williamson Tobacco Corp.,*
    529 U.S. 120 (2000) .............................................................................................................22

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.,*
    561 U.S. 477 (2010) .............................................................................................................29

*Garcia v. San Antonio Metro. Transit Auth.,*
    469 U.S. 528 (1985) .............................................................................................................27

*Haaland v. Brackeen,*
    599 U.S. 255 (2023) ............................................................................................................. 9

*Humphrey's Ex'r v. United States,*
    295 U.S. 602 (1935) .............................................................................................................29

*Jama v. ICE,*
    543 U.S. 335 (2005) .............................................................................................................20

*Kimel v. Fla. Bd. of Regents,*
    528 U.S. 62 (2000) ...............................................................................................................25

*Lewis v. Carter,*
    436 F. Supp. 958 (D.D.C. 1977) ..........................................................................................29

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992) ............................................................................................................. 9

*Mexican Gulf Fishing Co. v. Dep't of Comm.,*
    60 F.4th 956 (5th Cir. 2023) ................................................................................................. 7

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.,*
  463 U.S. 29 (1983) ................................................................................................ 7, 8

*Planned Parenthood of Se. Pa. v. Casey,*
  505 U.S. 833 (1992) .................................................................................................15

*Restaurant L. Ctr. v. DOL,*
  115 F.4th 396 (5th Cir. 2024)............................................................................. 30, 31

*Seila Law LLC v. FPB,*
  140 S. Ct. 2183 (2020).......................................................................................... 28, 29

*Southwest Airlines Co. v. Saxon,*
  596 U.S. 450 (2022) .................................................................................................16

*State v. Biden,*
  10 F.4th 538 (5th Cir. 2021).......................................................................................7

*Tex. Office of Pub. Util. Counsel v. FCC,*
  183 F.3d 393 (5th Cir. 1999) ....................................................................................10

*Texas v. EEOC,*
  933 F.3d 433 (5th Cir. 2019) .......................................................... 9, 10, 11, 12, 13

*Texas v. EPA,*
  983 F.3d 826 (5th Cir. 2020) ......................................................................................8

*Texas v. EPA,*
  829 F.3d 405, 434 (5th Cir. 2016) ............................................................................12

*Texas v. Miguel Cardona, et al.,*
  2024 WL 2947022 (N.D. Tex. June 11, 2024)..........................................................11

*Texas v. United States,*
  50 F.4th 498 (5th Cir. 2022).....................................................................................30

*Texas v. United States,*
  787 F.3d 733 (5th Cir. 2015) ....................................................................................11

*Texas v. United States,*
  809 F.3d 134 (5th Cir. 2015) ............................................................................... 7, 24

*Turtle Island Foods, S.P.C. v. Strain,*
  65 F.4th 211 (5th Cir. 2023)....................................................................................25

*U.S. Chamber of Commerce v. U.S. Dep't of Lab.,*
  885 F.3d 360 (5th Cir. 2018)............................................................................. 14, 15

*United Steel v. Mine Safety & Health Admin.,*
   925 F.3d 1279 (D.C. Cir. 2019) ...................................................................30

*Van Buren v. United States,*
   593 U.S. 374 (2021) .......................................................................................22

*VanDerStok v. Garland,*
   86 F.4th 179 (5th Cir. 2023) ..........................................................................14

*Wages & White Lion Invs., LLC v. FDA,*
   16 F.4th 1130 (5th Cir. 2021) ........................................................................11

*West Virginia v. EPA,*
   597 U.S. 697, 142 S. Ct. 2587 (2022) ..................................................... 14, 22

*Yates v. United States,*
   574 U.S. 528 (2015) .......................................................................................17

*Young v. United Parcel Serv., Inc.,*
   575 U.S. 206 (2015) .........................................................................................2

## Statutes

5 U.S.C. § 704 ...........................................................................................................13

5 U.S.C. § 706 .....................................................................................................passim

29 U.S.C. § 2611(2)(A) ..............................................................................................2

29 U.S.C. § 2612(a)(1) ...............................................................................................2

42 U.S.C. § 12112(a) ..................................................................................................2

42 U.S.C. § 2000gg ...........................................................................................passim

42 U.S.C. § 2000e ......................................................................................... 2, 20, 22

La. Rev. Stat. § 23:341 ...............................................................................................2

La. Rev. Stat. § 40:1061 ...........................................................................................12

La. Stat. § 23:342(B) ................................................................................................10

Miss. Code § 41-41-45 .............................................................................................12

## Other Authorities

167 Cong. Rec. H2346 (daily ed. May 14, 2021) ......................................................3

168 Cong. Rec. E1360 (Dec. 27, 2022)......................................................................3

168 Cong. Rec. S10081 (daily ed. Dec. 22, 2022).....................................................3

168 Cong. Rec. S7050 (daily ed. Dec. 8, 2022) .........................................................5

*Abortion*, Black's Law Dictionary (11th ed. 2019)...................................................16

Bob Casey, *Casey, Cassidy Introduce Bipartisan Pregnant Workers Fairness Act, Propose Protections Against Workplace Discrimination* (Apr. 29, 2021) ..............................................................3

*Condition*, New Oxford Am. Dictionary 362 (3d ed. 2010) .....................................15

Consolidated Appropriations Act, 2023, div. II, Pub. L. 117-328 (2022), 136 Stat. at 6084.................3

*Elective abortion*, Stedmans Medical Dictionary 1470 (Nov. 2014) ..........................16

*Medical*, New Oxford Am. Dictionary 1087 (3d ed. 2010) ......................................16

*Republic Senator Blocks Murray-Casey-Cassidy Effort to Pass Pregnant Workers Fairness Act*, S. Comm. On Health, Educ., Labor & Pensions (Dec. 8, 2022) ..............................................3

The Hon. Mike Braun, Comment (Oct. 10, 2023)......................................................5

The Hon. Virginia Foxx, Comment at 1–2 (Oct. 10, 2023) .........................................5

**Rules**

Fed. R. Civ. P. 56 ......................................................................................................8

**Constitutional Provisions**

La. Const. art. I, § 20.1 ...........................................................................................12

U.S. Const. art. II, § 1.............................................................................................28

**Federal Regulations**

EEOC, *Implementation of Pregnant Workers Fairness Act*, 89 Fed. Reg. 29,096 (Apr. 19, 2024)........passim

EEOC, *Regulations to Implement the Pregnant Workers Fairness Act*, 88 Fed. Reg. 54,714 (Aug. 11, 2023).4

## INTRODUCTION

This Court's preliminary-injunction order, ECF No. 47 (PI Order), leaves little more for the Court to do than enter judgment for Plaintiffs and vacate the Equal Employment Opportunity Commission's (EEOC) unlawful abortion-accommodation mandate. As the Court is aware, this case arises under the Pregnant Workers Fairness Act of 2022 (PWFA), which Congress passed to promote healthy pregnancies and healthy babies. The PWFA achieves that goal by requiring employers (including States) to provide reasonable accommodations to pregnant employees for "known limitations" related to "pregnancy, childbirth, and related medical conditions." Things like extra breaks and other virtually costless accommodations that protect both mother and child. Through the Final Rule at issue in this case, however, EEOC has flipped the PWFA on its head. It did so by deeming an employee's purely elective abortion a "medical condition" that her employer must accommodate. *See* Compl. Ex. A, EEOC, *Implementation of Pregnant Workers Fairness Act*, 89 Fed. Reg. 29,096 (Apr. 19, 2024) (Final Rule) (EEOC_000082). Put plainly: Under the Final Rule, the *pro*-pregnancy PWFA requires employers to accommodate the *termination* of healthy pregnancies. Even as to employers like the States, and even as to abortions that would be illegal under Louisiana and Mississippi law. And even though the PWFA says not a word about abortion—for the obvious reason that it would have never passed if it had required such an accommodation.

The Final Rule is unlawful and defies both common sense and the English language. Not only is the Final Rule completely untethered from the statutory text, it also runs into a host of constitutional problems—not the least of which is its abrogation of the States' "legitimate interests," *Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215, 301 (2022), in regulating abortion and expressing their policies in favor of fetal life. As this Court agreed, "[a]t its core, this is a textbook case of a federal administrative agency exceeding its statutory authority in a way that both usurps the role of Congress and violates authority vested in the states under the principles of federalism." PI Order at 24.

For these and other reasons expressed below, the States are entitled to summary judgment in this challenge to the Final Rule's abortion-accommodation mandate. The Court should therefore grant this Motion and vacate the mandate.

## STATEMENT OF MATERIAL FACTS

In enacting the Final Rule, "EEOC exceeded its statutory authority to implement the PWFA and both unlawfully expropriated the authority of Congress and encroached upon the sovereignty of the States." PI Order at 2. The States have voiced such concerns since before the Final Rule was published, but the EEOC ignored them by barreling through the regulatory process and promulgating the unlawful Final Rule.

## I.    CONGRESS PASSES THE PWFA TO PROMOTE SAFE AND HEALTHY EMPLOYEE PREGNANCIES.

The PWFA fills a years-long gap in federal regulation of the relationship between employers and pregnant employees. *See* PI Order at 2. Before the PWFA, three federal laws grazed the issue of pregnancy in the workplace: Title VII, as amended by Pregnancy Discrimination Act of 1978, requires accommodations for pregnant employees (and makes unlawful the failure to accommodate) *only if* the employer discriminates against pregnant employees compared to other employees "not so affected but similar in their ability or inability to work." 42 U.S.C. §§ 2000e(k), 2000e–2(a)(1); *see Young v. United Parcel Serv., Inc.*, 575 U.S. 206, 229–30 (2015). The Americans with Disabilities Act mandates accommodations only for complicated pregnancies that qualify as a disability. 42 U.S.C. § 12112(a). And the Family Medical Leave Act permits—in limited instances—pregnant and post-partum employees twelve weeks of unpaid leave. 29 U.S.C. §§ 2611(2)(A), 2612(a)(1). At the state level, pro-family employment laws—like Louisiana's—stood (and continue to stand) in the gap to protect women against other forms of pregnancy discrimination. *See* La. Rev. Stat. § 23:341; 89 Fed. Reg. 29,170 tbl. 1 (collecting state laws) (EEOC_000156).

In 2021, a bipartisan coalition in Congress set out to pass the PWFA—the first federally required workplace accommodations for pregnant employees. The PWFA's primary sponsors touted it as providing "commonsense accommodations" for pregnant workers nationwide.[1] This way, women need not choose between "their baby's health" and "their job." 167 Cong. Rec. H2346 (daily ed. May 14, 2021) (statement of Rep. Carolyn Maloney). At the same time, covered employers would face little to no expense for PWFA accommodations—like providing a stool, or a water bottle, or additional bathroom breaks. *See, e.g.*, 168 Cong. Rec. S10081 (daily ed. Dec. 22, 2022) (statement of Sen. Bob Casey) (EEOC_136839); 168 Cong. Rec. E1360 (Dec. 27, 2022) (statement of Rep. Suzanne Bonamici during extension of remarks).[2] And so the PWFA was able to garner otherwise-unprecedented support from *both* Planned Parenthood and the U.S. Conference of Catholic Bishops. *See* 168 Cong. Rec. S10081 (daily ed. Dec. 22, 2022) (statement of Sen. Bob Casey) (EEOC_136839). In December 2022, Congress passed, and President Biden signed, the PWFA into law as part of the year-end consolidated appropriations package. *See* PI Order at 2 (citing Consolidated Appropriations Act, 2023, div. II, Pub. L. 117-328 (2022), 136 Stat. at 6084 (codified at 42 U.S.C. § 2000gg *et seq.*)).

The PWFA's text illuminates why it received such bipartisan support: Covered employers cannot discriminate against employees with "known limitations related to the pregnancy, childbirth, or related medical conditions of a qualified employee." 42 U.S.C. § 2000gg-1(1). And "known limitation" means a "physical or mental condition related to, affected by, or arising out of pregnancy, childbirth, or related medical conditions." *Id.* § 2000gg(4). Examples of PWFA-prohibited discrimination include: (1) refusing to provide reasonable accommodations; (2) forcing an employee

---

[1]    Bob Casey, *Casey, Cassidy Introduce Bipartisan Pregnant Workers Fairness Act, Propose Protections Against Workplace Discrimination* (Apr. 29, 2021), tinyurl.com/4jz68pcb.

[2]    *See also, e.g., Republic Senator Blocks Murray-Casey-Cassidy Effort to Pass Pregnant Workers Fairness Act*, S. Comm. On Health, Educ., Labor & Pensions (Dec. 8, 2022), tinyurl.com/ywryjhru (According to Senator Murray, the PWFA's purpose was "to provide basic, common sense, low cost, and even no cost accommodation").

to accept an accommodation that is not reasonable; (3) denying employment opportunities because of the employee's need for a reasonable accommodation; (4) forcing an employee to take paid or unpaid leave rather than providing a reasonable accommodation; or (5) taking an adverse employment action against an employee because they requested a reasonable accommodation. *Id.* § 2000gg-1(1)–(5). Abortion is not mentioned once. *See id.* § 2000gg *et seq.* And Congress left it to EEOC to provide "examples of reasonable accommodations." *Id.* § 2000gg-3(a).

## II.    EEOC PROPOSES A RULE REQUIRING EMPLOYERS TO ACCOMMODATE ABORTIONS THAT WOULD BE ILLEGAL UNDER STATE LAW.

Despite the clear statutory text and legislative history of PWFA, EEOC responded by wielding its rulemaking authority to propose a rule that would require employers—including States, religious entities, and every other covered employer—to accommodate purely elective abortions, including those that would be prohibited by an employer State's law. *See* EEOC, *Regulations to Implement the Pregnant Workers Fairness Act*, 88 Fed. Reg. 54,714 (Aug. 11, 2023) (Proposed Rule) (EEOC_000001). Under the Proposed Rule, EEOC called "having . . . an abortion" an "example[] of [a] pregnancy, childbirth, or related medical condition[]," which in turn requires a reasonable accommodation under the PWFA. *Id.* at 54,774 (EEOC_000061). In other words, the Proposed Rule spun the Act's *pro*-pregnancy purpose into an *anti*-pregnancy mandate.

Louisiana and Mississippi joined a comment opposing the Proposed Rule—one of over fifty thousand comments in opposition that EEOC received. *See* 89 Fed. Reg. at 29,104 (EEOC_000090). For good reason: The Proposed Rule lacked statutory authority, violated the U.S. Constitution, and was arbitrary and capricious in violation of the APA. *See* Compl., Ex. B (States' Comment) (EEOC_132599–610). Members of Congress echoed those concerns. For example, the PWFA's lead Republican co-sponsor in the Senate, Senator Bill Cassidy, highlighted the pre-passage agreement of his Democrat co-sponsor, Senator Bob Casey: that "under the act, . . . EEOC, could not—could not—issue any regulation that requires abortion leave" or "require employers to provide abortions in

violation of State law."[3] By acting otherwise, Senator Cassidy argued, EEOC had "ignored the statute and substituted its views on abortion for those of Congress."[4] Similarly, the U.S. House of Representatives' Committee on Education and the Workforce commented that the "PWFA [d]oes [n]ot [a]pply to [a]bortions" and rebuked EEOC for "issu[ing] regulations contrary to the statute itself."[5] And in the same vein, Senator Mike Braun rejected EEOC's proposed extension of its abortion-accommodation mandate to States, noting that the Supreme Court in *Dobbs* "reserve[d] to the States the ability" to regulate abortion.[6]

## III.    EEOC Ignores the Outcry and Issues its Abortion-Accommodation Mandate.

EEOC finalized the unlawful rule anyway: Despite admitting (as it must) that the PWFA is silent on abortion, *see* 89 Fed. Reg. at 29,111 (EEOC_000097), EEOC engineered the "inclusion of abortion in the definition of 'pregnancy, childbirth, or related medical conditions,'" *see id.* at 29,104 (capitalization altered) (EEOC_000090). In particular, EEOC reasoned that "[t]here are some medical conditions where the relation to pregnancy will be readily apparent"—including "having or choosing not to have an abortion." *Id.* at 29,191 (EEOC_000177). Commissioner Lucas dissented and issued a statement criticizing the Commission majority's "controversial" and "misguided" decision and use of "linguistic gymnastics" to "broaden the scope of the statute in ways that . . . cannot reasonably be reconciled with the text." *See* Compl., Ex. D, Andrea R. Lucas, Comm'r, Equal Emp't Opportunity Comm'n, Statement re: Vote on Final Rule to Implement the Pregnant Workers Fairness Act (Apr. 15, 2024), at 1, 16 (EEOC_138336, 138351). She explained that, "contrary to the final rule's definition,

---

[3]    Comment at 2 (Sept. 29, 2023) (quoting 168 Cong. Rec. S7050 (daily ed. Dec. 8, 2022)), tinyurl.com/7jvbmnfc.

[4]    *Id.* at 1.

[5]    The Hon. Virginia Foxx, Comment at 1–2 (Oct. 10, 2023), tinyurl.com/5evp62d5 (EEOC_132149–50).

[6]    The Hon. Mike Braun, Comment (Oct. 10, 2023), tinyurl.com/4pfupzfh (EEOC_134687–88).

a medical 'condition' is not the same as medical 'procedures.'" *Id.* at 11 (EEOC_138346). And because an abortion is a procedure, not a condition, the PWFA cannot plausibly be required to mandate accommodations for purely elective abortions.

EEOC's definitional bait-and-switch transforms the PWFA. If its abortion-accommodation mandate were to become effective, the Final Rule will leverage the PWFA's protections to require employers to accommodate employees' abortions and to permit the filing of EEOC charges (and private lawsuits) for retaliation, coercion, or harassment "reasonably likely to interfere with" employees' elective abortions (what EEOC euphemizes as "the exercise or enjoyment of PWFA rights"). 89 Fed. Reg. 29,148 (EEOC_000134).[7] And under the Final Rule, the States will be liable to "the same extent" as "any other public or private entity"—despite the "conflict between PWFA and State laws" limiting abortions. *Id.* at 29,112–13, 29,182 (EEOC_000098–99, 000168).

## IV.    PLAINTIFF STATES SUE THE EEOC.

Given the impending irreparable harm, Plaintiffs Louisiana and Mississippi sued EEOC, asserting that the Final Rule violates the Administrative Procedure Act (APA) and the Constitution. *See* Complaint, ECF No. 1 (May 13, 2024). The States sought a 5 U.S.C. § 705 stay of the Final Rule's abortion-accommodation mandate and preliminary injunctive relief against EEOC's enforcement of it pending judicial review.

After a briefing and argument, this Court determined the States have Article III standing, as they "demonstrated harm in the form of regulatory burden, increased costs to implement the abortion accommodation mandate, and damage to their sovereignty[.]" PI Order at 12. On the merits, this Court determined that "this is a textbook case of a federal administrative agency exceeding its statutory authority in a way that both usurps the role of Congress and violates authority vested in the state under

---

[7]    The novel prohibition on "harassment" short of "the level of unlawful retaliation" is found nowhere in the statutory text. 89 Fed. Reg. 29,216 & n.185 (EEOC_000202 & n.185).

the principles of federalism." *Id.* at 24. The States, therefore, were likely to succeed on the merits of their claim that "EEOC's textual interpretation of the PWFA to include an abortion accommodation mandate exceeds" EEOC's "Congressional authorization." *Id.* This Court also determined that the States were "likely to succeed on the merits of their claims that the abortion accommodation mandate of the Final Rule is arbitrary and capricious and exceeds the EEOC's statutory authority." *Id.* at 25.

After determining that all Plaintiffs face a threat of irreparable injury, *id.* at 29–30, and that the balance of equities and public interest weigh in favor of Plaintiffs, *id.* at 30, this Court granted in part the Plaintiffs' request for a preliminary injunction. This "postpone[d] the effective date of the Final Rule's requirement that covered entities provide accommodation for the elective abortions of employees that are not necessary to treat a medical condition related to pregnancy." *Id.* at 31. Having successfully obtained a preliminary injunction, the States now seek summary judgment that the Final Rule's abortion-accommodation mandate is unlawful and vacatur of that mandate.

## LEGAL STANDARD

The APA requires courts to "hold unlawful and set aside" agency actions that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2). An agency acts unlawfully when it promulgates a rule that is contrary to how "Congress has directly addressed the precise question at issue." *Texas v. United States*, 809 F.3d 134, 178 (5th Cir. 2015) (citations omitted). An agency acts arbitrarily or capriciously when its rules are not "reasonable and reasonably explained," *State v. Biden*, 10 F.4th 538, 552 (5th Cir. 2021) (per curiam) (citation omitted), and when it fails to provide any explanation for a rule, *see Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 42–43, 48 (1983). This review "focuses on whether an agency articulated a rational connection between the facts found and the decision made." *Mexican Gulf Fishing Co. v. Dep't of Comm.*, 60 F.4th 956, 971 (5th Cir. 2023) (quoting *ExxonMobil Pipeline v. Dep't of Transp.*, 867 F.3d 564, 571 (5th Cir. 2017)). "In reviewing that explanation, [courts] consider whether the

decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Texas v. EPA*, 983 F.3d 826, 835 (5th Cir. 2020) (quoting *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43).

APA cases are "often resolved at summary judgment because whether an agency's decision is arbitrary and capricious is a legal question that the court can usually resolve on the agency record." *Amin v. Mayorkas*, 24 F.4th 383, 391 (5th Cir. 2022). Courts must grant summary judgment "when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Davidson v. Fairchild Controls Corp.*, 882 F.3d 180, 184 (5th Cir. 2018) (citation omitted); FED. R. CIV. P. 56.

## ARGUMENT

The Final Rule's absurd abortion-accommodation regime stands at odds with the PWFA and the Constitution. A purely elective abortion of a healthy pregnancy is a *procedure*, not a *condition*. That is common sense and ordinary English. Ignoring the clear statutory language, the EEOC's abortion-accommodation mandate turns a law about *promoting* healthy pregnancies into a mandate that employers accommodate the *termination* of healthy pregnancies. The Final Rule's abortion mandate cannot pass muster under any relevant APA standard because it is wildly unlawful, arbitrary and capricious, and contrary to the statutory text and the Constitution. The Court should reiterate that the States have standing, declare the Final Rule's abortion-accommodation mandate unlawful, and vacate the mandate.

## I.    THE STATES HAVE STANDING

As the Court unequivocally determined at the preliminary-injunction stage, "the *States* Plaintiffs have standing to challenge the Final Rule's abortion accommodation mandate." PI Order at 12. It should reiterate that holding at this summary-judgment stage.

"Article III requires a plaintiff to show that she has suffered"—or imminently will suffer— "an injury in fact that is fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Haaland v. Brackeen*, 599 U.S. 255, 291–92 (2023). Because Louisiana and Mississippi—as employers—are directly regulated by the PWFA and the Final Rule, 89 Fed. Reg. 29,182 (EEOC_000168), there is "little question" that the States have met their burden here. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561–62 (1992). The States' unrecoverable compliance costs due to their status as regulated employers and the affront to the States' sovereignty presented by the Final Rule are injuries fairly traceable to the Final Rule promulgated by EEOC.

**1.** As this Court has already explained, "Louisiana and Mississippi—as employers and without the shield of Eleventh Amendment sovereign immunity—are directly regulated by the PWFA and the Final Rule." PI Order at 8. The States thus plainly have standing, since this is an APA case governed by familiar administrative-law standing principles.

One, "[i]f, in a suit challenging the legality of government action, the plaintiff is himself an object of the action, there is ordinarily little question that the action or inaction has caused him injury, and that a judgment preventing or requiring the action will redress it." *Texas v. EEOC*, 933 F.3d 433, 446 (5th Cir. 2019) (cleaned up); *Contender Farms, L.L.P. v. U.S. Dep't of Agric.*, 779 F.3d 258, 266 (5th Cir. 2015) (Under the "ordinary rule," a party that is the "object[] of the [r]egulation[] may challenge it"). Two, "[a]n increased regulatory burden typically satisfies the injury in fact requirement." *Contender Farms*, 779 F.3d at 266. Three, such injuries "are fairly traceable to EEOC's" agency action where the action itself "condemns [the State's] policies" and "pressures [the State] to change its laws and policies or risk referral to the Attorney General by EEOC." *EEOC*, 933 F.3d at 448. And four, such injuries "would be redressed by" relief "forbidding EEOC" from enforcing its agency action. *Id.* at 449.

There is no serious dispute that the States—as directly regulated employers—fall squarely within this basic framework. Indeed, this case is "easy" because EEOC "explicitly states that [the Final

Rule] applies to state employers." *Id.* at 446; *see* 89 Fed. Reg. 29,112–13, 29,182 (EEOC_000098–99, 000168). And that is true regardless of EEOC's position as to when it plans to enforce the Rule against the States. *See Tex. Office of Pub. Util. Counsel v. FCC*, 183 F.3d 393, 449 (5th Cir. 1999) (refusing to "find a lack of standing simply because an agency has refused to enforce its own regulations").

The on-the-ground reality underscores the immediate harm the States face and that is redressable by a decision in their favor. Consider, for example, Louisiana's Office of the Attorney General. It employs hundreds of women. Declaration of Sandra Schober (Schober Decl.) ¶ 11. For each of those women, OAG will provide, and has provided, accommodations for pregnancy, childbirth, and related medical conditions. Schober Decl. ¶¶ 12–13. It has done so consistent with state law for years and will continue to do so under the PWFA. Schober Decl. ¶ 13; *see* La. Rev. Stat. § 23:342(B) (reasonable accommodations for "pregnancy, childbirth, and related medical conditions"). But OAG has not provided and will not provide any accommodation (including unpaid leave) to facilitate an employee's purely elective abortion that would be illegal under Louisiana law—no matter where the abortion has been or will be performed—so long as an accommodation is not otherwise required by federal or state law. Schober Decl. ¶ 14.[8]

But EEOC's threat to enforce the Final Rule's abortion-accommodation mandate coerces the States to change their stance. 89 Fed. Reg. 29,112–13, 29,182 (EEOC_000098–99, 000168); *see Braidwood Mgmt., Inc. v. EEOC*, 70 F.4th 914, 928 (5th Cir. 2023). The moment the mandate takes effect (if ever)—and only because of the mandate—the States will be forced to change their accommodations policies or else face enforcement action. Schober Decl. ¶ 15; Declaration of Kelly Hardwick (Hardwick Decl.) ¶¶ 10–12. And changing their policies alone will cost the States, at

---

[8]    The "constitutional right to interstate travel" no more requires an employer to accommodate traveling interstate for an abortion than it would require an employer to grant vacation days for a family trip. *Cf. Dobbs*, 597 U.S. at 346 (Kavanaugh, J., concurring).

minimum, an estimated $500 and 120 employee hours in training costs, legal expenses, administrative costs, and productivity losses. Schober Decl. ¶¶ 15–18; Declaration of Cheryl Keen-Schilling (Keen-Schilling Decl.) ¶ 7 (explaining that the same compliance costs likely would be borne by "all Louisiana state agencies"); Hardwick Decl. ¶¶ 10–12. Moreover, none of this is surprising: As the Court emphasized, "the Final Rule itself notes such costs arise independently from any accommodation expenses." PI Order at 9 (citing 89 Fed. Reg. 29,177 ("Administrative costs, which include rule familiarization, posting new EEO posters, and updating EEO policies and handbooks, represent additional, one-time direct costs to covered entities.")). "For Article III standing purposes, such compliance costs are classic "pocketbook injury" redressable through a pre-enforcement APA rule challenge. *Id.* at 9 (citing *Collins v. Yellen*, 141 S. Ct. 1761, 1779 (2021)). Thus, the States have "demonstrate[d] that the unrecoverable costs of '[m]oving into compliance' with the abortion accommodation mandate of the Final Rule are cognizable and alone sufficient to constitute an injury-in-fact." *Id.* (quoting *Wages & White Lion Invs., LLC v. FDA*, 16 F.4th 1130, 1142 (5th Cir. 2021) and collecting cases).

**2.** Confirming their standing to sue, the States also stand to suffer a discrete injury to their sovereignty traceable to the Final Rule's abortion-accommodation mandate and redressable by a decision in their favor. As the Court observed, states generally "have an interest in 'the exercise of sovereign power over individuals and entities within the relevant jurisdiction—this involves the power to create and enforce a legal code, both civil and criminal.'" PI Order at 10 (quoting *Texas v. Miguel Cardona, et al.*, 2024 WL 2947022, at *11 (N.D. Tex. June 11, 2024) (O'Connor, J.)). The States' "sovereign interest in the power to create and enforce a legal code" gives rise to "standing based on (1) federal assertions of authority to regulate matters they believe they control, (2) federal preemption of state law, and (3) federal interference with the enforcement of state law." *Texas v. United States*, 787 F.3d 733, 749 (5th Cir. 2015); PI Order at 10–11. So "being pressured to change state law constitutes

an injury" for standing purposes, as does being forced to change state policies that mirror such laws. *EEOC*, 933 F.3d at 446.

These basic principles are especially critical in the context of abortion—one of the most contentious social issues of our time. In *Dobbs*, the Supreme Court returned "the authority to regulate abortion" to "the people and their elected representatives." 597 U.S. at 292. The States, in turn, have exercised that authority to prohibit abortions except in limited instances. *See* La. Rev. Stat. § 40:1061; Miss. Code § 41-41-45. Their policy on abortion is thus clear. *See* PI Order at 11("Here, the people of both Mississippi and Louisiana, through the democratic process, have unambiguously expressed their opposition to purely elective abortions by passing laws prohibiting the same."). In fact, Louisiana has gone so far as to amend its Constitution to promote life over death: "To protect human life, nothing in this constitution shall be construed to secure or protect a right to abortion or require the funding of abortion." La. Const. art. I, § 20.1. Consistent with this pro-life policy, the States as employers do not accommodate elective abortions for their employees. Schober Decl. ¶ 14; Hardwick Decl. ¶ 9.

As explained above, however, the Final Rule would force the States to alter their express values "to protect human life" by, instead, accommodating elective abortions. Such abortions would be illegal under State law—and yet the Final Rule would force the States to be complicit in them by expressly accommodating them. That is a direct attack on State sovereignty, *see EEOC*, 933 F.3d at 447, that "subverts the will of the citizens of Louisiana and Mississippi," and "undermines [the States'] sovereignty and the democratic process," PI Order at 11.

EEOC has previously attempted to argue that the States face no actual sovereign harm because they are not literally required to violate state law. ECF No. 21 at 9–10. But that avoids the States' point that their public policy generally and their employment policies specifically do not provide for the elective-abortion accommodations the Final Rule requires. That is textbook harm. *Cf. Texas v. EPA*,

829 F.3d 405, 434 (5th Cir. 2016) ("[T]he institutional injury to Texas from the inversion of the federalism principles enshrined in the Clean Air Act may constitute irreparable injury.").

Accordingly, the States have standing to sue to protect their sovereignty. PI Order at 11–12 ("Because the principles of federalism afford the states a sovereign interest in creating and enforcing their own laws and public policy, the *States* Plaintiffs clearly have Article III standing to challenge the Final Rule.").

## II.    THE COURT SHOULD RENDER SUMMARY JUDGMENT FOR THE STATES.

Under the APA, courts must "hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, [] otherwise not in accordance with law," "contrary to constitutional right, power, privilege, or immunity," or "in excess of statutory jurisdiction, authority, or limitations." 5 U.S.C. §§ 704, 706(2); *see, e.g.*, *EEOC*, 933 F.3d at 447. This is a case where a federal agency checked virtually all of these boxes in undertaking unlawful agency action that must now be set aside. Specifically, EEOC promulgated a Final Rule requiring the States to accommodate employees' purely elective abortions while purporting to implement the pro-pregnancy PWFA. *See* 89 Fed. Reg. 29,096 (EEOC_000082). In doing so, it disregarded the plain meaning of the PWFA, ignored statutory and constitutional guardrails on agency decision-making, and created a regulation that cannot coexist with basic precepts of federalism or First Amendment liberties. The Court should therefore grant the States' summary judgment.

The Final Rule presents nearly every basis for invalidating agency action under the APA. The easiest way to walk through the defects is to begin with EEOC's lack of statutory authority to promulgate the abortion-accommodation mandate. That defect is independently fatal. 5 U.S.C. § 706(2)(A), (C). That defect, moreover, is underscored by the mandate's constitutional problems, which are themselves independently fatal—either on the merits or as a matter of constitutional

13

avoidance.[9] *Id.* § 706(2)(B). And when you add in EEOC's arbitrary and capricious handling of these issues, that is the nail in the coffin. *Id.* § 706(2)(A). The Final Rule's abortion-accommodation must therefore be set aside.

### A.    Count I: The Final Rule Exceeds EEOC's Statutory Authority.

"[T]he text of the PWFA makes no reference to abortion; it does not contain the word 'abortion' even once." PI Order at 18. Faced with silence in the plain language of the statute, EEOC urges the Court to look outside of the text—relying "entirely on its own enforcement guidelines" and pre-*Dobbs* lower court decisions—to find the Final Rule's abortion-accommodation mandate lawful. *Id.* This is not how statutory interpretation works.

**1.** Like any agency when it acts, EEOC "must point to explicit Congressional authority justifying [its] decisions." *Clean Water Action v. EPA*, 936 F.3d 308, 313 n.10 (5th Cir. 2019). In an APA challenge, "the core inquiry" is "whether the proposed agency rule is a lawful extension of the statute under which the agency purports to act." *VanDerStok v. Garland*, 86 F.4th 179, 188 (5th Cir. 2023). The answer lies in statutory interpretation. *See id.*; PI Order at 17. And as this Court noted, "[o]nly where the statutory text shows that EEOC has 'clear congressional authorization' to enact a regulation can such a regulation withstand judicial scrutiny." PI Order at 18 (quoting *West Virginia v. EPA*, 597 U.S. 697, 724 (2022)). The analysis in this case is straightforward: EEOC's abortion-accommodation mandate far exceeds EEOC's statutory authority and cannot withstand judicial scrutiny.

Starting, as we must, with the text itself. PI Order at 19. "Hornbook canons of statutory construction require that every word in a statute be interpreted to have meaning, and Congress's use and withholding of terms within a statute is taken to be intentional." *U.S. Chamber of Commerce v. U.S.*

---

[9]    Plaintiffs preserved their constitutional arguments both on the merits and as a matter of constitutional avoidance. *See* Compl. ¶¶ 57, 60–65. Although they principally pitch their constitutional arguments below as a matter of avoidance, therefore, the arguments substantively stand on their own as well.

*Dep't of Lab.*, 885 F.3d 360, 381 (5th Cir. 2018). Relying on these familiar principles, this Court "beg[an]" with the presumption that Congress's decision *not* to include any reference to abortion in the PWFA was intentional." PI Order at 19 (emphasis in original). Rightly so.

But EEOC's problems with the plain text do not end there. As explained above, the PWFA requires employers to "make reasonable accommodations to the known limitations related to the pregnancy, childbirth, or related medical conditions of a qualified employee." 42 U.S.C. § 2000gg-1(1). The PWFA defines "known limitation" as a "physical or mental condition related to, affected by, or arising out of pregnancy, childbirth, or related medical conditions." *Id.* § 2000gg(4). Running with that language, the Final Rule reasons that "related medical conditions" are "medical conditions that relate to pregnancy or childbirth." 89 Fed. Reg. 29,191 (EEOC_000177). True enough. But then the Final Rule makes a mistake: It claims that "[t]here are some medical conditions where the relation to pregnancy will be readily apparent"—*including* "having or choosing not to have an abortion." *Id.* And from that conclusion flows a host of compliance obligations and enforcement threats for any employer who even thinks about not accommodating an employee's purely elective abortion.

This abortion-accommodation mandate is utterly atextual because an abortion is not a *condition*; it is a *procedure*. To be precise, it is a "procedure[]" intended to end the condition of being pregnant, *Planned Parenthood of Se. Pa. v. Casey*, 505 U.S. 833, 845 (1992), not a "*condition*" itself. A "condition"— the key statutory term here—is a "state of health or physical fitness" or "illness or other medical problem."[10] *Condition*, New Oxford Am. Dictionary 362 (3d ed. 2010); *see also EEOC v. Houston Funding II, Ltd.*, 717 F.3d 425, 428–29 & n.4 (5th Cir. 2013) (noting in the Title VII context that a "condition"

---

[10]    EEOC has previously argued that the States' interpretation would exclude from PFWA's scope accommodations for regular check-ups or other procedures (like ultrasounds) which could be "elective." ECF No. 21 at 16. But such and procedures go directly to the "state of health"—the *condition*, § 2000gg(4)—of both mother and baby, and they are directly "related to the pregnancy," § 2000gg-1(1). By contrast, an *elective* abortion's only purpose is to terminate the pregnancy for reasons entirely unrelated to the health of mother and baby.

15

related to pregnancy is a "physiological" state that is "initiated by pregnancy and concludes sometime thereafter"). Those states of health, fitness, or physiology related to pregnancy include, for example, "gestational diabetes; preeclampsia; HELLP (hemolysis, elevated liver enzymes and low platelets) syndrome; hyperemesis gravidarum; [and] anemia." 89 Fed. Reg. 29,183 (EEOC_000169). Abortion unquestionably is neither a health or physiological state nor an illness. It is a procedure to "artificially induce[] termination of a pregnancy for the purpose of destroying an embryo or fetus." *Abortion*, Black's Law Dictionary (11th ed. 2019).

The word *medical* in "medical conditions" reinforces this point. Any ordinary English speaker who says "I have a medical condition" reasonably may be understood to refer to a particular "diagnosis and treatment of disease and maintenance of health." *Houston Funding II*, 717 F.3d at 428 n.4. After all, the term *medical* means "of or relating to the . . . treatment of illness and injuries." *Medical*, New Oxford Am. Dictionary 1087 (3d ed. 2010). But purely elective abortions—that is, medically unnecessary abortions in violation of Louisiana and Mississippi law—do not fit that understanding: By definition, such elective procedures are "*without* medical justification." *Elective abortion*, Stedmans Medical Dictionary 1470 (Nov. 2014).

The surrounding statutory context likewise confirms that purely elective abortions are not "medical conditions." Recall that, in context, the PWFA refers to "the pregnancy, childbirth, or related medical conditions of a qualified employee." 42 U.S.C. § 2000gg-1(1). In fact, the PWFA repeats that list five separate times in the substantive provisions, then again in the definitional section, then again in the remedies section, then again in the rulemaking provision, and then again in the "relationship to other laws" provision. *Id.* § 2000gg-1(1), (2), (3), (4), (5); *id.* § 2000gg(4); *id.* § 2000gg-2(g); *id.* § 2000gg-3(a); *id.* § 2000gg-5(a)(1). Such usage of terms—particularly where, as here, Congress invoked them repeatedly—implicates the "well-settled" ejusdem generis canon, which assumes that terms in a series are similar in nature. *See Sw. Airlines Co. v. Saxon*, 596 U.S. 450, 457 (2022); *Yates v. United States*, 574

16

U.S. 528, 545 (2015). Here, the critical terms are *pregnancy* and *childbirth*—both terms that expressly aim toward the healthy and safe birth of a child. To interpret the next term in the series—*related medical conditions*—to cover a pregnancy-ending, fetus-killing procedure would thus be directly contrary to ordinary ejusdem generis principles and would "amount to little more than semantic gymnastics." PI Order at 20.

EEOC had no answer to this straightforward reading during the preliminary-injunction proceedings. Indeed, by refusing to ever answer the question whether an abortion is a condition (as the Final Rule states), EEOC effectively admitted that the answer is no. Instead, EEOC briefly argued that the abortion-accommodation mandate finds refuge in the term "pregnancy" because "Congress made it clear that it intended to cover 'pregnancy'"—and denial of an abortion accommodation is a denial "for reasons 'related to pregnancy.'" ECF No. 21 at 15 (quoting § 2000gg-1(1)). But *termination* of a healthy pregnancy is not *pregnancy*. And the statute does not require accommodations "for reasons" related to pregnancy; it requires accommodations for "*known limitations* related to the pregnancy, childbirth, or related medical conditions," § 2000gg-1(1) (emphasis added), and a "known limitation" is defined as a "physical or mental condition," § 2000gg(4)—which an elective abortion is not.

EEOC has also previously argued that, "[e]ven when no medical complication precipitates an abortion, . . . there are still conditions accompanying an abortion—such as cramping, nausea, or needing to recover—that constitute 'related medical conditions' to pregnancy, even by Plaintiffs' proffered definition." ECF No. 21 at 16. But that just begs the question: EEOC's first-order obligation is to show that the PWFA covers the elective abortion *to begin with*. Recognizing as much, EEOC proclaimed that "Congress sought to broadly cover limitations with a nexus to pregnancy or childbirth." *Id.* at 17. But EEOC's wishful rewriting of the PWFA (e.g., "nexus") runs away from the actual statutory text. The *definition* of "known limitation" is a "physical or mental condition," § 2000gg(4), which abortion is not. So if abortion is not a "physical or mental condition" (§ 2000gg(4))

17

or "pregnancy, childbirth, or [a] related medical condition[]" (§ 2000gg-1(1))—and it is none of those things—then the statute cannot be read to require accommodations for elective abortions, including any side effects.

This Court agreed during the preliminary-injunction proceedings: "As a matter of basic statutory interpretation using plain-meaning analysis, the Plaintiffs clearly have the stronger position." PI Order at 20. Indeed, "[t]he decision to obtain a purely elective abortion is not undertaken to treat a 'medical condition' related to pregnancy or childbirth. It is thus better described as a medical 'procedure.'" *Id.* And of course, the PWFA requires accommodations for "conditions," not "procedures." The Final Rule's rewriting of "related medical conditions" to include elective abortions is unlawful and exceeds EEOC's authority.

**2.** The administrative record now confirms that EEOC's refusal to engage in proper statutory interpretation was apparently intentional rather than negligent. As any law student knows, statutory interpretation begins with the ordinary meaning of the words that Congress used. When writing a hugely consequential regulation on the issue of abortion, therefore, one of the federal government's most high-profile agencies reasonably would be expected to do the same. Thankfully, EEOC did. In a tiny corner of the vast administrative record, the Court can find dictionary definitions of all the key statutory terms that EEOC apparently considered—including, most important here, terms like "related to," "affect," and "arise" that are the connectors in the definition of "known limitation." *See* EEOC_138152–65 ("Dictionary Definitions"); § 2000gg(4) (the term 'known limitation' means physical or mental condition related to, affected by, or arising out of pregnancy, childbirth, or related medical conditions"). But what's missing? Any dictionary definition regarding the subject in that definition: "physical or mental condition." It is remarkable that EEOC built its abortion-accommodation mandate on the premise that an abortion is a "condition"—and yet EEOC refused to even consider the ordinary meaning of that term. One plausible explanation for this is that EEOC

precommitted itself to an abortion-accommodation mandate come hell or high water, and so no dictionary-based justification was necessary. Or, perhaps EEOC knew a dictionary-based approach would torpedo the mandate, and so it refused to touch the definition of "condition." Either way, this is not how statutory interpretation works.

And to be clear, EEOC knows how statutory interpretation works. It pulled the Scalia & Garner treatise, *Reading Law: The Interpretation of Legal Texts*, apparently to try to figure out how the so-called "prior-construction canon" might sustain the abortion-accommodation mandate. EEOC_138239–43. (It seems EEOC could not be bothered to pull Principle 2 (supremacy-of-text principle), Principle 6 (ordinary-meaning canon), or Principle 7 (fixed-meaning canon) from *Reading Law.*) But EEOC badly mishandled even that tool because Scalia and Garner would have been shocked by EEOC's distortions.

In the Final Rule, EEOC attempted to justify its revisions to the PWFA's text on the ground that three pre-*Dobbs* lower court cases interpreted anti-discrimination language in a different statute— Title VII—to bar employers from taking adverse actions against employees because they "contemplated having, or chose to have, an abortion." 89 Fed. Reg. 29,110, 29,152 n.296 (EEOC_000096, 000138 n.296). EEOC also had previously issued informal guidance on Title VII along those lines. *Id.* at 29,152 n.296 (EEOC_000138 n.296). And thus, EEOC proclaimed that its past interpretation of Title VII is "settled," and thus, that Congress must have intended to carry it forward in the PWFA. *Id.* at 29,106, 29,191 n.23 (EEOC_000092, 000177 n.23).

EEOC's wrong-headed understanding of Title VII is unavailing on its own terms—but this argument fails for even more basic reasons. Specifically, the argument does not get off the ground because EEOC's inability to find more than three pre-*Dobbs* cases is not "the sort of 'judicial consensus so broad and unquestioned that we must presume Congress knew of and endorsed it.'" *See BP p.l.c. v. Mayor & City Council of Baltimore*, 141 S. Ct. 1532, 1542 (2021) (a "smattering of lower court opinions"

19

is insufficient); *see also Jama v. ICE*, 543 U.S. 335, 351–52 (2005) ("decisions of two Courts of Appeals" were "too flimsy" to justify using the canon of prior construction). This Court drove that point home. PI Order at 22 (stating the lower court opinions regarding Title VII "hardly qualif[y] as a judicial consensus" and collecting cases). That is especially so "where, as here, 'the text and structure of the [PWFA] are to the contrary.'" *BP p.l.c.*, 141 S. Ct. at 1541 ("This Court bears no 'warrant to ignore clear statutory language on the ground that other courts have done so.'"). Had EEOC listened to Scalia and Garner, it would have known this. *See* EEOC_138242 (*Reading Law* passage explaining the "uniform weight of authority [must be] significant enough that the bar can justifiably regard the point as settled law").

As for EEOC's self-serving reliance on its own past Title VII guidance, this case is nothing like *Bragdon v. Abbott*, 524 U.S. 624 (1998) (cited at 89 Fed. Reg. 29,191 n.23 (EEOC_000177)), where the Supreme Court emphasized that "[a]ll indications are that Congress was well aware of the position taken by [the Department of Justice's Office of Legal Counsel] when enacting the [Americans with Disabilities Act] and intended to give that position its active endorsement." *Id.* at 645. Here, EEOC did not cite any support, textual or otherwise, for its view that—in passing the PWFA—Congress was aware of and intended to implement EEOC's view about the prior meaning of *different* language in a *different* statute to mandate abortion accommodations in the PWFA. To the contrary, EEOC acknowledged that multiple sponsors of the bill insisted the PWFA would *not* require abortion accommodations. 89 Fed. Reg. at 29,109 (EEOC_000095). That undisputed congressional record, therefore, likewise confirms that the prior-construction canon is inapposite here.

And all this is on top of EEOC's painfully mistaken view of Title VII itself. As relevant here, Title VII includes "because of or on the basis of pregnancy, childbirth, or related medical conditions" in its definition of "because of sex" or "on the basis of sex." 42 U.S.C. § 2000e(k). And in the same provision, the statute states that "[t]his subsection shall not require an employer to pay for health

20

insurance benefits for abortion, except where the life of the mother would be endangered if the fetus were carried to term, or except where medical complications have arisen from an abortion[.]" *Id.* EEOC takes that latter reference to abortion to mean that abortion is somehow hiding in the terms "pregnancy, childbirth, or related medical conditions." *See* ECF No. 21 at 13.[11] But that reference to abortion is just one of innumerable examples where Congress goes out of its way to make clear that it is not mandating the funding of abortion—including, for example, the familiar Hyde and Weldon Amendments and approximately one dozen provisions *in the same appropriations legislation containing the PWFA* that barred appropriations and federal entities from supporting and facilitating abortion. *See* Compl., Ex. B at 3 n.1 (States' Comment) (EEOC_132602). That Congress went out of its way here, also, to expressly prohibit funding for abortion is entirely unremarkable and does not magically transform Title VII into an abortion-accommodation mandate. And in all events, on an issue as contentious as abortion, Congress would and could never obliquely cover the issue as EEOC suggests—sufficient majorities of both chambers are either in or out on that issue. They would not speak in shadows.

Finally, even if Title VII were written as EEOC prefers it, EEOC has no answer to the fact that the PWFA is fundamentally different than Title VII. Title VII is an anti-discrimination law unlike the PWFA. The PWFA expressly incorporates some portions of Title VII, *e.g.*, 42 U.S.C. § 2000gg(2),

---

[11]    EEOC has emphasized that this provision later establishes "that employers *can* be required to pay for abortion when 'the life of the mother would be endangered' or 'where medical complications have arisen from an abortion.'" ECF No. 21 at 13. But, even if special dispensation for *medically required* abortions fell within Title VII, that says nothing about *purely elective* abortions entirely unrelated to maternal or fetal health.

This likewise disposes of any argument regarding Louisiana's PDA analogue. *See Ducharme v. Crescent City Déjà vu, L.L.C.*, 406 F. Supp. 3d 548, 558 (E.D. La. 2019). *Ducharme*, of course, is not binding on this Court. More fundamentally, the *Ducharme* court's basis for finding that Title VII and its Louisiana counterpart cover abortion was that abortion "is a medical procedure that may be used to treat a pregnancy related medical condition." *Id.* at 556–57. The court apparently viewed that limitation as relevant because the plaintiff "told [her employer] her health reasons for needing to terminate the pregnancy." *Id.* at 556; *but see id.* at 557 (referring to "the termination of a pregnancy, whether medically necessary or not"). The decision thus appears to exclude the purely elective abortions at issue here.

(3), but notably "*does not* incorporate Title VII's amended pregnancy provision, PI Order at 19 (emphasis added) (referencing 42 U.S.C. § 2000e(k)). The PWFA's substantive language also is narrower than Title VII's: It requires reasonable accommodations for "*known limitations* related to [] pregnancy, childbirth, or related medical conditions"—language that does not appear in Title VII. 42 U.S.C. § 2000gg-1(1) (emphasis added). And "although Congress directed that certain terms incorporated in [the] PWFA from the ADA 'shall be construed as such terms are construed' thereunder, 42 U.S.C. § 2000gg(7), no provision of the PWFA requires incorporation of the 'pregnancy, childbirth, or related medical conditions' language of [Title VII,] 42 U.S.C. § 2000e(k)." PI Order at 19. In each of these respects, Title VII is markedly different than the PWFA, and thus Title VII offers no interpretative help to EEOC here. That ends this case on the text in the States' favor.

**3.** Although the text unambiguously resolves this case in the States' favor, it bears noting that two related points are "extra icing on a cake already frosted." *Van Buren v. United States*, 593 U.S. 374, 396 (2021).

*First*, as this Court recognized, the major-questions doctrine easily defeats EEOC's defense of the abortion-accommodation mandate. That doctrine applies when an "agenc[y] assert[s] highly consequential power beyond what Congress could reasonably be understood to have granted." *EPA*, 597 U.S. at 724 (quotation omitted); PI Order at 20. Congress is expected "to speak clearly if it wishes to assign to an agency decisions of vast economic and political significance." *Id.* at 729 ("We also find it 'highly unlikely that Congress would leave' to 'agency discretion' the decision of how much coal-based generation there should be over the coming decades."); *see also Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 123 (2000) ("It is highly unlikely that Congress would leave the determination as to whether the sale of tobacco products would be regulated, or even banned, to the FDA's discretion in so cryptic a fashion.").

Here, the Final Rule attempts to regulate abortion—an issue of "great social significance," *Dobbs*, 597 U.S. at 300—and the abortion-accommodation mandate is "novel and fundamentally different" than any federal abortion law in history, *Biden v. Nebraska*, 143 S. Ct. 2355, 2369 (2022). *See also EPA*, 597 U.S. at 723. There is no "clear congressional authorization" that Congress intended to extend the PWFA to impose and abortion accommodation mandate. PI Order at 22 ("Not only is the EEOC unable to point to any language in the PWFA empowering it to mandate the accommodation of elective abortions, but there can be little doubt in today's political environment that any version of the PWFA that included an abortion accommodation requirement would have failed to pass Congress."). This Court put it simply: It is difficult to believe that Congress "granted the EEOC the authority to interpret the scope of the PWFA in a way that imposes a nationwide mandate on both public and private employers—irrespective of applicable abortion-related state laws enacted in the wake of *Dobbs*—to provide workplace accommodation for the elective abortions of employees." *Id.* at 20 (describing the major question doctrine as a "straightforward" way of handling this issue).

The States here add only one footnote on the major-questions issue: To avoid a potential (and frankly, puzzling) scenario where EEOC seeks to convince the Fifth Circuit that the major-questions doctrine does not in fact apply here, the States urge the Court to (a) principally decide the case without relying on the major-question doctrine (*i.e.*, the statutory text alone defeats the mandate), while (b) holding in the alternative that the major-questions doctrine itself would independently require the same result. Both arguments are unquestionably correct and the Court should continue to embrace them. But the States seek to avoid a potential scenario where EEOC takes an appeal solely on the major-questions doctrine and wins the appeal, which would then require remand litigation on the straight statutory question sans major-questions doctrine.

The *second* layer of extra icing here is, of course, the damning (for EEOC) legislative history. As this Court recounted, "if there were any remaining doubt, the legislative history unambiguously

confirms that Congress specifically *did not* intend for the PWFA to require employers to accommodate abortion":

> Indeed, lawmakers from both sides of the aisle expressly stated that the PWFA does not address abortion. The Democratic sponsor of the PWFA, Senator Bob Casey, emphasized in response to concerns that abortion might be at issue: "I want to say for the record … that under the [PWFA], the [EEOC] could not – could not – issue any regulation that requires abortion leave, nor does the act permit the EEOC to require employers to provide abortions in violation of State law." 168 Cong. Rec. S7050 (daily ed. Dec. 8, 2022). Republican Senator Steve Daines similarly noted that "Senator Casey's statement reflects the intent of Congress in advancing the [PWFA] today. This legislation should not be misconstrued by the EEOC or Federal courts to impose abortion-related mandates on employers, or otherwise to promote abortions, contrary to the intent of Congress." 168 Cong. Rec. S10081 (daily ed. Dec. 22, 2022). And Republican Senator Bill Cassidy, also a sponsor of the PWFA, likewise "reject[ed] the characterization that [the PWFA] would do anything to promote abortion." 168 Cong. Rec. S7050 (daily ed. Dec. 8, 2022). Additionally, after concerns were raised about the PWFA's initial failure to include a religious exemption, Senator Cassidy confirmed on the Senate floor that the PWFA "allows employers to make employment decisions based on firmly held religious beliefs." 168 Cong. Rec. S7050 (daily ed. Dec. 8, 2022).

PI Order at 23–24. If anything is clear, therefore, is that Congress plainly did not intend to cover abortion in the PWFA. And in fact, if the PWFA had covered abortion, Congress would have never passed it because the PWFA's own sponsors would have abandoned ship. Again, the States do not need this legislative history to win, but it only underscores that EEOC's abortion-accommodation mandate—and its arguments in this litigation—is a direct affront to the rule of law.

*    *    *

In short, any of these statutory interpretation analyses is sufficient to find the abortion-accommodation mandate unlawful. *See* PI Order at 24 ("At its core, this is a textbook case of a federal administrative agency exceeding its statutory authority in a way that both usurps the role of Congress and violates authority vested in the states under the principles of federalism."). Because EEOC plainly promulgated an unlawful mandate that is contrary to how "Congress has directly addressed the precise question at issue," *Texas*, 809 F.3d at 178, the Court should grant the States summary judgment.

**B.      Remaining Counts**

Because the resolution of Count I emphatically defeats the Final Rule's abortion-accommodation mandate, the States only briefly address their remaining Counts here. In full candor, the Court's preliminary-injunction analysis largely resolves Counts II and III in the States' favor as well; and Count IV is largely asserted for preservation purposes and would be a moot point if the Court otherwise vacates the Final Rule's mandate. Accordingly, the Court need not spend significant time on these remaining Counts to grant summary judgment to Plaintiffs.

**1. Violation of the Constitution (Count II).** The Final Rule's constitutional problems confirm its illegality. *See Turtle Island Foods, S.P.C. v. Strain*, 65 F.4th 211, 219 (5th Cir. 2023) ("[W]e 'shun an interpretation that raises serious constitutional doubts and instead adopt an alternative that avoids those problems.'").

*First*, and foremost, EEOC's abortion-accommodation mandate (on pain of money damages and other penalties) exceeds Congress's constitutional ability to abrogate the States' sovereign immunity. *See* 89 Fed. Reg. 29,182 (EEOC_000168) (States "will not be immune under the 11th Amendment to actions brought under the PWFA"). Congress's Section 5 power to abrogate sovereign immunity "extends only to 'enforc[ing]' the provisions of the Fourteenth Amendment." *City of Boerne v. Flores*, 521 U.S. 507, 519 (1997). And "the Fourteenth Amendment does not protect the right to an abortion" as a protected class or characteristic (such as sex-based classification), *Dobbs*, 597 U.S. at 240 & n.22, 301; *contra* ECF No. 21 at 20, nor is declining to affirmatively accommodate abortion irrational or reflective of States' "history of purposeful unequal treatment" given the States' many legitimate interests in limiting the procedure, *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 82–83 (2000). Particularly in light of *Dobbs*, Congress could not validly abrogate the States' sovereign immunity under the Fourteenth Amendment to establish the abortion-accommodation mandate. And that is the best reason in the world to avoid interpreting the PWFA as EEOC prefers.

*Second*, the abortion-accommodation mandate does not satisfy basic congruence-and-proportionality review. "[I]n order to authorize private individuals to recover money damages against the States, there must be a pattern of discrimination by the States which violates the Fourteenth Amendment, and the remedy imposed by Congress must be congruent and proportional to the target violation." *Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 374 (2001). But there is nothing in the legislative record to suggest that Congress identified a problematic pattern of unconstitutional violations regarding abortion that the PWFA was intended to remedy. As a result, the abortion-accommodation "remedy" the Final Rule proposes is not congruent and proportional.

*Third*, the abortion-accommodation mandate uniquely violates the States' free speech rights. After being confronted with the U.S. Solicitor General's position on this issue which was contrary to EEOC's, ECF No. 60 at 4, EEOC now concedes that "both States and the Federal Government are entitled to speak" for themselves, ECF No. 61 at 5–6. And that is the right the abortion-accommodation mandate threatens to destroy.

The States have made their views on abortion clear, through constitutions, through statutes, and through their own employment policies: Abortion is illegal with narrow exceptions, and the States will not accommodate purely elective abortions that would violate State law. *See* Compl. ¶¶ 10–12 (collecting State laws); Schober Decl. ¶¶ 7, 14; Hardwick Decl. ¶ 9. But the Final Rule, by design, seeks to alter that message by forcing States to accommodate those very abortions. Put in the Supreme Court's words, the Final Rule (and its liability for anti-interference) purports to do what "[n]o government" can—"affect a speaker's message by forcing [the speaker] to accommodate other views." *303 Creative LLC v. Elenis*, 600 U.S. 570, 596 (2023). And make no mistake, the Final Rule directly targets the States' speech. *See, e.g.*, 89 Fed. Reg. 29,141, 29,148 (EEOC_000127, 000134) (declining to decide whether certain statements, including "statements in employee handbooks," would violate the Final Rule: it "will depend on the language of the statement"); *see also id.* at 29,216 (EEOC_000202)

26

(stating only that "the coercion provision does not apply to *any and all* conduct or statements that an individual finds intimidating" (emphasis added)). The upshot, as this Court recognized: "The abortion accommodation mandate unquestionably impedes on the authority of Louisiana and Mississippi to control their own messaging with respect to the issue of abortion within their borders." PI Order at 25.

 *Finally*, and most fundamentally, "because the abortion accommodation mandate forces the [States] to provide (and fund) accommodations for elective abortions that directly conflict with the States' own laws and policies, the abortion accommodation mandate 'is destructive of state sovereignty.'" *Id.* at 24 (quoting *Garcia v. San Antonio Metro. Transit Auth.*, 469 U.S. 528, 554 (1985)). That is because the Final Rule disrupts the "dual sovereignty between the States and the Federal Government" by forcing the States to provide (and fund) accommodations for elective abortions that directly conflict with the States' own laws and policies refusing to accommodate such abortions. *See Garcia*, 469 U.S. at 554. As explained, the citizens of Louisiana and Mississippi, through the democratic processes, "have chosen to enact legislation and promote public policy that is antithetical to the directives of the abortion accommodation mandate." PI Order at 25. The Supreme Court's assurance that the States have "legitimate interests" in regulating abortion, *Dobbs*, 597 U.S. at 301, would be hollow if the federal government could just use the Fourteenth Amendment as a back door to force States to facilitate abortions. That is not how sovereignty works. And that is just another sign that the abortion-accommodation is unlawful. PI Order at 25 ("The *States* Plaintiffs therefore adequately demonstrate that they are likely to succeed on their claims that the abortion accommodation mandate violates the principles of federalism and encroaches on state sovereignty.").

 **2. Arbitrary and Capricious (Count III).** The foregoing defects may be simultaneously characterized as "arbitrary and capricious." This Court appears to agree, as it concluded the States "satisfy their burden of showing that they are likely to succeed on the merits of their claims that the

27

abortion accommodation mandate of the Final Rule is arbitrary and capricious and exceeds the EEOC's statutory authority." *Id.*

The States here offer one additional example of the arbitrary and capricious nature of the Final Rule. Everyone knew that the Final Rule would have a profound impact on the States as employers. And thus everyone knew the potential for federalism, sovereignty, immunity, and related issues. Many comments received by the agency—including one joined by the plaintiff States here—stated as much. Yet EEOC dismissed all this out of hand. EEOC said the Final Rule "does not have 'federalism implications,'" 89 Fed. Reg. 29,182 (EEOC_000168), and any "interaction or conflict between PWFA and State laws … will be addressed on a case-by-case basis," *id.* at 29,112 (EEOC_000098). Similarly, EEOC left any free-speech issues to be addressed in "a case-by-case analysis." *Id.* at 29,144, 29,148, 29,151, 29,220 n.206 (EEOC_000130, 000134, 000137, 000206 n.206). The Court should decline to punt such serious matters of constitutional concern. Here, punting chills free speech and forces compliance in the meantime by employers who fear enforcement actions, and forces difficult choices for States that must decide whether to change their policies or else risk enforcement actions. It was arbitrary and capricious for EEOC to avoid these issues altogether—and in all events, this is the proper "case" to do EEOC's "case-by-case analysis."[12]

**3. Violation of Article II and Separation of Powers (Count IV).** EEOC's putative status as an "independent federal agency" also violates Article II and the separation of powers. Article II of the Constitution vests "'the executive Power'—all of it"—in the President. *Seila Law LLC v. FPB*, 140 S. Ct. 2183, 2191 (2020) (quoting U.S. Const. art. II, § 1). That means the President must have the

---

[12] Moreover, EEOC's Final Rule is arbitrary and capricious because its "economic analysis assumes that the Final Rule will impose no added costs on States." Compl. ¶ 70. EEOC's assumption is plainly wrong because States like "Louisiana and Mississippi do not currently require employers to accommodate elective abortions that are prohibited by State law," and thus common sense suggests that employers in these States will incur *some* costs even if EEOC did not even try to quantify them. For that additional reason, therefore, the Final Rule is arbitrary and capricious.

ability "to remove those who assist him in carrying out his duties." *Id.* (quoting *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 513–14 (2010)). This requirement, moreover, extends to "multimember expert agencies" that "wield substantial executive power." *Id.* at 2199–200 (citing *Humphrey's Ex'r v. United States*, 295 U.S. 602 (1935)). If "an agency does important work," Article II demands that its leaders be removable by, and thus accountable to, the President who (in turn) is accountable to the People. *Collins*, 141 S. Ct. at 1784.

The prevailing view held by EEOC violates these constitutional principles by deeming EEOC's enabling statute to constrain the President from removing EEOC Commissioners, except for cause. *See, e.g.*, *Lewis v. Carter*, 436 F. Supp. 958, 961 (D.D.C. 1977); 42 U.S.C. § 2000e-4(a). Even if the President disagrees on policy with the Commissioners, therefore, he could not remove them without cause; instead, he must cite malfeasance, inefficiency, or neglect of duty in any removal attempt. This restriction on the President's removal power violates Article II and the separation of powers. EEOC unquestionably wields "quintessentially executive power[s]," including the authority to issue binding regulations and pursue enforcement actions in federal court on behalf of the United States. *Cf. Seila Law*, 140 S. Ct. at 2200; *see also Collins*, 141 S. Ct. at 1785–86. The Final Rule's abortion-accommodation mandate (on pain of penalties) on millions of employers proves the point.

EEOC can find no shelter under the infamous *Humphrey's Executor* exception, which permits removal restrictions for those multimember bodies who—entirely unlike EEOC—"perform[] legislative and judicial functions and [are] said not to exercise any executive power." *Seila Law*, 140 at 2199.[13] EEOC's unlawful structure taints the Final Rule and requires setting aside the Final Rule. *See*

---

[13]    The same argument could be couched in terms of constitutional avoidance: Because EEOC's structure is at least arguably unconstitutional, the Court should construe EEOC's enabling statute not to contain a for-cause removal restriction in the first place. *See, e.g.*, *Calcutt v. FDIC*, 37 F.4th 293, 337–39 (6th Cir. 2022) (Murphy, J., dissenting), *rev'd on other grounds by* 598 U.S. 623 (2023) (per curiam). Either way, this constitutional defect is, in fact, a defect.

*id.* at 2196; *see also Axon Enter., Inc. v. FTC*, 598 U.S. 175, 191 (2023) (being subjected to "unconstitutionally insulated" agency decisionmaker is "here-and-now injury").

All that said, in full candor, the States acknowledge that the Fifth Circuit's recent decision in *Consumers' Research v. Consumer Product Safety Commission*, 91 F.4th 342 (5th Cir. 2024), potentially forecloses this claim. As of this filing, the Supreme Court has rescheduled consideration of the certiorari petition in that case for the Court's October 11 Conference. *See* Docket, *Consumers' Research v. Consumer Prod. Safety Comm'n*, No. 23-1323 (U.S.). For that reason, the States maintain this issue for preservation purposes.

## III.   THE DEFAULT RULE IN FAVOR OF VACATUR APPLIES HERE.

Because the Final Rule's abortion-accommodation mandate is unlawful, summary judgment for the States is warranted, and the only outstanding question is the Rule's fate. Section 706 of the APA provides that a "reviewing court shall … hold unlawful and set aside agency action" that is contrary to law. 5 U.S.C. § 706. The Fifth Circuit understands "set aside" to mean vacatur. *See, e.g., Data Mktg. P'ship v. United States Dep't of Labor*, 45 F.4th 846, 859 (5th Cir. 2022) ("The default rule is that vacatur is the appropriate remedy."); *see also United Steel v. Mine Safety & Health Admin.*, 925 F.3d 1279, 1287 (D.C. Cir. 2019) ("The ordinary practice is to vacate unlawful agency action."). Remand *without* vacatur is appropriate only if "there is at least a serious possibility that the agency will be able to substantiate its decision given an opportunity to do so." *Texas v. United States*, 50 F.4th 498, 529 (5th Cir. 2022) (quotation omitted). But the Fifth Circuit recently emphasized that remand without vacatur is inappropriate where the agency action "suffers from a fundamental substantive defect that the [agency] could not rectify on remand." *Restaurant L. Ctr. v. DOL*, 115 F.4th 396 (5th Cir. 2024).

Here, EEOC cannot fix its abortion-accommodation mandate's mangling of the statutory text. The PWFA's text simply bars any abortion-accommodation mandate. Accordingly, vacatur is warranted. Out of an abundance of caution, moreover, the States expressly request that the Court also enter a permanent injunction (mirroring the language in its preliminary injunction, PI Order at 31–

32), which, regardless of the formal existence of the Final Rule's abortion-accommodation mandate, would prevent EEOC from wielding the PWFA itself to advance the exact mandate the States are fighting in this case.

The States add only one more note regarding the nature and consequences of vacatur here: The proper form of vacatur at this final stage is both mandatory and universal (or "nationwide") in scope. Section 706 says courts "shall" set aside unlawful agency action. 5 U.S.C. § 706. And the Fifth Circuit has made clear that "the scope of ultimate relief under Section 706 . . . is not party-restricted." *Career Colleges & Schs. of Tex. v. Dep't of Educ.*, 98 F.4th 220, 255 (5th Cir. 2024). In fact, the States are unaware of any federal court of appeals or Supreme Court decision ordering vacatur of an agency action only as to a particular person or persons. That is just not how vacatur works. And that is why, for example, on appeal from summary judgment in *Restaurant Law Center*, the Fifth Circuit "VACATE[D] the Final Rule" in its entirety, rather than just as to the two organizational plaintiffs in that case. *Restaurant L. Ctr.*, 115 F.4th at 410; *see also id.* ("Mindful of the instruction provided by the APA and guided by our court's practice, we conclude that vacatur is the proper remedy."). All the same here: The Court should vacate the Final Rule's abortion-accommodation mandate without limitation.

## PRAYER FOR RELIEF

The States respectfully request that the Court grant the States' Motion for Summary Judgment, vacate the Final Rule's abortion-accommodation mandate, and enter a permanent injunction mirroring the preliminary injunction.

Dated: October 10, 2024

Respectfully submitted,

**ELIZABETH B. MURRILL**
**Attorney General of Louisiana**

  */s/ Tracy Short*
J. Benjamin Aguiñaga (*pro hac vice*)
  *Solicitor General*
Tracy Short (La #23940)
  *Assistant Chief Deputy Attorney General*
OFFICE OF THE LOUISIANA ATTORNEY
GENERAL
1885 North Third Street
Baton Rouge, LA 70802
(225) 326-6705
aguinagab@ag.louisiana.gov
shortt@ag.louisiana.gov

*Counsel for Plaintiff State of Louisiana*

**LYNN FITCH**
**Attorney General of Mississippi**

  */s/ Justin L. Matheny*
Justin L. Matheny (*pro hac vice*)
  *Deputy Solicitor General*
MISSISSIPPI ATTORNEY GENERAL'S
OFFICE
P.O. Box 220
Jackson, MS 39205
(601) 359-3680
justin.matheny@ago.ms.gov

*Counsel for Plaintiff State of
Mississippi*