IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| THE STATE OF LOUISIANA, et al.,<br><br>*Plaintiffs,*<br><br>v.<br><br>EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br>*Defendant.* | No. 2:24-cv-629-DCJ-TPL<br>Judge David C. Joseph<br>Magistrate Judge Thomas P. LeBlanc |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| UNITED STATES CONFERENCE OF CATHOLIC BISHOPS, et al.,<br><br>*Plaintiffs,*<br><br>v.<br><br>EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, et al.,<br>*Defendants.* | No. 2:24-cv-691-DCJ-TPL<br>Judge David C. Joseph<br>Magistrate Judge Thomas P. LeBlanc |

**PROPOSED BRIEF OF SENATOR BILL CASSIDY, M.D.,
AS *AMICUS CURIAE* IN SUPPORT OF PLAINTIFFS' OPPOSITION
<u>TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>**

...

## TABLE OF CONTENTS

Table of Authorities ........................................................................................................................ iii

Interest of *Amicus Curiae* ............................................................................................................. 5

Summary of Argument .................................................................................................................. 5

Argument ....................................................................................................................................... 6

    I.    Mandating Workplace Abortion Accommodations is a Major Question Requiring Clear Congressional Authorization. .......................................................... 6

    II.   Congress Withheld the Authority the EEOC Now Asserts. .................................. 10

Conclusion .................................................................................................................................. 16

# TABLE OF AUTHORITIES

**Cases**

*Ala. Ass'n of Realtors v. HHS*, 594 U.S. 758 (2021) ................................................................. 3, 9

*BST Holdings, L.L.C. v. OSHA*, 17 F.4th 604 (5th Cir. 2021) ....................................................... 6

*Cargill v. Garland*, 57 F.4th 447 (5th Cir. 2023) ........................................................................... 3

*Cyan, Inc. v. Beaver Cnty. Emps. Ret. Fund*, 583 U.S. 416 (2018) ............................................... 1

*DeJesus v. Fla. Cent. Credit Union*, No. 8:17–CV–2502, 2018 WL 4931817 (M.D. Fla. Oct. 11, 2018) ............................................................................................................................. 9

*Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215 (2022) ............................................ 5, 9, 10

*Doe v. C.A.R.S. Prot. Plus, Inc.*, 527 F.3d 358 (3d Cir. 2008) ................................................. 9, 10

*Ducharme v. Crescent City Deja Vu, L.L.C.*, 406 F. Supp. 3d 548 (E.D. La. 2019) ............... 9, 10

*FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120 (2000) ............................................. 3

*Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244 (2024) ........................................................ 10

*Louisiana v. EEOC*, 705 F. Supp. 3d 643 (W.D. La. 2024) ........................................................ 11

*Restaurant L. Ctr. v. U.S. Dep't of Labor*, 120 F.4th 163 (5th Cir. 2024) ................................... 5

*Roe v. Wade*, 410 U.S. 113 (1973) ............................................................................................... 10

*Turic v. Holland Hosp., Inc.*, 85 F.3d 1211 (6th Cir. 1996) .................................................... 9, 10

*Util. Air Regul. Grp. v. EPA*, 573 U.S. 302 (2014) ............................................................. 3, 5, 12

*VanDerStok v. Garland*, 86 F.4th 179 (5th Cir. 2023), *cert. granted*, 144 S.Ct. 1390 (mem.) (2024) ................................................................................................................................. 3, 9

*Wayman v. Southard*, 10 Wheat. 1 (1825) .................................................................................... 4

*West Virginia v. EPA*, 597 U.S. 697 (2022) ...................................................................... 3, 4, 5, 9

*Whitman v. Am. Trucking Ass'ns, Inc.*, 531 U.S. 457 (2001) .................................................... 1, 9

**Statutes**

Pregnant Workers Fairness Act, 136 Stat. 4459, 6084–89, 42 U.S.C. § 2000gg–
    2000gg-6 (2022) ................................................................................................... 1, 7, 9, 11

The Pregnancy Discrimination Act, 92 Stat. 2076, 42 U.S.C. 2000e(k) (1978) ...................... 7

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2000e-17 (1964) ................... 7, 9

**Regulations**

Implementation of the Pregnant Workers Fairness Act, 89 Fed. Reg. 29,096 (Apr.
    19, 2024) (to be codified at 29 C.F.R. pt. 1636).................................................. 2, 8, 9, 10, 11

Regulations to Implement the Pregnant Workers Fairness Act, 88 Fed. Reg. 54,714
    (proposed Aug. 11, 2023) (to be codified at 29 C.F.R. pt. 1636). ................................. 10, 11

**Other Authorities**

168 Cong. Rec. S7049 (daily ed. Dec. 9, 2022) (statement of Sen. Tillis) ............................... 6

168 Cong. Rec. S7050 (daily ed. Dec. 8, 2022) (statement of Sen. Casey) ......................... 7, 9

168 Cong. Rec. S7050 (daily ed. Dec. 8, 2022)
    (statement of Sen. Cassidy)................................................................................... 2, 6, 9, 11

Br. *Amici Curiae* of 121 Members of Congress, *Moyle v. United States*,
    144 S. Ct. 2015 (2024) (Nos. 23-726, 23-727) ......................................................................... 5

*Condition*, Cambridge Dictionary,
    https://dictionary.cambridge.org/us/dictionary/english/condition (last visited
    Nov. 5, 2024) ........................................................................................................................ 7

Letter from U.S. Conference of Catholic Bishops to Members of Congress (Aug. 9,
    2021), https://www.usccb.org/resources/PWFA_letter.pdf................................................. 2

Senator Bill Cassidy, Comment Letter on Proposed Regulations to Implement the
    Pregnant Workers Fairness Act (Sept. 29, 2023),
    https://www.help.senate.gov/imo/media/
    doc/pwfa_comment_letter.pdf ............................................................................................ 8

The Federalist No. 52 (J. Madison) ........................................................................................... 4

## INTEREST OF *AMICUS CURIAE*[1]

*Amicus Curiae* U.S. Senator Bill Cassidy, M.D., was an original co-sponsor of the Pregnant Workers Fairness Act ("PWFA")[2] and serves as Ranking Member on the Health, Education, Labor, and Pensions Committee ("HELP"), which was primarily responsible for developing the PWFA in the Senate. As the lead Republican Senate sponsor for the PWFA, Senator Cassidy has a strong interest in ensuring that the PWFA is implemented in accordance with Congress's goals and that unelected agency officials do not subvert the legislative process for their own policy goals. In this matter, Senator Cassidy is gravely concerned by the Equal Employment Opportunity Commission's ("EEOC") decision to inject controversial abortion politics into the implementation of the PWFA rather than implementing the Act consistently with Congress's bipartisan and unambiguous goal of providing reasonable workplace accommodations to pregnant and postpartum workers.

## SUMMARY OF ARGUMENT

"Congress does not 'hide elephants in mouseholes.'" *Cyan, Inc. v. Beaver Cnty. Emps. Ret. Fund*, 583 U.S. 416, 431 (2018) (quoting *Whitman v. Am. Trucking Ass'ns, Inc.*, 531 U.S. 457, 468 (2001)). The bipartisan PWFA was designed to accomplish a simple, uncontroversial goal: ensuring that pregnant and postpartum women receive the

---

[1] No counsel for a party authored this brief in whole or in part, and no person other than amicus and his counsel made any monetary contribution intended to fund the preparation or submission of this brief.

[2] 136 Stat. 4459, 6084–89, 42 U.S.C. § 2000gg–2000gg-6 (2022).

5

accommodations they need at work. It was *not* designed to take sides in controversial abortion policy debates. But that is exactly what the EEOC's Final Rule[3] did. Flouting the law Congress passed, the EEOC transformed the PWFA into a draconian national abortion-accommodations mandate that tramples the conscience rights of those who object to abortion, including some of the very faith-based organizations that supported the PWFA in the first place.[4] The Constitution reserves to *Congress*—not unelected bureaucrats—the authority to decide such major questions of national policy, and for good reason. Senator Cassidy urges the Court to reject the EEOC's overreach and rule in favor of the Plaintiffs.

## ARGUMENT

### I. Mandating Workplace Abortion Accommodations is a Major Question Requiring Clear Congressional Authorization.

Mandating abortion accommodations in workplaces across the nation, including in religious organizations who conscientiously object to abortion, implicates exactly the sort of major question that requires clear Congressional authorization to regulate. The "'solemn responsibility'" of "'determin[ing] our nation's public policy'" is a "heavy burden" that "falls squarely on Congress." *VanDerStok v. Garland*, 86 F.4th 179, 195 (5th

---

[3] Implementation of the Pregnant Workers Fairness Act, 89 Fed. Reg. 29,096 (Apr. 19, 2024) (to be codified at 29 C.F.R. pt. 1636).

[4] *See, e.g.*, 168 Cong. Rec. S7050 (daily ed. Dec. 8, 2022) (statement of Sen. Cassidy) (noting that the U.S. Conference of Catholic Bishops, the lead plaintiff in this case, endorsed the PWFA); Letter from U.S. Conference of Catholic Bishops to Members of Congress (Aug. 9, 2021), https://www.usccb.org/resources/PWFA_letter.pdf.

Cir. 2023), *cert. granted*, 144 S.Ct. 1390 (mem.) (2024), (quoting *Cargill v. Garland*, 57 F.4th 447, 472 (5th Cir. 2023)). Accordingly, courts "expect Congress to speak clearly if it wishes to assign to an agency decisions of vast 'economic and political significance.'" *Util. Air Regul. Grp. v. EPA*, 573 U.S. 302, 324 (2014) (quoting *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 160 (2000)); *Ala. Ass'n of Realtors v. HHS*, 594 U.S. 758, 764 (2021). As Justice Gorsuch explained:

> [T]his Court has indicated that the doctrine applies when an agency claims the power to resolve a matter of great "political significance," *NFIB* v. *OSHA*, 595 U. S., at ——, 142 S.Ct., at 665 (internal quotation marks omitted), or end an "earnest and profound debate across the country," *Gonzales*, 546 U.S. at 267–268, 126 S.Ct. 904 (internal quotation marks omitted); see *ante*, at ——. So, for example, in *Gonzales*, the Court found that the doctrine applied when the Attorney General issued a regulation that would have effectively banned most forms of physician-assisted suicide even as certain States were considering whether to permit the practice. 546 U.S. at 267, 126 S.Ct. 904. And in *NFIB* v. *OSHA*, the Court held the doctrine applied when an agency sought to mandate COVID–19 vaccines nationwide for most workers at a time when Congress and state legislatures were engaged in robust debates over vaccine mandates. 595 U. S., at ——, 142 S.Ct., at 664–665; *id.*, at ——, 142 S.Ct., at 667–668 (GORSUCH, J., concurring). Relatedly, this Court has found it telling when Congress has "'considered and rejected'" bills authorizing something akin to the agency's proposed course of action. Ante, at ——, —— (quoting Brown & Williamson, 529 U.S. at 144, 120 S.Ct. 1291). That too may be a sign that an agency is attempting to "'work [a]round'" the legislative process to resolve for itself a question of great political significance. NFIB v. OSHA, 595 U. S., at ——, 142 S.Ct., at 668 (GORSUCH, J., concurring).

*West Virginia v. EPA*, 597 U.S. 697, 743 (2022) (Gorsuch, J., concurring). Here, in the PWFA, Congress did *not* address abortion policy. In fact, Congress explicitly refrained from doing so. But the EEOC contorted the PWFA into a radical revision of national policy on one of the most contentious issues in America today.

Requiring a clear statement from Congress before an agency may assert sweeping authority to settle such major political questions supports a reliable legislative process—to do otherwise would undermine Congress's role as the only federal legislative authority. The Constitution's vesting of federal legislative power in Congress ensures "that those who make our laws would better reflect the diversity of the people they represent and have an 'immediate dependence on, and an intimate sympathy with, the people.'" *Id.* at 737 (Gorsuch, J., concurring) (quoting The Federalist No. 52, at 327 (J. Madison)). Requiring the consensus of competing interests to legislate is integral to protecting individual liberty from the grave threat of unchecked regulatory power. *Id.* at 738 ("By effectively requiring a broad consensus to pass legislation, the Constitution sought to ensure that any new laws would enjoy wide social acceptance, profit from input by an array of different perspectives during their consideration, and thanks to all this prove stable over time."). The major questions doctrine operates "to protect the Constitution's separation of powers" by ensuring that "'important subjects . . . must be entirely regulated by the legislature itself,' even if Congress may leave the Executive 'to act under such general provisions to fill up the details.'" *Id.* at 737 (quoting *Wayman v. Southard*, 10 Wheat. 1, 42–43 (1825)). This "core administrative-law principle that an agency may not rewrite clear statutory terms to suit its own sense of how the statute should operate," ensures that laws are given the effect that Congress intends. *Util. Air Regul. Grp.*, 573 U.S. at 328; *Restaurant L. Ctr. v. U.S. Dep't of Labor*, 120 F.4th 163, 174 (5th Cir. 2024). This is critical to the business of legislating, because the diverse members of

8

Congress cannot strike bipartisan compromises if they cannot rely on the law meaning what they write it to mean.

The question of abortion policy has been a major, controversial political question for over fifty years, and it only increased in political intensity when the Supreme Court's decision in *Dobbs v. Jackson Women's Health Organization*, 597 U.S. 215 (2022), returned abortion policy to the authority of state legislatures. *See Dobbs*, 597 U.S. at 229 ("[*Roe v. Wade*, 410 U.S. 113 (1973)] sparked a national controversy that has embittered our political culture for a half century."). After *Dobbs*, the Biden-Harris administration embarked on a broad effort to wrongfully reinterpret federal laws that have nothing to do with abortion to effectively create a federal abortion right. *See* Br. *Amici Curiae* of 121 Members of Congress at 31–36, *Moyle v. United States*, 144 S. Ct. 2015 (2024) (Nos. 23-726, 23-727) (summarizing post-*Dobbs* executive actions).[5] The EEOC's abortion-accommodations mandate cannot be removed from this context, which counsels a court to greet the EEOC's assertion of "'extravagant statutory power' . . . with 'skepticism.'" *See West Virginia*, 597 U.S. at 724 (quoting *Utility Air Regul. Grp.*, 573 U.S. at 324). "[N]o matter how thin patience wears," the executive cannot assign itself the power to "definitively resolve one of today's most hotly debated political issues" where Congress has not clearly spoken. *BST Holdings, L.L.C. v. OSHA*, 17 F.4th 604, 617–18 (5th Cir. 2021).

---

[5] Available at https://www.cassidy.senate.gov/wp-content/uploads/2024/02/IdahoSCOTUSAmicusBrief.pdf.

9

## II. Congress Withheld the Authority the EEOC Now Asserts.

Congress did not simply omit clear authorization to the EEOC to mandate abortion accommodations, it *intentionally* withheld that authority. The specific question of whether the PWFA authorized the EEOC to mandate abortion accommodations arose during the Senate debate when a senator questioned whether the PWFA would permit the EEOC to force abortion accommodations nationwide, particularly on pro-life organizations such as churches and religious organizations. 168 Cong. Rec. S7049 (daily ed. Dec. 9, 2022) (statement of Sen. Tillis). Both the Democrat and Republican leading co-sponsors answered that question in the emphatic negative. *See* 168 Cong. Rec. S7049–50. Senator Cassidy (the leading Republican co-sponsor) stated specifically, "I reject the characterization that this would do anything to promote abortion." 168 Cong. Rec. S7050 (daily ed. Dec. 8, 2022) (statement of Sen. Cassidy) (hereinafter "Cassidy Statement"). Rather, the intention of this bill "is to make an accommodation for that woman who has those needs [for an accommodation] so she can safely carry the baby to term." *Id.* Senator Bob Casey, the leading Democrat co-sponsor, reiterated this unified understanding of the PWFA's operation:

> I want to say for the record, however, that under the act, under the Pregnant Workers Fairness Act, the . . . EEOC, could not—could not—issue any regulation that requires abortion leave, nor does the act permit the EEOC to require employers to provide abortions in violation of State law.

168 Cong. Rec. S7050 (daily ed. Dec. 8, 2022) (statement of Sen. Casey) (hereinafter "Casey Statement").

10

In addition to the clear, bipartisan intent that abortion not be read into the PWFA, the text and structure of the PWFA make clear that the law has nothing to do with abortion. In fact, while the PWFA cross-references Title VII of the Civil Rights Act of 1964 eleven times, Congress deliberately did *not* cross-reference those provisions of the Pregnancy Discrimination Act of 1978 that related to "pregnancy, childbirth, or related medical conditions," evincing no intent that those provisions of the PWFA be interpreted in the same way. *See* 136 Stat. 4459, 6084–89 (2022); *compare* 42 U.S.C. §§ 2000gg(2)(A), (2)(B)(i), (2)(B)(iv), (3)(A), (3)(E), (5); 2000gg-3(a)(1), (e), (e)(1), 2000gg-6(b) *with id.* § 2000gg(4).

Moreover, the plain wording of the statute makes clear that the Act does not include abortion. Obtaining an elective abortion through a surgical procedure or chemical abortion pills intentionally ends the life of an unborn child and does not constitute a "medical condition."[6] A procedure or medication is distinct from the underlying condition it aims to treat—heart surgery and statins are not synonymous with a heart condition.[7] Likewise, an abortion is not a pregnancy-related medical condition, but rather an action that a woman chooses to take in response to a pregnancy.[8] The EEOC has tried

---

[6] *See, e.g.*, *Condition*, Cambridge Dictionary, https://dictionary.cambridge.org/us/dictionary/english/condition (last visited Nov. 5, 2024) (defining "condition" as "the particular state that something or someone is in," and "any of different types of diseases").

[7] *See* Senator Bill Cassidy, Comment Letter on Proposed Regulations to Implement the Pregnant Workers Fairness Act (Sept. 29, 2023), https://www.help.senate.gov/imo/media/doc/pwfa_comment_letter.pdf

[8] *See id.*

11

to shoehorn abortion into the definition of "medical conditions" that are related to pregnancy or childbirth, but it does not fit.

Specifically, the EEOC's definition of "related medical conditions" includes "termination of pregnancy, including via miscarriage, stillbirth, or abortion." 89 Fed. Reg. 29,183. Miscarriage and stillbirth are tragic, involuntary, pregnancy-related conditions that many women unfortunately face. Elective abortion is categorically different and does not meet this definition of "condition."[9] Indeed, in a list of conditions that the EEOC provides in its preamble and interpretive guidance appendix, abortion is the only one preceded by "having or choosing not to have," *see* 89 Fed. Reg. 29,101, 29,191, reinforcing that elective abortion should not be treated like gestational diabetes, preeclampsia, endometriosis, incontinence, morning sickness, or other medical conditions that inherently arise from pregnancy or childbirth. The EEOC's tortured interpretation exacerbates the ongoing obfuscation and fearmongering about pregnancy complications in the public debate about abortion. As a medical professional, Senator Cassidy is particularly cognizant of the importance of not conflating these issues. As written, the PWFA is about promoting and protecting healthy pregnancies—not about promoting abortion. Such an interpretation is entirely inconsistent with Congress' intent. *See* Cassidy Statement; Casey Statement.

---

[9] *See id.*

"Extraordinary grants of regulatory authority are rarely accomplished through 'modest words,' 'vague terms,' or 'subtle device[s],'" *West Virginia*, 142 S. Ct. at 723 (quoting *Whitman*, 531 U.S. at 468), and agencies "cannot step into Congress's shoes and rewrite its words." *VanDerStok*, 86 F.4th at 195. Instead of heeding Congress's words, the EEOC "decided to do what Congress had not." *Ala. Ass'n of Realtors*, 594 U.S. at 760. The EEOC included abortion in the definition of "pregnancy, childbirth, or related medical conditions," 42 U.S.C. § 2000gg(4), on the basis that three courts interpreted the Civil Rights Act to include abortion, all in decisions that predate the Supreme Court's ruling in *Dobbs*, 597 U.S. 215 (2022).[10] *See* Regulations to Implement the Pregnant Workers Fairness Act, 88 Fed. Reg. 54,714, 54,721 (proposed Aug. 11, 2023) (to be codified at 29 C.F.R. pt. 1636) (citing *Turic v. Holland Hosp., Inc.*, 85 F.3d 1211, 1214 (6th Cir. 1996); *Doe v. C.A.R.S. Prot. Plus, Inc.*, 527 F.3d 358, 364 (3d Cir. 2008); *Ducharme v. Crescent City Deja Vu, L.L.C.*, 406 F. Supp. 3d 548, 556 (E.D. La. 2019); 89 Fed. Reg. 29,110 (discussing cases). In each case, these courts were interpreting another statute, and thus their decisions are of limited—if any—relevance. Three decisions interpreting another statute do not compel the EEOC to include abortion in its enacting regulations for the PWFA, and the EEOC's regulations are not entitled to any deference on what the PWFA means. *See Loper Bright Enters. v. Raimondo,* 144 S. Ct. 2244, 2273 (2024). Moreover, the earliest decision cited by

---

[10] The EEOC also cites an unpublished, pre-*Dobbs* Title VII case in which the defendant did not contest at the motion to dismiss stage that Title VII encompassed abortion. 89 Fed. Reg. 29,105, 29,110 (citing *DeJesus v. Fla. Cent. Credit Union*, No. 8:17–CV–2502, 2018 WL 4931817, at *3 (M.D. Fla. Oct. 11, 2018)).

the EEOC, and which is cited by the other two decisions, relies on the "right to have an abortion" established by *Roe v. Wade*. *See Turic*, 85 F.3d at 1214; *Doe*, 527 F.3d at 363 (citing *Turic*); *Ducharme*, 406 F. Supp. 3d at 555 (same). Since these court decisions were issued, however, the Supreme Court has reversed *Roe v. Wade*, 410 U.S. 113 (1973), stating that "the Constitution does not confer a right to abortion." *See Dobbs*, 142 S. Ct. at 2279.

While the EEOC imported language into the PWFA that Congress omitted, the EEOC also nullified language Congress included: Title VII's religious exemption. The PWFA operates against the backdrop of Title VII's religious exemption, as Senator Cassidy emphasized in addressing his colleague's concerns about the impact of the PWFA on religious organizations:

> Is it possible that this law would permit someone to impose their will upon a pastor, upon a church, upon a synagogue, if they have religious exemptions? The answer is absolutely no. . . . The [T]itle VII exemption, which is in Federal law, remains in place. It allows employers to make employment decisions based on firmly held religious beliefs. This bill does not change this.

Cassidy Statement. Congress intended to ensure that religious employers, many of whom supported the PWFA,[11] are not required to provide accommodations that are directly contradictory to their religious principles by explicitly cross-referencing Title VII's religious exemption. 42 U.S.C. § 2000gg-5(b). But the EEOC unlawfully limited the scope of the religious exemption, "contend[ing] that the PWFA exemption protects religious entities from claims of religious discrimination only." *Louisiana v. EEOC*, 705 F. Supp. 3d

---

[11] *See supra* n. 4.

14

643, 662 (W.D. La. 2024) (citing 89 Fed. Reg. at 29,146). The EEOC's justification for limiting the religious exemption[12] creates a false choice: there is no trade-off between protecting both a religious employer's right to make an employment decision based on religious beliefs and a religious employer's right to be free from making accommodations that are inconsistent with their religious beliefs. The EEOC's decision to create an abortion-accommodation mandate while minimizing the applicable religious exemption completely rewrites the PWFA to force a controversial political policy upon those who deeply and morally disagree with abortion. This is neither what Congress intended nor what Congress passed.

* * *

The intent and text of the PWFA are clear: to ensure healthy pregnancies by supporting women with pregnancy-related medical conditions both during and after their pregnancy. The EEOC ignored the statute and substituted its views on abortion for those of Congress, injecting abortion politics into a law designed to help mothers healthily carry their child to term. Allowing the EEOC to regulatorily reinterpret a law that ensures a safe workplace for pregnant mothers and their unborn children into a sweeping instrument of abortion policy undermines Congress's ability to legislate in a bipartisan fashion. The EEOC's Final Rule renders the PWFA "unrecognizable to the

---

[12] *See* 88 Fed. Reg. 54746; 89 Fed. Reg. 29,148–51

Congress that passed it," see *Util. Air Regul. Grp.*, 573 U.S. at 324, and should be invalidated.

## CONCLUSION

For the foregoing reasons, Senator Cassidy urges the court to deny the Defendant's motion for summary judgment.

Dated: November 19, 2024                                                          Respectfully submitted,

| | |
|---|---|
| Justin E. Butterfield* | /s/ Thomas M. Flanagan |
| Lea E. Patterson* | Thomas M. Flanagan (La. Bar No. 19569) |
| Butterfield & Patterson, PLLC | Harold J. Flanagan (La. Bar No. 24091) |
| P.O. Box 941681 | Flanagan Partners LLP |
| Plano, Texas 75094 | 201 St. Charles Ave., Ste. 3300 |
| Telephone: (945) 284-0700 | New Orleans, Louisiana 70170 |
| justin@butterfieldpatterson.com | Telephone: (504) 569-0235 |
| lea@butterfieldpatterson.com | tflanagan@flanaganpartners.com |
| | hflanagan@flanaganpartners.com |

*Counsel for Amicus Curiae*
*Pro hac vice applications forthcoming

16