# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### LAKE CHARLES DIVISION

| | |
|---|---|
| **THE STATE OF LOUISIANA, ET AL** | **CIVIL DOCKET NO. 2:24-cv-00629** |
| **VERSUS** | **JUDGE DAVID C. JOSEPH** |
| **EQUAL EMPLOYMENT OPPORTUNITY COMMISSION** | **MAGISTRATE JUDGE THOMAS P. LEBLANC** |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| **UNITED STATES CONFERENCE OF CATHOLIC BISHOPS, ET AL** | **CIVIL DOCKET NO. 2:24-cv-00691** |
| **VERSUS** | **JUDGE DAVID C. JOSEPH** |
| **EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, ET AL** | **MAGISTRATE JUDGE THOMAS P. LEBLANC** |

## <u>MEMORANDUM ORDER</u>

Before the Court are cross-motions for summary judgment in the above-captioned cases in which the respective plaintiffs seek partial vacatur of the EEOC's Final Rule implementing the Pregnant Worker Fairness Act ("PWFA"), 42 U.S.C. § 2000gg, *et seq.* Among other issues, the Plaintiff States of Mississippi and Louisiana, as well as four organizations affiliated with the Roman Catholic Church, posit that an "abortion accommodation mandate" included in the Final Rule was not authorized by Congress. For the reasons discussed below, the record before the Court clearly establishes that the EEOC has exceeded its statutory authority to implement the PWFA and, in doing so, both unlawfully expropriated the authority of Congress and

encroached upon the sovereignty of the Plaintiff States under basic principles of federalism. 42 U.S.C. § 2000gg, *et seq.* For the reasons discussed below, the Court vacates the "abortion accommodation mandate" as described herein and remands this matter to the EEOC to revise the Final Rule and all related Implementing Regulations and Guidance in accordance with this Order.

The issues before the Court are raised in four cross-motions for summary judgment in the above-captioned consolidated matters. In the matter entitled *State of Louisiana, et al v. EEOC*, No. 2:24-cv-00629-DCJ-TPL (the *"States* Lawsuit"), there is (i) a MOTION TO DISMISS, OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT [Doc. 68] filed by Defendant Equal Employment Opportunity Commission ("EEOC"); and (ii) a MOTION FOR SUMMARY JUDGMENT [Doc. 70] filed by the Plaintiff States of Louisiana and Mississippi (the "*States* Plaintiffs"). In the matter entitled *United States Conference of Catholic Bishops, et al v. EEOC, et al*, No. 2:24-cv-00691-DCJ-TPL (the "*Bishops*" Lawsuit), there is (i) a MOTION TO DISMISS, OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT [Doc. 75] filed by the EEOC; and (ii) a MOTION FOR PARTIAL SUMMARY JUDGMENT AND PERMANENT INJUNCTION [Doc. 77] filed by the four entities affiliated with the Roman Catholic Church[1] (the "*Bishops* Plaintiffs") (collectively, the

---

[1]     The Plaintiff entities in the *Bishops* lawsuit are the United States Conference of Catholic Bishops ("USCCB"), Society of the Roman Catholic Church of the Diocese of Lake Charles ("Diocese of Lake Charles"), Society of the Roman Catholic Church of the Diocese of Lafayette ("Diocese of Lafayette"), and Catholic University of America ("Catholic University") (collectively, the "*Bishops* Plaintiffs").

The defendants in the *Bishops* lawsuit are EEOC and Charlotte Burrows, Chair of the EEOC, sued in her official capacity only. Ms. Burrows was dismissed by President Trump on January 27, 2025, after the preliminary injunction was filed, and was replaced by Acting

"Motions").[2]  Invoking this Court's authority under Sections 706(2)(A)(B)&(C) of the Administrative Procedure Act, 5 U.S.C. §706, the Motions filed by the *States* and *Bishops* Plaintiffs seek vacatur of the abortion accommodation mandate of the *Implementation of the Pregnant Workers Fairness Act*, 29 C.F.R. § 1636, *et seq.* (hereinafter, the "Final Rule"),[3] which implements and interprets the PWFA.[4]  The Plaintiffs also seek conversion of the Court's June 17, 2024, preliminary injunction ("PI") into a permanent injunction prohibiting the EEOC from enforcing the Final Rule against them in such a manner as would require Plaintiffs to provide

Chair Andrea R. Lucas.  In addition to Ms. Lucas, the EEOC is currently staffed by Commissioner Kalpana Kotagal.

[2]     In response to the *States* Plaintiffs' Motion [Doc. 70, *States* Lawsuit], EEOC filed a response [Doc. 75, *States* Lawsuit], and the *States* Plaintiffs filed a reply brief [Doc. 88, *States* Lawsuit].  In response to the EEOC's Motion [Doc. 68, *States* Lawsuit], the *States* Plaintiffs filed a response [Doc. 76, *States* Lawsuit], and the EEOC filed a reply brief [Doc. 87, *States* Lawsuit].

In response to the *Bishops* Plaintiffs' Motion [Doc. 77, *Bishops* Lawsuit], the EEOC filed a response [Doc. 81, *Bishops* Lawsuit], and the *Bishops* Plaintiffs filed a reply brief [Doc. 90, *Bishops* Lawsuit].  In response to the EEOC's Motion [Doc. 75, *Bishops* Lawsuit], the *Bishops* Plaintiffs filed a response [Doc. 83, *Bishops* Lawsuit], and the EEOC filed a reply brief [Doc. 89, *Bishops* Lawsuit].  Additionally, the *Bishops* Plaintiffs subsequently filed several Notices of Supplemental Authority in Support of their Motion for Partial Summary Judgment and Permanent Injunction.

[3]     The regulations in the Final Rule were codified at 29 C.F.R. § 1636, *et seq.*  Appendix A to Part 1636, designated as "Interpretive Guidance on the Pregnant Workers Fairness Act," contains information concerning how the EEOC interprets the standards set forth in the Final Rule.  89 Fed. Reg. 209,096, *et seq.* (April 19, 2024) is the Federal Register's publication of the Final Rule and the Interpretive Guidance.  For purposes of this Ruling, the Court refers to the regulations as codified in the C.F.R. and the Interpretive Guidance at their citations in the Federal Register.

[4]     The *Bishops* Plaintiffs also argue that the "Final Rule and EEOC's interpretation" therein of Title VII, 42 U.S.C. § 2000e, *et seq.* also exceed the statutory authority granted under Title VII "because, like the PWFA, Title VII does not cover abortion."  [Doc. 1, *Bishops* Lawsuit, ¶ 150].

accommodation for the elective abortions of employees that are not necessary to treat a medical condition related to pregnancy.[5] The EEOC's motions seek dismissal of the Plaintiffs' claims in both cases.

### Factual Background and Procedural History

The facts of this case are not disputed. In December 2022, the PWFA was passed into law as part of the year-end consolidated appropriations package. *See* Consolidated Appropriations Act, 2023, div. II, Pub. L. 117-328 (2022), 136 Stat. at 6084; 42 U.S.C. §§ 2000gg – 2000gg-6. Aimed at addressing gaps in existing legislation regarding protections for pregnant workers, the PWFA adopts an accommodation regime similar to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, for pregnant workers and adopts the powers, remedies, and procedures of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-4 *et seq.*, as enforcement measures.

Principally, the PWFA requires employers to "make reasonable accommodations to the known limitations related to the pregnancy, childbirth, or related medical conditions of a qualified employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 2000gg-1(1). The PWFA defines "known limitation" as a "physical or mental condition related to, affected by, or arising out of pregnancy, childbirth, or related medical conditions." *Id.* § 2000gg(4).

---

[5]     Specifically, the *States* Plaintiffs seek summary judgment on Counts I-IV in their Complaint, and the *Bishops* Plaintiffs seek summary judgment on Counts I, III, V-VII, and IX-X in their Complaint.

In effect, the PWFA prohibits employers from denying employment opportunities due to a covered employee's need for a reasonable accommodation or retaliating against an employee for requesting or using a reasonable accommodation. 42 U.S.C. §§ 2000gg-1(3), (5).  Nor can an employer "require a qualified employee to take leave, whether paid or unpaid, if another reasonable accommodation can be provided to the known limitation."  42 U.S.C. § 2000gg-1(4).  The PWFA adopts the ADA's definitions for "reasonable accommodation" and "undue hardship," as well as the ADA's "interactive process" for determining a proper accommodation.  42 U.S.C. § 2000gg(7).  It also specifically provides that employers cannot "require a qualified employee ... to accept an accommodation other than any reasonable accommodation arrived at through the interactive process."  42 U.S.C. § 2000gg-1(2).  The PWFA's requirements apply to any private employer with 15 or more employees as well as government employers, including the States of Louisiana and Mississippi ("covered entities").  42 U.S.C. § 2000gg.  The PWFA allows private action after administrative remedies are exhausted, and the EEOC has investigative and enforcement powers under the PWFA as it does under Title VII.  42 U.S.C. § 2000gg-2.  Finally, pursuant to Section 5 of the Fourteenth Amendment, the PWFA also specifically waives the Eleventh Amendment immunity of state employers for covered employment-related actions.  42 U.S.C. § 2000gg-4.

As part of the Act, Congress tasked the EEOC with issuing regulations to carry out the PWFA and directed that such regulations "shall provide examples of reasonable accommodations addressing known limitations related to pregnancy,

childbirth, or related medical conditions." 42 U.S.C. § 2000gg-3. On August 11, 2023, the EEOC proposed a rule that would require covered employers – including States – to accommodate, among other things, elective abortions. 88 Fed. Reg. 54,714 (Aug. 11, 2023) (Proposed Rule). Specifically, the EEOC stated in the proposed rule that "having ... an abortion" constitutes an "example[] of pregnancy, childbirth, or related medical condition[]" and that employers are therefore required to provide employees with reasonable accommodations for abortions under the PWFA (the "abortion accommodation mandate"). *Id.* Despite widespread opposition,[6] on April 19, 2024, the EEOC included the contested language in the Final Rule, which defines "related medical conditions" as "medical conditions relating to ... pregnancy or childbirth," and provides examples including "termination of pregnancy, including via miscarriage, stillbirth, or abortion." 29 C.F.R. § 1636.3(b).[7] By inserting the definition of "related

---

[6]     Specifically, more than 54,000 individuals and organizations submitted comments opposing the Proposed Rule's abortion accommodation mandate, including Plaintiffs Louisiana, Mississippi, USCCB, and Catholic University.

[7]     29 C.F.R. 1636.3(b) defines "related medical conditions" as follows:

> (b) ***Pregnancy, childbirth, or related medical conditions.*** "Pregnancy" and "childbirth" refer to the pregnancy or childbirth of the specific employee in question and include, but are not limited to, current pregnancy; past pregnancy; potential or intended pregnancy (which can include infertility, fertility treatment, and the use of contraception); labor; and childbirth (including vaginal and cesarean delivery). "Related medical conditions" are medical conditions relating to the pregnancy or childbirth of the specific employee in question. The following are examples of conditions that are, or may be, "related medical conditions": ***termination of pregnancy, including via miscarriage, stillbirth, or abortion***; ectopic pregnancy; preterm labor; pelvic prolapse; nerve injuries; cesarean or perineal wound infection; maternal cardiometabolic disease; gestational diabetes; preeclampsia; HELLP (hemolysis, elevated liver enzymes and low platelets) syndrome; hyperemesis gravidarum; anemia; endometriosis; sciatica; lumbar lordosis; carpal tunnel syndrome; chronic migraines;

medical conditions" from the Final Rule into the PWFA, the EEOC has taken the position that the PWFA requires covered entities to make reasonable accommodations to employees who receive an abortion and prohibits covered entities from taking adverse employment actions against employees who request or use accommodations in relation to receiving an abortion, unless the covered entity is entitled to an exemption or defense.

The *Bishops Plaintiffs* also contend that, while the PWFA incorporates the religious employer exemption from Title VII, *see* 29 C.F.R. § 1636.7(b), the Final Rule declines to adopt a blanket exemption for religious employers.[8]   Instead, the

---

> dehydration; hemorrhoids; nausea or vomiting; edema of the legs, ankles, feet, or fingers; high blood pressure; infection; antenatal (during pregnancy) anxiety, depression, or psychosis; postpartum depression, anxiety, or psychosis; frequent urination; incontinence; loss of balance; vision changes; varicose veins; changes in hormone levels; vaginal bleeding; menstruation; and lactation and conditions related to lactation, such as low milk supply, engorgement, plugged ducts, mastitis, or fungal infections. This list is non-exhaustive.

29 C.F.R. § 1636.3(b) (emphasis added).  Furthermore, the Interpretive Guidance provides the following guidance:

> 18. There are some medical conditions where the relation to pregnancy will be readily apparent. They can include, but are not limited to, lactation (including breastfeeding and pumping), miscarriage, stillbirth, ***having or choosing not to have an abortion***, preeclampsia, gestational diabetes, and HELLP (hemolysis, elevated liver enzymes and low platelets) syndrome.

89 Fed. Reg. 29,191 (emphasis added).

[8]    29 C.F.R. 1636.7(b) provides:

> (b) **Rule of construction.** The PWFA and this part are subject to the applicability to religious employment set forth in section 702(a) of the Civil Rights Act of 1964, 42 U.S.C. 2000e–1(a).

Interpretive Guidance to the Final Rule explains that the merits of an employer's defense that it took a proscribed action on the basis of religion will be determined on a "case-by-case" basis during the investigative phase.  89 Fed. Reg. 29,146-47.  The Interpretive Guidance further explains that the EEOC does not have authority to "provide legally binding responses to employer inquiries about the potential applicability of religious or other defenses before" an individual files a charge of discrimination against a covered entity.  *Id.* at 29, 147.  Therefore, the Bishops Plaintiffs highlight that the determination of whether an employer has a valid religious exemption cannot occur until after an individual files a charge of discrimination and an EEOC investigation commences.

On May 13, 2024, the *States* Plaintiffs filed the instant lawsuit against the EEOC, asserting that the abortion accommodation mandate of the Final Rule violates the Administrative Procedure Act ("APA") and the Constitution.  [Doc. 1, ¶ 82].  In a Motion for Preliminary Injunction filed on June 3, 2024 [Doc. 17], the *States* Plaintiffs challenged the Final Rule with respect to any duty "to accommodate purely elective abortions,[9] including those that would be prohibited by [that] State's law" in light of

---

(1) Nothing in 42 U.S.C. 2000gg–5(b) or this part should be interpreted to limit a covered entity's rights under the U.S. Constitution.

(2) Nothing in 42 U.S.C. 2000gg–5(b) or this part should be interpreted to limit an employee's rights under other civil rights statutes.

29 C.F.R. § 1636.7(b).

[9]     The *States* Plaintiffs define "purely elective abortions" as "medically unnecessary abortions in violation of Louisiana and Mississippi law."  [Doc. 17-1, p. 15].

state legislation that restricts and limits abortion following the Supreme Court's decision in *Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215, 142 S. Ct. 2228, 213 L.Ed.2d 545 (2022).[10]

On May 22, 2024, the *Bishops* Plaintiffs filed their Complaint [Doc. 1], along with a Motion for Preliminary Injunction [Doc. 11]. In addition to alleging that the Final Rule exceeds congressional authority in the same manner urged by the States, the *Bishops* Plaintiffs further contend that the Final Rule requires them to knowingly

---

[10]     Louisiana prohibits all abortions except those that are determined to be medically necessary to prevent the death or substantial risk of death of the mother. *See* La. R.S. § 40:1061, La. R.S. § 14:87.7, and La. R.S. § 14:87.8.1. The Louisiana Legislature has expressly set forth the State's policy with respect to abortion:

> § 1061.1. Legislative intent; construction of abortion provisions law regulating abortion:
>
> A.(1) It is the intention of the Legislature of Louisiana to regulate, prohibit, or restrict abortion to the fullest extent permitted by the decisions of the Supreme Court of the United States. The legislature does solemnly declare, find, and reaffirm the longstanding public policy of this state that every unborn child is a human being from the moment of conception and is, therefore, a legal person for purposes under the laws of this state and Constitution of Louisiana.
>
> (2) The legislature further finds and declares that the longstanding policy of this state to protect the right to life of every unborn child from conception by prohibiting abortion is impermissible only because of the decisions of the Supreme Court of the United States and that, therefore, if those decisions of the Supreme Court of the United States are ever reversed or modified or the United States Constitution is amended to allow protection of the unborn then the public policy of this state to prohibit abortions shall be enforced.

La. R.S. § 40:1061.1.

Mississippi prohibits all abortions except those that are "necessary for the preservation of the mother's life" or "where the pregnancy was caused by rape." *See* Miss. Code Ann. § 41-41-45; Miss. Code Ann. § 97-3-3.

accommodate employees when they obtain abortions, even where such accommodations are contrary to their sincerely held religious beliefs; prohibits the *Bishops* Plaintiffs from taking adverse actions against employees or faculty that advocate for abortion accommodation, even where such actions are required by the *Bishops* Plaintiffs beliefs; and requires the *Bishops* Plaintiffs to change their religious speech and messaging concerning abortion in ways that support abortion. *Id.*

On June 5, 2024, the Court consolidated the *States* and *Bishops* cases pursuant to FRCP 42(a)(2) for purposes of hearing and adjudicating the preliminary injunction motions, and thereafter, jointly conducting pretrial discovery and motions practice. [Doc. 18, *States* Lawsuit]; [Doc. 28, *Bishops* Lawsuit]. On June 17, 2024, after oral argument and the filing of post-hearing memoranda, the Court granted in part the Motions for Preliminary Injunction filed by the *States* and *Bishops* Plaintiffs (the "PI Ruling"). [Doc. 47, *States* Lawsuit]; [Doc. 53, *Bishops* Lawsuit].

The Court's PI Ruling provides a blueprint of the Court's reasoning and analysis of the issues raised in the Motions. While decided under the Rule 65 standard for issuance of a preliminary injunction, the PI Ruling made several findings that are relevant to the instant Motions. Most importantly, the Court found that the Final Rule likely exceeds the EEOC's statutory authority under basic principles of statutory construction, noting that any analysis of the Final Rule must begin with the presumption that Congress's decision <u>not</u> to include any reference to abortion in the PWFA was intentional. And while the PWFA explicitly cross-references provisions of Title VII throughout, the PWFA does not incorporate Title

VII's amended pregnancy provision.  [Doc. 47, *States* Lawsuit, p. 19]; [Doc. 53, *Bishops* Lawsuit, p. 19] (citations omitted in both).  The PI Ruling also found that "[i]f Congress had intended to mandate that employers accommodate elective abortions under the PWFA, it would have spoken clearly when enacting the statute, particularly given the enormous social, religious, and political importance of the abortion issue in our nation at this time (and, indeed, over the past 50 years)."  [Doc. 47, *States* Lawsuit, p. 20]; [Doc. 53, *Bishops* Lawsuit, p. 20].  Considering the foregoing, the Court concluded that, from a strictly textual standpoint, there is a complete lack of support for the EEOC's contention that Congress intended for abortion to be defined as a "medical condition" under the PWFA.

For largely the same reasons, the PI Ruling found the abortion accommodation mandate likely violates the "major questions doctrine," finding a lack of evidence in the text of the statute or its legislative history that, "Congress could reasonably be understood to have granted the EEOC the authority to interpret the scope of the PWFA in a way that imposes a nationwide mandate on both public and private employers – irrespective of applicable abortion-related state laws enacted in the wake of *Dobbs* – to provide workplace accommodation for the elective abortions of employees."  [Doc. 47, *States* Lawsuit, p. 20]; [Doc. 53, *Bishops* Lawsuit, p. 20]. Accordingly, the Court determined that the EEOC's use of its regulatory power to insert the issue of abortion into a law designed to ensure healthy pregnancies for America's working mothers squarely implicates the "major questions doctrine" as enunciated by the Supreme Court.  *EPA*, 597 U.S. at 724. (The major questions

doctrine applies when an "agenc[y] assert[s] highly consequential power beyond what Congress could reasonably be understood to have granted"). *Id.*

Specific to the issue of elective abortion, the Court found that,

… Since the Supreme Court decision of *Roe v. Wade* in 1973, abortion has been one of the most important social, religious, and political issues of our time and is a major issue in every federal election. *See Dobbs*, 597 U.S. at 223 ("Abortion presents a profound moral issue on which Americans hold sharply conflicting views."); *Dobbs*, 597 U.S. at 337 ("Abortion is a profoundly difficult and contentious issue because it presents an irreconcilable conflict between the interests of a pregnant woman who seeks an abortion and the interests in protecting fetal life. The interests on both sides of the abortion issue are extraordinarily weighty.") (Kavanaugh, J, concurring). *See also Planned Parenthood of Se. Pennsylvania v. Casey*, 505 U.S. 833, 850, 112 S. Ct. 2791, 2806, 120 L.Ed.2d 674 (1992) ("Men and women of good conscience can disagree, and we suppose some always shall disagree, about the profound moral and spiritual implications of terminating a pregnancy, even in its earliest stage."), *overruled by Dobbs*, 597 U.S. at 302. Indeed, a 2023 Gallup poll reported that a record high 28% of registered voters say they will only vote for candidates for major offices who share their position on abortion.  Accordingly, EEOC must point to "clear congressional authorization" to extend the PWFA to impose an abortion accommodation mandate on public and private employers. *Utility Air*, 573 U.S. at 324. Not only is the EEOC unable to point to any language in the PWFA empowering it to mandate the accommodation of elective abortions, but there can be little doubt in today's political environment that any version of the PWFA that included an abortion accommodation requirement would have failed to pass Congress.

[Doc. 47, *States* Lawsuit, pp. 21-22]; [Doc. 53, *Bishops* Lawsuit, pp. 21-22].

With respect to the *States* Plaintiffs specifically, the Court further found that the Final Rule impedes the States' abilities to control their own messaging with respect to abortion, and thereby likely interferes with the States' abilities to enforce their laws and implement the chosen public policies of their citizens:

… [B]ecause the abortion accommodation mandate forces the *States* Plaintiffs to provide (and fund) accommodations for elective abortions

that directly conflict with the States' own laws and policies, the abortion accommodation mandate "is destructive of state sovereignty." *Garcia v. San Antonio Metro. Transit Auth.*, 469 U.S. 528, 554 (1985). The people of Louisiana and Mississippi, through their elected representatives, have chosen to enact legislation and promote public policy that is antithetical to the directives of the abortion accommodation mandate. The *States* Plaintiffs therefore adequately demonstrate that they are likely to succeed on their claims that the abortion accommodation mandate violates the principles of federalism and encroaches on state sovereignty.

Finally, although the First Amendment does not confer rights on States, the "Supreme Court has made clear that the government (state and otherwise) has a 'right' to speak on its own behalf." *Missouri v. Biden*, 83 F.4th 350, 372 (5th Cir.), *cert. granted sub nom. Murthy v. Missouri*, 144 S. Ct. 7, 217 L.Ed.2d 178 (2023), *citing Bd. of Regents of Univ. of Wis. Sys. v. Southworth*, 529 U.S. 217, 229, 120 S. Ct. 1346, 146 L.Ed.2d 193 (2000). The abortion accommodation mandate unquestionably impedes on the authority of Louisiana and Mississippi to control their own messaging with respect to the issue of abortion within their borders.

[Doc. 47, *States* Lawsuit, pp. 24-25]; [Doc. 53, *Bishops* Lawsuit, pp. 24-25].

And with respect to the *Bishops* Plaintiffs, the Court concluded that EEOC's failure to include a broad religious exception in the Final Rule likely runs afoul of the PWFA by forcing the *Bishops* Plaintiffs to address religious objections on a case-by-case basis, which – specifically with respect to the abortion accommodation mandate – would likely pose an injurious regulatory burden.  [Doc. 47, *States* Lawsuit, pp. 27-29]; [Doc. 53, *Bishops* Lawsuit, pp. 27-29].

At bottom, and after much deliberation, the Court found no merit to the EEOC's position with respect to its inclusion of the abortion accommodation mandate and the Court granted the respective Plaintiffs' motions, finding:

At its core, this is a textbook case of a federal administrative agency exceeding its statutory authority in a way that both usurps the role of Congress and violates authority vested in the states under the principles

of federalism. Considering the foregoing, this Court finds a likelihood of success of the merits that EEOC's textual interpretation of the PWFA to include an abortion accommodation mandate exceeds that agency's Congressional authorization.

[Doc. 47, *States* Lawsuit, p. 24]; [Doc. 53, *Bishops* Lawsuit, p. 24].

Accordingly, the Court postponed the effective date of the Final Rule insofar as it required the Plaintiffs and certain employers in the states of Louisiana and Mississippi to provide accommodation for the elective abortions of employees not necessary to treat a medical condition related to pregnancy. [Doc. 47, *States* Lawsuit, pp. 31-32]; [Doc. 53, *Bishops* Lawsuit, pp. 31-32].[11]  It also preliminarily enjoined the EEOC with respect to these entities from: (i) initiating any investigation into claims that a covered employer has failed to accommodate an elective abortion that is not necessary to treat a medical condition related to pregnancy; and (ii) issuing any Notice of Right to Sue with respect to the same.[12]  *Id.*

In the Motions now before the Court, the *States* and *Bishops* Plaintiffs seek vacatur of the abortion accommodation provision of the Final Rule and a permanent injunction, while the EEOC seeks dismissal of the Plaintiffs' claims in both cases.  All issues having been fully briefed by the parties, and the parties now having provided the Court with the EEOC's administrative record, all issues are ripe for review.

---

[11]    The effective date of the Final Rule is June 18, 2024.  Final Rule, 89 Fed. Reg. 29096-01.

[12]    To avoid any uncertainty, the Court also clarified that terminations of pregnancy or abortions stemming from the underlying treatment of a medical condition related to pregnancy were not affected by the preliminary injunction, as such procedures are clearly "related to, affected by, or arising out of pregnancy, childbirth, or related medical conditions." 42 U.S.C. § 2000gg(4).

<u>LAW AND ANALYSIS</u>

## I.    The APA and Summary Judgment

The APA "authorizes suit by '[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute.'" *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 61, 124 S. Ct. 2373, 159 L.Ed.2d 137 (2004), *quoting* 5 U.S.C. § 702.  The Act requires courts to "hold unlawful and set aside" agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2).  APA cases are commonly resolved on summary judgment because whether an agency's decision is arbitrary and capricious is a legal question that the court can usually resolve on the agency's administrative record.  *Amin v. Mayorkas*, 24 F.4th 383, 390-91 (5th Cir. 2022).  Thus, the district court's only function is to determine whether, as a matter of law, the evidence in the administrative record permitted the agency's decision.  *Bloch v. Powell*, 227 F. Supp. 2d 25, 30 (D.D.C. 2002).  Because of the district court's limited role, "the standard set forth in Rule 56(c) does not apply" to its summary judgment review in cases brought under the APA.  *Yogi Metals Grp. Inc. v. Garland*, 567 F. Supp. 3d 793, 798 (S.D. Tex. 2021), *aff'd*, 38 F.4th 455 (5th Cir. 2022).  Rather, the court reviews the record only to determine whether the agency: (1) acted within its authority; (2) whether the agency explained its decision; (3) whether the record supports the facts on which the agency relied; and (4) whether the agency relied on the factors intended by Congress.  *Yogi Metals*, 567 F. Supp. 3d at 798, *citing Fund for Animals v. Babbitt*, 903 F. Supp. 96, 105 (D.C.C. 1995).  Such cases generally

involve pure questions of law, with the district court functionally operating as an appellate tribunal over the agency. *Nat'l Ass'n for Gun Rts., Inc. v. Garland*, 741 F. Supp. 3d 568, 597 (N.D. Tex. 2024), *citing MRC Energy Co. v. U.S. Citizenship & Immigr. Servs.*, 2021 WL 1209188, at *3 (N.D. Tex. Mar. 31, 2021).

## II. Article III Standing

Before any plaintiff may challenge an agency action under the APA, it bears the burden of demonstrating that it has standing to do so. *Texas v. Equal Emp. Opportunity Comm'n*, 933 F.3d 433, 446 (5th Cir. 2019). Specifically, "Article III of the Constitution requires a plaintiff to show that she has suffered an injury in fact that is fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Haaland v. Brackeen*, 599 U.S. 255, 291-92, 143 S. Ct. 1609, 216 L.Ed.2d 254 (2023); *Braidwood Mgmt., Inc. v. Equal Emp. Opportunity Comm'n*, 70 F.4th 914, 924 (5th Cir. 2023); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 119 L.Ed.2d 351 (1992). A plaintiff can demonstrate a cognizable injury in a pre-enforcement challenge only if it establishes that: (1) it has "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute," and (2) "there exists a credible threat of prosecution thereunder." *Braidwood*, 70 F.4th at 925, *citing Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159, 134 S. Ct. 2334, 189 L.Ed.2d 246 (2014). The two key questions in most standing disputes are injury-in-fact and causation. *FDA*, 2024 WL 2964140, at *1. The party or parties invoking the Court's jurisdiction bear the burden of satisfying the Article III requirement by demonstrating that they

have standing to adjudicate their claims in federal court. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

Although the Court discussed and found that the respective Plaintiffs had established standing for purposes of seeking a preliminary injunction, it is required to re-examine the Plaintiffs' standing at the summary judgment stage as well. *In re Deepwater Horizon*, 739 F.3d 790, 799 (5th Cir. 2014), *citing Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S. Ct. 2130, 119 L.Ed.2d 351 (1992) (the standard used to establish the three elements of standing is not constant but becomes gradually stricter as the parties proceed through "the successive stages of the litigation.").

### A.    The *States* Plaintiffs

As they did at the preliminary injunction stage, the *States* Plaintiffs argue they will suffer imminent injury-in-fact should the abortion accommodation mandate of the Final Rule take effect, because of increased regulatory burdens, increased compliance costs under penalty of enforcement actions, and damage to their sovereignty and free speech rights.  EEOC argues the *States* Plaintiffs do not have standing because their alleged injuries are too speculative; compliance costs do not establish standing; the Final Rule does not interfere with any State policy; the *States* Plaintiffs have not demonstrated any speech injury; and their injuries are not redressable.  The undersigned disagrees.

The Fifth Circuit has made clear that, "[i]f, in a suit challenging the legality of government action, the plaintiff is himself an object of the action, there is ordinarily

little question that the action or inaction has caused him injury, and that a judgment preventing or requiring the action will redress it." *Texas v. EEOC*, 933 F.3d 433, 446 (5th Cir. 2019). *See also Contender Farms, L.L.P. v. U.S. Dep't of Agric.*, 779 F.3d 258, 266 (5th Cir. 2015) (under the "ordinary rule," a party that is the "object[] of the [r]egulation[] may challenge it."). Indeed, just recently, the Eighth Circuit, addressing the standing of seventeen states that sued the EEOC for APA violations with respect to the same provisions of the Final Rule, held that those states had standing to challenge the Final Rule as directly regulated entities. *State v. Equal Emp. Opportunity Comm'n*, 129 F.4th 452, 458 (8th Cir. 2025). Here, Louisiana and Mississippi – as employers and without the shield of Eleventh Amendment sovereign immunity – are, too, directly regulated by the PWFA and the Final Rule. Specifically, the Final Rule's abortion accommodation, when implemented, will increase the States' regulatory burdens in the form of compliance costs and manpower to change State regulations. 89 Fed. Reg. 29,112–13, 29,182 (EEOC_000098–99, 000168); *see Braidwood Mgmt., Inc. v. EEOC*, 70 F.4th 914, 928 (5th Cir. 2023). The moment the mandate takes effect, the States will be forced to change their accommodation policies or face enforcement action. [Doc. 70-2, Schober Decl. ¶ 15]; [Doc. 70-4, Hardwick Decl. ¶¶ 10–12]. This increased burden, alone, is sufficient for standing. *See Contender Farms LLP v. U.S. Dep't of Agriculture*, 779 F.3d 258, 266 (5th Cir. 2015) ("An increased regulatory burden typically satisfies the injury in fact requirement.").

Moreover, changing their policies would cost the States, at minimum, an estimated $500 and 120 employee hours in training costs, legal expenses,

administrative costs, and productivity losses, a fact proffered by the *States* Plaintiffs in several declarations of State employees. *See, e.g.*, [Doc. 70-2, Schober Decl. ¶¶ 15–18]; [Doc. 70-3, Keen-Schilling Decl. ¶ 7] (explaining that the same compliance costs likely would be borne by "all Louisiana state agencies"); [Doc. 70-4, Hardwick Decl. ¶¶ 10–12]. The Final Rule itself notes such costs arise independently from any accommodation expenses. *See* 89 Fed. Reg. 29,177 ("Administrative costs, which include rule familiarization, posting new EEOC posters, and updating EEO policies and handbooks, represent additional, one-time direct costs to covered entities."). For Article III standing purposes, such compliance costs are classic "pocketbook injury" redressable through a pre-enforcement APA rule challenge. *Collins v. Yellen*, 594 U.S. 220, 243 (2021).

That the EEOC has heretofore been preliminarily enjoined by order of this Court from enacting the Final Rule against the *States* Plaintiffs is of no moment. "Regulated entities that assert likely economic injury have standing even before the challenged regulatory action fully takes effect." *Am. Farm Bureau Fed'n v. U.S. E.P.A.*, 792 F.3d 281, 293 (3d Cir. 2015), *citing Sierra Club v. Morton*, 405 U.S. 727, 733–34 (1972) ("[P]alpable economic injuries have long been recognized as sufficient to lay the basis for standing, with or without a specific statutory provision for judicial review.").

Finally, as the Court held in its PI Ruling, "because the abortion accommodation mandate forces the *States* Plaintiffs to provide (and fund) accommodations for elective abortions that directly conflict with the States' own laws

and policies, the abortion accommodation mandate 'is destructive of state sovereignty.'" [Doc. 47, *States* Lawsuit, pp. 24-25]; [Doc. 53, *Bishops* Lawsuit, pp. 24-25, both *citing Garcia v. San Antonio Metro. Transit Auth.*, 469 U.S. 528, 554 (1985)]. The people of Louisiana and Mississippi, through their elected representatives, have chosen to enact legislation and promote public policy that is antithetical to the directives of the abortion accommodation mandate.  Therefore, the *States* Plaintiffs adequately demonstrate that the abortion accommodation mandate violates the principles of federalism and encroaches on state sovereignty.  For all of the foregoing reasons, the Court concludes that the *States* Plaintiffs have standing to challenge the abortion accommodation provision of the Final Rule at the summary judgment stage.

### B.    The *Bishops* Plaintiffs

Similarly, the Court previously found that the *Bishops* Plaintiffs had standing to challenge the abortion accommodation mandate of the Final Rule because they were likely to suffer immediate harm to avoid noncompliance by the Final Rule's effective date.  Here, again, the *Bishops* Plaintiffs aver that their deeply held religious beliefs will not permit them to comply with the abortion accommodation mandate; they raise statutory and constitutional issues with the mandate under which they are at risk of being prosecuted; they cite EEOC's arguments in this case that any First Amendment and Religious Freedom Restoration Act, 42 U.S.C. §§ 2000bb *et seq.*, ("RFRA") exceptions to the Final Rule must be handled on a case-by-case basis; and they argue a legitimate fear of prosecution in light of EEOC's demonstrated violations

of Catholic University's religious exemptions in *EEOC v. Catholic Univ.*, 83 F.3d 455,

466 (D.C. Cir. 1996).

Specifically, the *Bishops* Plaintiffs argue that under the abortion

accommodation mandate of the Final Rule, they must knowingly violate their

sincerely held beliefs regarding what they term the "moral evil" of "direct" abortion

or risk liability and face years-long expensive and entangling litigation by both the

EEOC and private parties.  The *Bishops* Plaintiffs allege immediate harm in that

they must take steps to begin complying with the Final Rule – including changing

their employment policies and practices, and training employees regarding the new

policies and practices – to avoid noncompliance, which could subject them to open-

ended liability, investigations, and litigation by applicants, employees, former

employees, and the EEOC.  [Doc. 1, *Bishops* Lawsuit, ¶ 127].

EEOC argues the *Bishops* Plaintiffs lack standing on grounds that any

enforcement threat from EEOC is highly speculative and unlikely given that the

*Bishops* Plaintiffs identify no employee who has sought an accommodation or leave

for an abortion or who has filed an EEOC charge for the denial of such request, nor

have they identified any EEOC enforcement actions brought against any employer in

such a circumstance.  Thus, EEOC argues the *Bishops* Plaintiffs have presented

nothing more than an abstract, unripe claim, for which there is no hardship in

declining review in this Court, given their ability to raise all of the same arguments

as defenses in the event an employee ever files an EEOC charge.

The Fifth Circuit rejected the same argument by the EEOC in *Braidwood*. The *Braidwood* plaintiffs sought a declaratory judgment that EEOC's guidance interpreting statutory prohibitions on sex discrimination to include sexual orientation and gender identity violated RFRA. 70 F.4th at 919-21. Although it was undisputed that the plaintiffs' employment policies facially violated the EEOC's policies, the policies had not been enforced against any individual employee. *Id.* at 921. As it does here, EEOC catalogued a laundry list of hypothetical scenarios necessary for the plaintiffs to adequately allege injury, arguing that, until an employment action culminated in an actual charge filed with the EEOC and EEOC decided to pursue that charge, the plaintiffs could not establish standing. *Id.* at 926. Discrediting EEOC's argument, the Fifth Circuit explained:

> Plaintiffs' credible-threat analysis is quite simple. First, they admit they are breaking EEOC guidance, which the EEOC does not seriously contest. They posit statutory and constitutional issues with the laws under which they are at risk of being prosecuted: Those issues, they allege, are already forcing plaintiffs to choose either to restrict their religious practices or to risk potential penalties. And the EEOC's actions in *Harris*, which the EEOC won under a less violative set of facts, indicate that plaintiffs, too, have a legitimate fear of prosecution, chilling their rights. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373, 96 S. Ct. 2673, 49 L.Ed.2d 547 (1976) (plurality opinion). Finally, the EEOC refuses to declare affirmatively that it will not enforce Title VII against the plaintiffs' policies on homosexual and transgender behavior.

*Id.* at 926–27. *See also Franciscan All. v. Becerra*, 47 F.4th 368, 377 (5th Cir. 2022) (where plaintiff refused to offer gender-reassignment surgeries or abortions in violation of an HHS regulation enacted pursuant to the Patient Protection and Affordable Care Act, and HHS steadfastly refused to promise that it would not enforce

the Rule, the court held plaintiff had standing to challenge the rule, noting "the loss of freedoms guaranteed by the First Amendment … and RFRA … constitute per se irreparable harm."), *citing Opulent Life Church v. City of Holly Springs.*, 697 F.3d 279, 294 (5th Cir. 2012).

Here, too, the *Bishops* Plaintiffs posit that their deeply held religious beliefs will not permit them to comply with the abortion accommodation mandate and further argue that EEOC's policy of handling RFRA exceptions on a case-by-case basis is an actionable injury that demonstrates standing. In its PI Ruling, the Court concluded that because the EEOC failed to include a broad religious exception to the Final Rule, the *Bishops* Plaintiffs would be forced to litigate any religious objections to the abortion accommodation mandate on a case-by-case basis. The Court concluded that this alone would likely pose an injurious regulatory burden. [Doc. 47, *States* Lawsuit, pp. 27-29]; [Doc. 53, *Bishops* Lawsuit, pp. 27-29]. Thus, because the *Bishops* Plaintiffs are subject to religious exemptions only on a case-by-case basis, and – just like the *States* Plaintiffs – are each entities directly regulated by the PWFA, they likewise have standing under the Final Rule. *See Lujan*, 504 U.S. at 563 ("the 'injury in fact' test requires more than an injury to a cognizable interest … [i]t requires that the party seeking review be himself among the injured."); *State v. EEOC*, 129 F.4th at 457-58 (court held that seventeen states have standing to challenge the Final Rule where they are the object of the EEOC's regulatory action and are employers covered by the PWFA and the Final Rule).

### III.    APA Claims

As referenced above, the APA requires courts to "hold unlawful and set aside" agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2). Relevant here, in an APA challenge, "the core inquiry" is whether the proposed agency rule is a lawful extension of the statute under which the agency purports to act. *VanDerStok v. Garland*, 86 F.4th 179, 188 (5th Cir. 2023), *rev'd and remanded sub nom. on other grounds, Bondi v. VanDerStok*, 145 S. Ct. 857 (2025). When exercising this duty, the central question is "always, simply, whether the agency has stayed within the bounds of its statutory authority." *City of Arlington v. FCC*, 569 U.S. 290, 297, 133 S. Ct. 1863, 185 L.Ed.2d 941 (2013). To answer that question, courts must begin with the statute's text to fulfill the APA's mandate to "determin[e] the meaning of statutory provisions." *Loper Bright Ents. v. Raimondo*, 603 U.S. 369, 144 S. Ct. 2244, 219 L.Ed.2d 832 (2024); *Sackett v. EPA*, 598 U.S. 651, 671, 143 S. Ct. 1322, 215 L.Ed.2d 579 (2023). This inquiry is not mechanical or rigid. Instead, the plain, "ordinary meaning and structure of the law itself" governs. *Food Mktg. Inst. v. Argus Leader Media*, 588 U.S. 427, 436, 139 S. Ct. 2356, 204 L.Ed.2d 742 (2019).

### A.    The *States* Plaintiffs

In Count I of their Complaint, the *States* Plaintiffs allege that the Final Rule exceeds statutory authority by treating abortion as a condition of pregnancy. As they did at the PI stage, the parties argue extensively about whether an abortion is a "condition" or a "procedure," and again, the Court concludes that the Plaintiffs have

the stronger position on this argument. The *States* Plaintiffs focus on the words *pregnancy* and *childbirth* – both of which denote the healthy and safe birth of a child – and argue that to interpret the next term in the series – *related medical conditions* – to cover a pregnancy-ending procedure would thus be directly contrary to ordinary *ejusdem generis* principles.[13]

In its briefing, EEOC restates its previous arguments, including its chief textual argument that because Title VII protects employees who choose to have (or not to have) an abortion – and because Congress enacted the PWFA with identical language as Title VII for the express purpose of expanding Title VII's protections – the PWFA must also be understood to protect employees who choose to have (or not to have) an abortion.[14] But EEOC's argument is misplaced for several reasons. First,

---

[13]    "The *ejusdem generis* canon applies when a drafter has tacked on a catchall phrase at the end of an enumeration of specifics ...." *United States v. Koutsostamatis*, 956 F.3d 301, 308 (5th Cir. 2020), citing Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 199 (2012). Where it applies, *ejusdem generis* "limits general terms which follow specific ones to matters similar to those specified." *Koutsostamatis*, 956 F.3d at 308, *citing United States v. Aguilar*, 515 U.S. 593, 615, 115 S. Ct. 2357, 132 L.Ed.2d 520 (1995) (Scalia, J., concurring in part and dissenting in part) (quotation omitted). That is, when a list of specific X's is followed by the catchall phrase "other X's," *ejusdem generis* "implies the addition of *similar* after the word *other*." Scalia & Garner, *supra*, at 199.

[14]    Specifically, EEOC points to Congress's amendment of Title VII in 1978, which clarifies that "[t]he terms 'because of sex' or 'on the basis of sex' include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions[.]" 42 U.S.C. § 2000e(k). In that same subsection, Congress provided that "[t]his subsection shall not require an employer to pay for health insurance benefits for abortion, except where the life of the mother would be endangered if the fetus were carried to term, or except where medical complications have arisen from an abortion." *Id.* EEOC argues that the latter sentence confirms that abortion is included within the preceding statutory phrase "pregnancy, childbirth, or related medical conditions" in Title VII, and that because the same phrasing is used in the PWFA, Congress clearly intended for the PWFA to include accommodation for abortion.

"[h]ornbook canons of statutory construction require that every word in a statute be interpreted to have meaning, and Congress's use and withholding of terms within a statute is taken to be intentional." *U.S. Chamber of Commerce v. U.S. Dep't of Lab.*, 885 F.3d 360, 381 (5th Cir. 2018). As the Court explained in its June 17, 2024, PI Ruling, "we must begin with the presumption that Congress's decision <u>not</u> to include any reference to abortion in the PWFA was intentional. Indeed, while the PWFA explicitly cross-references provisions of Title VII throughout, the PWFA does not incorporate Title VII's amended pregnancy provision. And although Congress directed that certain terms incorporated within the PWFA from the ADA 'shall be construed as such terms are construed' thereunder, no provision of the PWFA requires incorporation of the 'pregnancy, childbirth, or related medical conditions' language of 42 U.S.C. § 2000e(k)." [Doc. 47, p. 19] (internal citation omitted).[15]

Additionally as the Court pointed out in its PI Ruling, "EEOC rests its [Title VII] argument entirely on its own enforcement guidelines on pregnancy discrimination and two pre-*Dobbs* lower court decisions wherein employers were barred from taking adverse actions against employees because the employees 'contemplated having, or chose to have, an abortion' under Title VII, contending that these two cases comprise 'settled' law on the issue." [Doc. 47, *States* Lawsuit, pp.18-

---

[15]    As further support for its textual argument, the *States* Plaintiffs point to several pages of words and their definitions contained within the administrative record – including "adverse;" "affect;" arise;" "relate to;" and "temporary" – but contend that the EEOC did not – and never considered – defining the word "condition." [Doc. 89-3, *States* Lawsuit, pp. 661-678]. The *States* Plaintiffs suggest that the word "condition" cannot be defined in a manner that contemplates the concept of elective abortion.

19]; [Doc. 53, *Bishops* Lawsuit, pp. 18-19]. *See also* 89 Fed. Reg. 29,110, 29,152 n.296.[16]  But the Court found that the EEOC's "smattering of lower court opinions" addressing abortion in the context of Title VII hardly qualifies as a judicial consensus "so broad and unquestioned that we must presume Congress knew of and endorsed it." [Doc. 47, *States* Lawsuit, pp.22-23]; [Doc. 53, *Bishops* Lawsuit, pp. 22-23]. *See BP p.l.c. v. Mayor & City Council of Baltimore*, 141 S. Ct. 1532, 1541 (2021), *citing Jama v. Immigr. & Customs Enf't*, 543 U.S. 335, 350-52, 125 S. Ct. 694, 704, 160 L.Ed.2d 708 (2005) (a "supposed judicial consensus" that "boils down to the decisions of two Courts of Appeals" is not sufficiently "broad and unquestioned" to support congressional ratification).

Moreover, EEOC's argument that the fact that Title VII pre-dates *Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215, 142 S. Ct. 2228, 213 L.Ed.2d 545 (2022) is "irrelevant" to the statutory inquiry is without merit, this Court having fully considered and rejected this argument at the PI stage.  [Doc. 47, *States* Lawsuit, p. 20]; [Doc. 53, *Bishops* Lawsuit, p. 20] ("The Court is therefore not persuaded, on the record before it, that Congress could reasonably be understood to have granted the

---

[16]     *See Enforcement Guidance on Pregnancy Discrimination and Related Issues*, U.S. Equal Employment Opportunity Commission, at (I)(A)(4)(c), n.58 (June 25, 2025), https://www.eeoc.gov/laws/guidance/enforcement-guidance-pregnancy-discrimination-and-related-issues (providing that the term "pregnancy, childbirth, or related medical conditions" includes current pregnancy, past pregnancy, potential or intended pregnancy, and related medical conditions); *Doe v. C.A.R.S. Protection Plus, Inc.*, 527 F.3d 358, 364 (3rd Cir. 2008) (holding that Title VII, as amended by the PDA, prohibits an employer from discriminating against a female employee because she has exercised her right to have an abortion); *Turic v. Holland Hospitality, Inc.*, 85 F.3d 1211, 1214 (6th Cir. 1996) (finding the termination of a pregnant employee because she contemplated having an abortion violated the PDA).

EEOC the authority to interpret the scope of the PWFA in a way that imposes a nationwide mandate on both public and private employers – irrespective of applicable abortion-related state laws enacted in the wake of *Dobbs* – to provide workplace accommodation for the elective abortions of employees."). It is undisputed that Title VII was amended in 1978 to include anti-discrimination protection for pregnancy, childbirth, and related conditions, and that the EEOC's Title VII implementing regulations incorporated the then-constitutional protections of certain abortion procedures as established in *Roe v. Wade*, 410 U.S. 113, 93 S. Ct. 705, 35 L.Ed.2d 147 (1973). However, the Court cannot simply ignore the fact that the PWFA was enacted just six months after the Supreme Court decided *Dobbs,* which removed abortion as a constitutional concern and expressly returned the issue to the States. Congress was well aware of the implications of *Dobbs* when it passed the PWFA, and had it wanted to include an abortion accommodation provision in the PWFA, it surely would have done so.

As discussed above, the PI Ruling also found that the Final Rule implicates the "major questions doctrine" as described by the Supreme Court. *See, e.g., W. Virginia v. EPA*, 597 U.S. 697, 723, 142 S. Ct. 2587, 2609, 213 L.Ed.2d 896 (2022) (internal citations omitted) ("Thus, in certain extraordinary cases, both separation of powers principles and a practical understanding of legislative intent make us 'reluctant to read into ambiguous statutory text' the delegation claimed to be lurking there. To convince us otherwise, something more than a merely plausible textual basis for the agency action is necessary."). As recently explained by the Fifth Circuit, "[i]n its

modern formulation, the major questions doctrine rests on the principle that administrative agencies have no independent constitutional provenance. They 'are creatures of statute. They accordingly possess only the authority that Congress has provided.'" *All. for Fair Bd. Recruitment v. Sec. & Exch. Comm'n*, 125 F.4th 159, 181 (5th Cir. 2024), *citing NFIB v. OSHA*, 595 U.S. 109, 117, 142 S. Ct. 661, 211 L.Ed.2d 448 (2022) (per curiam). "Because [an] agency has no inherent or implied authority, its powers to make major decisions must come only from unequivocal statutory text." *All. for Fair Bd. Recruitment*, 125 F.4th at 181.

Given the political, social, and religious significance of the abortion issue in this country, the PI Ruling explained that EEOC must point to "clear congressional authorization" for the power it claims in the Final Rule.[17]  [Doc. 47, *States* Lawsuit, p. 22]; [Doc. 53, *Bishops* Lawsuit, p. 22].  *EPA*, 597 at 723.  And as the PI Ruling emphasized, "[n]ot only is the EEOC unable to point to any language in the PWFA empowering it to mandate the accommodation of elective abortions, but there can be little doubt in today's political environment that any version of the PWFA that included an abortion accommodation requirement would have failed to pass Congress."  [Doc. 47, *States* Lawsuit, p. 22]; [Doc. 53, *Bishops* Lawsuit, p. 22].  That finding remains true today, and the Court concludes that the EEOC has failed to

---

[17]      "[A]n agency literally has no power to act ... unless and until Congress confers power upon it." *La. Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 374, 106 S. Ct. 1890, 90 L.Ed.2d 369 (1986).  *See also Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208, 109 S. Ct. 468, 102 L.Ed.2d 493 (1988) ("It is axiomatic that an administrative agency's power to promulgate legislative regulations is limited to the authority delegated by Congress."); *Clean Water Action v. U.S. Env't Prot. Agency*, 936 F.3d 308, 313 n.10 (5th Cir. 2019) ("To be sure, agencies, as mere creatures of statute, must point to explicit Congressional authority justifying their decisions.").

point to clear congressional authorization for the inclusion of abortion protection in a statute intended only to accommodate and protect female employees during pregnancy.

Finally, as the State of Tennessee expressed in its comments to the EEOC's proposed rule, the legislative history of the PWFA provides "extra icing on a cake already frosted," [Doc. 89-2, *States* Lawsuit, pp. 246], and leaves no room for the EEOC's interpretation of the statute.  As the Court stated in granting the *States* Plaintiffs a preliminary injunction:

> … [T]he legislative history unambiguously confirms that Congress specifically <u>did not</u> intend for the PWFA to require employers to accommodate abortion.  Indeed, lawmakers from both sides of the aisle expressly stated that the PWFA does not address abortion.  The Democratic sponsor of the PWFA, Senator Bob Casey, emphasized in response to concerns that abortion might be at issue: "I want to say for the record … that under the [PWFA], the [EEOC] could not – could not – issue any regulation that requires abortion leave, nor does the act permit the EEOC to require employers to provide abortions in violation of State law."  168 Cong. Rec. S7050 (daily ed. Dec. 8, 2022).  Republican Senator Steve Daines similarly noted that "Senator Casey's statement reflects the intent of Congress in advancing the [PWFA] today.  This legislation should not be misconstrued by the EEOC or Federal courts to impose abortion-related mandates on employers, or otherwise to promote abortions, contrary to the intent of Congress."  168 Cong. Rec. S10081 (daily ed. Dec. 22, 2022).  And Republican Senator Bill Cassidy, also a sponsor of the PWFA, likewise "reject[ed] the characterization that [the PWFA] would do anything to promote abortion."  168 Cong. Rec. S7050 (daily ed. Dec. 8, 2022).  Additionally, after concerns were raised about the PWFA's initial failure to include a religious exemption, Senator Cassidy confirmed on the Senate floor that the PWFA "allows employers to make employment decisions based on firmly held religious beliefs."  168 Cong. Rec. S7050 (daily ed. Dec. 8, 2022).

[Doc. 47, *States* Lawsuit, pp. 23-24]; [Doc. 53, *Bishops* Lawsuit, pp. 23-24].

Considering the foregoing, the Court concludes that EEOC's interpretation of the PWFA to include an abortion accommodation mandate clearly and unequivocally exceeds its statutory authorization.[18]

## B.    The *Bishops* Plaintiffs

The *Bishops* Plaintiffs seek summary judgment on Counts I, III, V-VII, and IX-X of their Complaint.  Like the *States* Plaintiffs, in Count I of their Complaint, the *Bishops* Plaintiffs allege that the abortion accommodation of the Final Rule violates the canons of statutory textual interpretation and construction, and the EEOC thereby exceeds its statutory authority under the APA.  Because the Court's findings with respect to the textual analysis of the abortion accommodation mandate are equally applicable to the *Bishops* Plaintiffs, who make the same argument, and for the reasons discussed in the previous section, the *Bishops* Plaintiffs are entitled to judgment as a matter of law on Count I of their Complaint.[19]

---

[18]    Because the Court finds that the *States* Plaintiffs are entitled to summary judgment on Count I of their Complaint, and because the remedy for such violation is vacatur of the Final Rule's abortion accommodation provision, the Court need not address Counts II-IV in the *States* Plaintiffs' Complaint.  *See* [Doc. 70-1, p. 32] (noting focus on Count I).  *See also Flight Training Int'l, Inc. v. FAA*, 58 F.4th 234, 246 (5th Cir. 2023) (finding that because court found Rule was issued without observance of procedure required by law, it was not necessary to reach the plaintiff's alternative issues), *cited in Texas v. Becerra*, 739 F. Supp. 3d 522, 532 (E.D. Tex. 2024), *modified on reconsideration*, 2024 WL 4490621 (E.D. Tex. Aug. 30, 2024) (where court found Final Rule exceeded statutory authority, it was not necessary to consider alternative arguments).

[19]    The *Bishops* Plaintiffs also allege the Final Rule violates the APA inasmuch as it requires accommodation for contraception and "fertility treatment" such as *in vitro* fertilization (IVF) and surrogacy.  29 C.F.R. § 1636.3(b).  *See also* 89 Fed Reg. 29,183.  This issue was not addressed by the Court in its PI Ruling, and the Court declines to address the issue now.  Rather, the Court will conduct a status conference with counsel after the filing of this Ruling to discuss and narrow the issues that remain to be decided.

Although the Court's determination that the *Bishops* Plaintiffs are entitled to summary judgment on Count I is sufficient to address the gravamen of their Complaint, the Court also addresses Count III of the *Bishops* Plaintiff's Complaint because the issue was discussed in the Court's PI Ruling.  In Count III of their Complaint, the *Bishops* Plaintiffs allege that the EEOC's Final Rule has also unlawfully narrowed the PWFA and Title VII religious exemptions, taking the view that both protect only against claims for religious-based discrimination.  89 Fed. Reg. at 29,146-47 & n.239.  To be clear, Title VII includes an exemption for religious employers, 42 U.S.C. § 2000e(j) (defining "religion"), and the text of the PWFA directly incorporates Title VII's religious exemption and makes the entire PWFA "subject to" the exemption.  42 U.S.C. § 2000gg-5(b).[20]  While Title VII states: "This subchapter shall not apply to … a religious corporation, association, educational institution, or society with respect to the employment of individuals of a particular religion," 42 U.S.C. § 2000e-1(a), the Final Rule declines to adopt a blanket exemption for religious employers.[21]  Instead, the Interpretive Guidance provides that the merits

---

[20]    The religious exception of the PWFA is contained in Section 107(b) and provides as follows:

> (b) Rule of construction. This chapter is subject to the applicability to religious employment set forth in section 2000e-1(a) of this title.

42 U.S.C. § 2000gg-5(b).

[21]    The Final Rule provides:

> (b) **Rule of construction.** The PWFA and this part are subject to the applicability to religious employment set forth in section 702(a) of the Civil Rights Act of 1964, 42 U.S.C. 2000e–1(a).

of an employer's defense that it took a proscribed action on the basis of religion will be determined on a "case-by-case" basis and religious employers may only raise religious defenses – including RFRA, 42 U.S.C. § 2000bb, *et seq*., and the ministerial exception – if and when a charge is filed against them. 89 Fed. Reg. 29,146-47.[22]

Contesting this view, the *Bishops* Plaintiffs argue that Title VII exempts religious entities from the requirements of the entire "subchapter – *e.g.*, all of Title VII, not merely one category of claims – protecting religious employers from *any* Title VII claim if an employer made an employment decision based on an individual's particular religious belief, observance, or practice." *See, e.g., EEOC v. Mississippi*

---

(1) Nothing in 42 U.S.C. 2000gg–5(b) or this part should be interpreted to limit a covered entity's rights under the U.S. Constitution.

(2) Nothing in 42 U.S.C. 2000gg–5(b) or this part should be interpreted to limit an employee's rights under other civil rights statutes.

29 C.F.R. § 1636.7(b).

[22]    The Interpretive Guidance of the Final Rule explains:

Under the Commission's interpretation of section 107(b), the PWFA does not fully exempt qualifying religious organizations from making reasonable accommodations. This is analogous to section 702(a), which likewise does not operate as a total exemption from Title VII's requirements.

Under section 702(a), for example, qualifying religious organizations are exempt from Title VII's prohibition against discrimination on the basis of religion, but, as U.S. courts of appeals have recognized, qualifying religious organizations are still subject to the law's prohibitions against discrimination on the basis of race, color, sex, and national origin, and they may not engage in related retaliation. If a qualifying religious organization asserts as a defense to a claim under the PWFA that it took the challenged action on the basis of religion and that section 107(b) should apply, the merits of any such asserted defense will therefore be determined on a case-by-case basis consistent with the facts presented and applicable law.

Final Rule, 29096-01, 29146-47 (internal citation omitted).

*Coll.*, 626 F.2d 477, 485-86 (5th Cir. 1980) (barring a sex-discrimination investigation under Title VII where a religious employer "applied its policy of preferring Baptists over non-Baptists."); *Curay-Cramer v. Ursuline Academy*, 450 F.3d 130, 132 (3d Cir. 2006) (religious exemption bars sex-discrimination claim); *Bear Creek Bible Church v. Equal Employment Opportunity Commission*, 571 F. Supp. 3d 571, 591 (N.D. Tex. 2021) ("The plain text of [the religious] exemption" bars sex-discrimination claims "when [a religious employer] refuses to employ an individual ... based on religious observance, practice, or belief), *aff'd in part and vacated in part by Braidwood Mgmt., Inc. v. Equal Emp. Opportunity Comm'n*, 70 F.4th 914 (5th Cir. 2023).  That is, the *Bishops* Plaintiffs argue the Final Rule violates the protections for religious employers that Congress included in the statute itself.

In its PI Ruling, the Court found that this "case-by-case" religious exemption in the Final Rule provided the *Bishops* Plaintiffs with standing to challenge the abortion accommodation mandate of the Final Rule.  The lawfulness of scope of the Final Rule's religious exemption within the purview of the Court's limited grant of authority under the APA, however, is a separate issue that the Court is ill-equipped to address on the briefs before it – especially given the recent change in the administration and resulting statement of Andrea Lucas, Acting Commissioner of the EEOC.  *See Position of Acting Chair Lucas Regarding the Commission's Final Regulations Implementing the Pregnant Workers Fairness Act*, U.S. Equal Employment Opportunity Commission,  https://www.eeoc.gov/wysk/position-acting-chair-lucas-regarding-commissions-final-regulations-implementing-pregnant    (last

visited May 20, 2025).  For this reason, the Court declines to enter judgment at this juncture on Count III of the *Bishops* Plaintiffs' Complaint.[23]

## IV.    **Vacatur**

The APA specifically "empowers and commands courts to 'set aside' unlawful agency actions," 5 U.S. § 706(2), allowing a district court's vacatur to render a challenged agency action "void." *Texas Med. Ass'n v. United States Dep't of Health & Hum. Servs.*, 110 F.4th 762, 779 (5th Cir. 2024), *citing Texas v. Biden*, 20 F.4th 928, 957 (5th Cir. 2021), *rev'd on other grounds*, 597 U.S. 785, 142 S. Ct. 2528, 213 L.Ed.2d 956 (2022), *quoting* 5 U.S.C. § 706.  Binding Fifth Circuit precedent recognizes this remedy.  *Texas Med. Ass'n*, 110 F.4th at 779, *citing Data Marketing Partnership, LP v. United States Dep't of Labor*, 45 F.4th 846, 856 n.2 (holding that *Texas v. Biden* "remains binding" "except for the portions of it on statutory interpretation and final agency action"); *Franciscan All., Inc. v. Becerra*, 47 F.4th 368, 374-75 (5th Cir. 2022) ("Vacatur is the only statutorily prescribed remedy for a successful APA challenge to a regulation.").

When awarding relief under Section 706(2), the Court may fashion the remedy in one of two ways: remand the Rule with vacatur or remand the Rule without vacatur.  *Texas v. United States*, 50 F.4th 498, 529–30 (5th Cir. 2022). As the Fifth Circuit has explained, the default rule is to vacate and remand the unlawful agency

---

[23]    Because the Court finds that the *Bishops* Plaintiffs are entitled to summary judgment on Count I of their Complaint, and because the remedy for such violation is vacatur of the Final Rule's abortion accommodation mandate, the Court declines to address the remaining counts in the *Bishops* Plaintiffs' Complaint at this juncture.

action. *Data Mktg. P'ship, LP v. United States Dep't of Labor*, 45 F.4th 846, 859 (5th Cir. 2022). Remand without vacatur, on the other hand, is an "exceptional remedy" that courts may provide in exercising their discretion. *Am. Great Lakes Ports Ass'n v. Schultz*, 962 F.3d 510, 519 (D.C. Cir. 2020); *Brown v. U.S. Dep't of Educ.*, No. 4:22-CV-0908, 640 F.Supp.3d 644, 667–68 (N.D. Tex. Nov. 10, 2022). Remand with vacatur "re-establish[es] the status quo" before the unlawful agency action took place. *Texas v. United States*, 40 F.4th 205, 220 (5th Cir. 2022). Remand without vacatur, however, "leaves the rule in place during remand." *Am. Forest Res. Council v. Ashe*, 946 F. Supp. 2d 1, 43 (D.D.C. 2013). Consequently, "remand without vacatur creates a risk that an agency may drag its feet and keep in place an unlawful agency rule." *EME Homer City Generation, L.P. v. EPA*, 795 F.3d 118, 132 (D.C. Cir. 2015). As such, remand without vacatur is appropriate only "when there is at least a serious possibility that the agency will be able to substantiate its decision given an opportunity to do so." *State v. Biden*, 10 F.4th 538, 560 (5th Cir. 2021), *quoting Texas Ass'n of Mfrs. v. U.S. Consumer Prod. Safety Comm'n*, 989 F.3d 368, 389 (5th Cir. 2021). Here, the Court determines that remand with vacatur is required.

Notwithstanding the foregoing, "[i]f vacatur is sufficient to address the injury, it is improper to also issue an injunction. *Texas v. United States*, 606 F. Supp. 3d 437, 501 (S.D. Tex. 2022), *rev'd*, 599 U.S. 670, 143 S. Ct. 1964, 216 L.Ed.2d 624 (2023), *citing Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165–66, 130 S. Ct. 2743, 2761, 177 L.Ed.2d 461 (2010) ("An injunction is a drastic and extraordinary remedy, which should not be granted as a matter of course ... If a less drastic remedy (such as

partial or complete vacatur of [the agency's] deregulation decision) was sufficient to redress respondents' injury, no recourse to the additional and extraordinary relief of an injunction was warranted.").  It is equally clear that the scope of ultimate relief under Section 706 is not party-restricted, but rather directs federal courts to wholly "set aside" unlawful agency action.  *Career Colleges & Sch. of Texas v. United States Dep't of Educ.*, 98 F.4th 220, 255 (5th Cir. 2024), *cert. granted in part sub nom. Dep't of Educ. v. Career Colleges & Sch. of Texas*, 145 S. Ct. 1039, 220 L.Ed.2d 375 (2025). *See also BST Holdings, L.L.C. v. OSHA*, 17 F.4th 604 (5th Cir. 2021) (where court stayed OSHA's vaccine mandate without party limitation); *Harmon v. Thornburgh*, 878 F.2d 484, 495 n. 21 (D.C. Cir. 1989) ("When a reviewing court determines that agency regulations are unlawful, the ordinary result is that the rules are vacated – not that their application to the individual petitioners is proscribed.").

In the instant action, both the *States* and *Bishops* Plaintiffs seek vacatur of the abortion accommodation provision of the Final Rule "without limitation," that is, on a nationwide basis, as well as a permanent injunction.  But because this case is only cognizable in this Court pursuant to the statutory authorization granted to it by the APA, and because vacatur and remand of the abortion accommodation mandate and the Interpretive Guidance of the Final Rule will remedy the parties' injuries, a permanent injunction is neither required nor permitted upon the showing made by the Plaintiffs.  The Court therefore finds that only vacatur of the abortion accommodation mandate and remand to the EEOC is appropriate at this stage.  Any

further relief requested by the parties will be addressed at a status conference scheduled herein.

<u>**ORDER AND REMEDY**</u>

Considering the foregoing,

IT IS HEREBY ORDERED that the MOTION FOR SUMMARY JUDGMENT [Doc. 70] filed by the *States* Plaintiffs in the matter entitled *State of Louisiana, et al v. EEOC*, No. 2:24-cv-00629-DCJ-TPL, and the MOTION FOR PARTIAL SUMMARY JUDGMENT AND PERMANENT INJUNCTION [Doc. 77] filed by the *Bishops* Plaintiffs in the matter entitled *United States Conference of Catholic Bishops, et al v. EEOC, et al*, No. 2:24-cv-00691-DCJ-TPL, are hereby GRANTED IN PART, and the following provision of the Final Rule, to the extent that it includes "abortion" as a "related medical condition" of pregnancy and childbirth, is hereby VACATED:

29 C.F.R. 1636.3(b) defines "related medical conditions" as follows:

(b) ***Pregnancy, childbirth, or related medical conditions.*** "Pregnancy" and "childbirth" refer to the pregnancy or childbirth of the specific employee in question and include, but are not limited to, current pregnancy; past pregnancy; potential or intended pregnancy (which can include infertility, fertility treatment, and the use of contraception); labor; and childbirth (including vaginal and cesarean delivery). "Related medical conditions" are medical conditions relating to the pregnancy or childbirth of the specific employee in question. The following are examples of conditions that are, or may be, "related medical conditions": ***termination of pregnancy, including via miscarriage, stillbirth, or abortion***; ectopic pregnancy; preterm labor; pelvic prolapse; nerve injuries; cesarean or perineal wound infection; maternal cardiometabolic disease; gestational diabetes; preeclampsia; HELLP (hemolysis, elevated liver enzymes and low platelets) syndrome; hyperemesis gravidarum; anemia; endometriosis; sciatica; lumbar lordosis; carpal tunnel syndrome; chronic migraines; dehydration; hemorrhoids; nausea or vomiting; edema of the legs, ankles, feet, or fingers; high

blood pressure; infection; antenatal (during pregnancy) anxiety, depression, or psychosis; postpartum depression, anxiety, or psychosis; frequent urination; incontinence; loss of balance; vision changes; varicose veins; changes in hormone levels; vaginal bleeding; menstruation; and lactation and conditions related to lactation, such as low milk supply, engorgement, plugged ducts, mastitis, or fungal infections. This list is non-exhaustive.

29 C.F.R. § 1636.3(b) (emphasis added).

IT IS FURTHER ORDERED that any Implementing Regulations or Guidance that are inconsistent with this Order, that is, to the extent that they require or suggest to employers that they are required to provide employees with accommodation for purely elective abortions that are not necessary to treat a medical condition related to pregnancy,[24] are also hereby VACATED and immediately without effect.

IT IS FURTHER ORDERED that the MOTION TO DISMISS, OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT [Doc. 68] filed by the EEOC in the matter entitled *State of Louisiana, et al v. EEOC*, No. 2:24-cv-00629-DCJ-TPL, and the MOTION TO DISMISS, OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT [Doc. 75] filed by the EEOC in the matter entitled *United States Conference of Catholic Bishops, et al v. EEOC, et al*, No. 2:24-cv-00691-DCJ-TPL, are hereby DENIED.

---

[24]    To avoid any uncertainty, terminations of pregnancy or abortions stemming from the underlying treatment of a medical condition related to pregnancy are not affected by this Order.  Such procedures are clearly "related to, affected by, or arising out of pregnancy, childbirth, or related medical conditions." 42 U.S.C. § 2000gg(4). Covered employers are therefore required to provide accommodation to the extent set forth in the PWFA.

IT IS FURTHER ORDERED that the Preliminary Injunction, [Doc. 47, *States* Lawsuit]; [Doc. 53, *Bishops* Lawsuit], currently in place in these matters shall remain in place until final dismissal of these matters or further order of the Court.

IT IS FURTHER ORDERED that the Court will conduct an in-person status conference with the parties on June 17, 2025, at 10:00 a.m. to discuss de-consolidation of the above-captioned matters, resolution of additional discreet issues raised by the *Bishops* Plaintiffs alone, and the creation of any necessary briefing schedule to address those issues.

IT IS FURTHER ORDERED that the Court finds that there is no just reason for delaying entry of final judgment on the vacatur and remand ordered herein. This Memorandum Order therefore constitutes a FRCP 54(b) partial final and appealable judgment as to the abortion accommodation mandate VACATED herein, and the FINAL RULE is therefore REMANDED to the EEOC for action consistent with the Court's findings.

THUS, DONE AND SIGNED in Chambers on this 21st day of May 2025.

DAVID C. JOSEPH
UNITED STATES DISTRICT JUDGE